1  Lesley E. Weaver (SBN 191305)
   Shepherd, Finkelman, Miller & Shah, LLP
2  199 Fremont Street, 20th Floor
   San Francisco, CA 92101
3  Telephone: (415) 992-7282
   Facsimile: (415) 489-7701
4  lweaver@sfmslaw.com

5  [Other Counsel listed on signature page]

6  *Attorneys for Plaintiff and on Behalf*
   *of All Others Similarly Situated*
7

8            **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10
   MICHAEL RODMAN, on behalf of            ) Case No. 3:11-cv-03003 JSW
11 himself and all others similarly situated, )
                                            ) **FIRST AMENDED CLASS ACTION**
12           Plaintiff,                     ) **COMPLAINT FOR:**
                                            )
13           v.                             ) **1. Breach of Contract**
                                            )
14 SAFEWAY, INC.,                           ) **2. California Consumers Legal**
                                            ) **Remedies Act, California *Civil Code* §**
15                                          ) **1770, *et seq.***
             Defendant.                     )
16                                          ) **3. California False Advertising Act,**
                                            ) **California *Business & Professions***
17                                          ) ***Code* § 17500, *et seq.***
                                            )
18                                          ) **4. California Unfair Competition**
                                            ) **Law, California *Business &***
19                                          ) ***Professions Code* § 17200, *et seq.***
                                            )
20                                          )
                                            ) **JURY TRIAL DEMANDED**
21 _____ )

22

23         Plaintiff, Michael Rodman ("Rodman" or "Plaintiff"), by and through his

24 attorneys, brings this action, on behalf of himself and all others similarly situated,

25 against Defendant, Safeway, Inc. ("Safeway" or "Defendant"), and, except for

26 information based on his own personal knowledge, alleges, on information and

27 belief based on the investigation conducted by his counsel, as follows:

28

## NATURE OF THE ACTION

1.     Plaintiff brings this action to remedy breaches of contract and violations of applicable consumer protection laws in connection with overcharges for groceries sold by Safeway through its website for home delivery.

2.     The grocery business in well-populated areas is highly competitive. One of the ways that Safeway competes is by offering home delivery in select metropolitan areas for groceries ordered online through Safeway.com, Genuardis.com, and Vons.com (collectively "Safeway.com").[1] Popular among busy working families, professionals, the elderly, parents of young children and many others, the service allows consumers to place orders online and have groceries delivered from their local Safeway store to their home for a modest fee, which ranges from approximately $7 to $13, depending on order size and delivery options. On its Safeway.com website, Defendant prominently advertises and represents "better prices than you ever thought possible."

3.     In its advertising and in the delivery agreement, the terms of which consumers consent to when they register online for home delivery, Safeway states that consumers will be charged the same prices for products as those charged in the local store where the groceries are selected on the date of delivery. In other words, except for the delivery fee (and any fuel surcharge), Safeway affirmatively represents to consumers that they will pay the same prices for grocery items as they would pay if they went to the local store. In reality, however, contrary to its representations, Safeway secretly adds approximately ten percent (10%) to the in-store price of most of the groceries it sells and delivers through its web-based service.

4.     Safeway uses a scaled system, where it adds $.10 for every dollar of

---

[1]Safeway stores include the following chains: Safeway, Vons and Genuardis.

1  the in-store price. So, for items that cost $.01 to $.99 in the store, Safeway adds an

2  extra $.10 for the same item delivered. For items that cost $1 to $1.99 in the store,

3  Safeway adds an extra $.20 for the same item delivered. For items that cost $2 to

4  $2.99 in the store, Safeway adds an extra $.30 for the same item delivered, and so

5  on. To illustrate, for a box of microwave popcorn that costs $3.39 in the store,

6  Safeway charges $3.79 for the same box delivered from that store- an 11.80%

7  markup. Since Safeway uses $.10 increments for every dollar of in-store cost,

8  consumers are overcharged at least 10% extra for most home-delivered items.

9      5.      Safeway does not disclose that consumers will be charged higher

10  prices for items ordered through Safeway.com. Indeed, to the contrary, it

11  specifically represents that consumers will be charged the same amount for items

12  as the in-store price at the time of purchase. Other than visiting the store to check

13  prices on the day of delivery, consumers have no way of knowing that Safeway

14  has overcharged them.

15      6.      Plaintiff brings this action on behalf of himself and other similarly

16  situated consumers nationwide to obtain redress for those who have purchased

17  groceries online from Safeway. Plaintiff alleges breach of contract, as well as

18  violations of the California Consumers Legal Remedies Act, Civil Code § 1750, *et*

19  *seq.* ("CLRA"), the Unfair Competition Law, California Business and Professions

20  Code § 17200, *et seq.* ("UCL") and the False Advertising Law, California

21  Business and Professions Code § 17500, *et seq.* ("FAL").

22                    **JURISDICTION AND VENUE**

23      7.      This Court has diversity jurisdiction of this action pursuant to 28

24  U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i)

25  there are 100 or more class members, (ii) there is an aggregate amount in

26  controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is

27  minimal diversity because at least one plaintiff and one defendant are citizens of

28  different states. This Court has supplemental jurisdiction over the state law claims

3

1   pursuant to 28 U.S.C. § 1367.

2       8.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 and
3   California Civil Code Section 1780(d) because Defendant does business in this
4   district, a substantial part of the events or omissions giving rise to the Plaintiff's
5   claim occurred in this district, and the terms and conditions agreed upon by
6   Plaintiff and Defendant are governed by the laws of the State of California.
7   Safeway maintains corporate offices in Pleasanton, California, and a significant
8   portion of its retail operations are located in California. Additionally, Safeway's
9   online registration requires customers to enter into a contractual agreement in
10  which they agree to be bound by California law and to file any lawsuit in this
11  district.

12                                **PARTIES**

13      9.     Plaintiff is, and at all times relevant to this action has been, a resident
14  of Merion Station, Pennsylvania and, thus, is a citizen of Pennsylvania. Plaintiff
15  purchased groceries online through Safeway.com and, contrary to Defendant's
16  representations and contractual obligations, was charged more for many of the
17  grocery items than the price being charged in the local store where his order was
18  filled.

19      10.    Safeway is a Delaware corporation that maintains its principal place
20  of business in Pleasanton, California. Safeway, thus, is a citizen of California.

21                      **SUBSTANTIVE ALLEGATIONS**

22      11.    Safeway is one of the largest food and drug retailers in North
23  America. Safeway sells groceries regionally through its many affiliates, including
24  Vons, Dominick's, Randalls, Genuardi's and Tom Thumb stores. There are
25  approximately 1,775 Safeway stores across the United States and Canada.

26      12.    Safeway offers home delivery of groceries purchased online in at
27  least the following areas: Northern California, including San Francisco, Marin,
28  Greater North Bay, Easy Bay, Sacramento, San Jose, Peninsula, Monterey,

4

1  Salinas; Portland, Oregon; Seattle, Washington; Greater Phoenix, Arizona;

2  Maryland; Philadelphia, Pennsylvania; and Washington D.C.

3      13.    Safeway charges a delivery fee, which ranges from approximately $7

4  to $13, depending on order size and delivery options. Safeway also charges a fuel

5  surcharge.

6      14.    According to Safeway, after a consumer places an order on-line,

7  Safeway proceeds to fill the order at a Safeway store local to the consumer.  As

8  explained on Safeway.com:

9      **Where do my products come from, and how do you deliver them**

10

11  We hand-select all your groceries from a Safeway store local to your area.  Products are placed in temperature-controlled trucks to keep them fresh.  Our drivers will deliver your order to your doorstep at the time you select.

12

13

14      15.    In order to make an online purchase for home delivery, consumers

15  must first register for an account online.  To do so, customers must agree to

16  Safeway's terms and conditions, which include:

17  This Agreement (the "Agreement") is a legal agreement between you and Safeway Inc., its subsidiaries and affiliates ("Safeway") that states the terms and conditions under which you may receive Safeway online services and use the Safeway.com Web site (the "Site").  Your use of the Safeway online service and the Site constitutes your agreement to the terms and conditions set forth below.

18

19

20

21      *    *    *    *    *    *    *

22  Notwithstanding any statements on the Safeway.com web pages or elsewhere, these Terms and Conditions are the agreement between you and Safeway.

23

24      *    *    *    *    *    *    *

    **4.    Product Pricing and Service Charges.**

25  The prices quoted on our Web site at the time of your order are estimated prices only.  You will be charged the

26  prices quoted for Products you have selected for purchase at the time your order is processed at checkout.

27  The actual order value cannot be determined until the day of delivery because the prices quoted on the Web

28  site are likely to vary either above or below the prices in the store on the date your order is filled and delivered.

1  (Bold in original.)

2     16.   Thus, the terms and conditions, which form the basis of the bargain

3  for each consumer, including Plaintiff, make it clear that the prices ultimately

4  charged will be based on the prices in the physical store where the order is filled

5  and delivered:

6        a)   First, the terms state that "You will be charged the prices

7  quoted for Products you have selected for purchase at the time your order is

8  processed at checkout." Since the products are checked out at a local store, the

9  terms make clear that the prices charged will be those charged at checkout in the

10 store, not some other price. In fact, when groceries are delivered they come with a

11 receipt showing, *inter alia*, the time of checkout and address of the local store.

12       b)   Second, the terms state that "[t]he actual order value cannot be

13 determined until the day of delivery because the prices quoted on the Web site are

14 likely to vary either above or below the prices in the store on the date your order is

15 filled and delivered." That is significant for at least two reasons:

16            i.   The terms state that the order value is an estimate

17 because the on-line prices vary from prices "in the store." If the agreement

18 provided that the prices charged would the on-line prices, there would be

19 absolutely no reason to reference "prices in the store" as a reason why the on-line

20 price is an estimate only. By stating that the online order is an estimate because

21 prices "in the store" may vary, the terms clearly indicate that the price "in the

22 store" is the operative price.

23            ii.   Further, if the intent is to charge the on-line prices, there

24 is no reason why the "prices" can not be determined at the time of the order.

25 "Price" is the dollar amount charged per unit (*i.e.*, a box, a pound, etc.). The terms

26 do not state that the order total is an estimate because weights or quantities are

27 estimated; it says that the order value cannot be determined because "prices" in the

28 store will vary.

6

1  Accordingly, all references in the terms and conditions relating to "prices in the

2  store" necessarily relate to the actual store where an order is filled prior to

3  delivery.

4      17.    The agreement further states:

5      **20.    Applicable Law**

6      These Terms and Conditions and the order form,
    collectively constituting the sole and entire agreement

7      between Safeway and you regarding the online shopping
    services, are governed by laws of the State of California

8      without regard to conflict of laws and rules. The parties
    agree to jurisdiction and venue for any dispute hereunder

9      solely in Pleasanton, California and Alameda County,
    California.

10

11      18.    In reality, however, local Safeway stores are not charging the in-store

12  prices for online delivery purchases.  Instead, Safeway adds approximately 10% to

13  the price of virtually every regularly priced product it sells through Safeway.com.

14      19.    Specifically, Safeway has adopted a scheme where it routinely

15  increases the price of products sold through Safeway.com above the in-store price

16  in ten cent increments.  The following table shows the incremental price increase:

| If the in-store prices is: | Safeway adds: |
|---|---|
| 0.00 - 0.99 | .10 |
| 1.00 - 1.99 | .20 |
| 2.00 - 2.99 | .30 |
| 3.00 - 3.99 | .40 |
| 4.00 - 4.99 | .50 |
| 5.00 - 5.99 | .60 |
| 6.00 - 6.99 | .70 |

And so on…

    20.    In addition to the terms and conditions, Safeway's website in general

and, also more specifically, its "frequently asked questions" sections, also

intentionally and purposefully attempts to convey to consumers that the prices

they will pay for grocery deliveries will generally be the same as the in-store

7

1  prices of their local store on the day the order is filled and delivered.  Contrary to

2  these representations, however, Safeway marks up the prices on most of the items

3  purchased on-line by approximately ten percent (10%).  Safeway does not disclose

4  this practice and, in fact, goes to great lengths to represent to the contrary, because

5  it knows that the ten percent (10%) mark-up on prices is material to consumers.

6      21.     Consistent with its effort to convince consumers that they are

7  receiving in-store prices, Safeway's website makes multiple statements and

8  representations that are intended to, and do, lead consumers to believe that the

9  prices they are charged when they purchase groceries on-line for home delivery

10  will generally be the same as the in-store price at the local grocery store from

11  which they ultimately receive their groceries.  As noted, Safeway's terms and

12  conditions specifically provide that "You will be charged the prices charged in the

13  store on the day your order is picked and delivered."  The store referenced in the

14  terms and conditions unequivocally refers to the local Safeway store in the vicinity

15  of the individual placing the order (where the order is ultimately filled), as the

16  section of the terms and conditions pertaining to delivery makes clear:

17          **10.   Delivery**

18              ... We reserve the right not to deliver items that your
               local store, where your groceries are selected, deem to be
19              excessive in quantity.

20      22.     The "FAQ" section of Safeway's website, consistent with the

21  unambiguous terms and conditions, confirms that consumers purchasing groceries

22  through Safeway.com will be charged the same prices charged in the store and the

23  day the order is picked and delivered:

24          **Why does my order confirmation say that the prices
           are estimates only**

25
           Prices on our web site are estimated due to a number of
26          reasons. Products sold by weight (For example: produce,
           meat, etc.) have estimated prices.  The price you pay will
27          be based on the actual weight of those items at the time
           your order is picked for delivery.  The order
28          confirmation shows estimated prices only and does not
           include sales tax, CRV and other charges.  Depending

8

1                      upon the delivery date you select, prices could vary from
the time you place your order and the time your order is
2                      delivered, due to sale changes. <u>You will be charged the</u>
<u>prices charged in the store on the day your order is</u>
3                      <u>picked and delivered.</u>

4  (Bold in original, underline added.)  This is further corroborated by Safeway's

5  additional representation that the orders will be filled at a grocery store local to the

6  consumer's area. *See* Paragraph 14 above.

7       23.    The FAQ section on Safeway.com further confirms the policy with

8  the following dedicated question and answer:

9                      **Will I pay the same prices online that are in your**
**stores**
10

11                      Except for certain items, you'll find most of the same
great promotions online as in your local store. Our goal
12                      is to keep our prices low while giving you choices in
how you shop. Some special offers and promotions, such
13                      as manager specials, etc., are limited to in-store
purchases only and are not available for online
14                      purchases. Safeway Club Card specials vary from store
to store and Club Card prices may not apply to certain
15                      products offered online. <u>You will receive the prices and</u>
<u>promotions applicable from your online store on the day</u>
16                      <u>of delivery as noted next to each item.</u>

17  (Bold in original, underline added.)

18       24.    Thus, even if the terms and conditions were ambiguous (which they

19  are), Safeway represents to consumers that there is no price difference between the

20  price of groceries purchased in store and through Safeway.com, other than the

21  delivery charges and certain promotions such as manager's specials.

22       25.    The $0.10 per dollar price increase schedule appears to apply to most

23  items Safeway sells.  As a general matter, the only products which do not appear

24  to be subject to this scheme are certain sale items, which, ironically, are the only

25  products that Safeway discloses may vary from the in-store price.

26       26.    The pricing terms marketed and represented by Safeway, and set forth

27  in its contracts with consumers, were and are material to Plaintiff and any

28  reasonable consumer.

9

## PLAINTIFF'S TRANSACTION

27.   On or about February 10, 2011, Plaintiff placed an initial order of twenty-five (25) items through Safeway.com, totaling $95.32.

28.   Prior to ordering the items, Plaintiff was required to, and did, sign up for an account with Safeway.com.  Plaintiff viewed the terms and conditions section of the website.  Based on his review of the terms and conditions, Plaintiff, as Safeway intended, understood that he would be charged the same price for groceries as the daily in-store price at the local store where his order was filled the day it was delivered.  The terms and conditions were material to Plaintiff.

29.   Upon reviewing his Order Summary, Plaintiff believed that certain of the prices seemed higher than he was accustomed to paying in his local store.

30.   At the time that his groceries were delivered, Plaintiff received a delivery detail form ("Delivery Form"), which included a number of items such as his order number, the scheduled delivery date and time and, importantly, a detailed receipt showing the items purchased and the prices paid for those items. Prominently listed (twice) at the bottom of the receipt of the Delivery Form is the address of the local store where Safeway represented, and Plaintiff understood, the order was filled.  The Delivery Form also included the telephone number (including area code) of the local store.  Thus, consistent with the terms and conditions and its additional corroborating representations on its website, Safeway's Delivery Form is intended to and did convey to Plaintiff that he was charged the in-store prices at his local grocery store on the day his order was filled and delivered.  The format of the Delivery Form provided to Plaintiff was not unique.  Rather, Safeway provides nearly identical Delivery Forms to all consumers, containing specific information pertinent to a given transaction, including the address of the local grocery store that purportedly served as the basis for the pricing of the grocery items.  As set forth below, however, as Plaintiff later learned, the prices he was charged were not the in-store prices for products but,

10

1  rather, contained a ten percent (10%) mark-up.

2      31.    On or about April 29, 2011, Plaintiff placed a second order through

3  Safeway.com.  At the time he completed his online order, he received an Order

4  Summary detailing the prices of each of the grocery items.  The Order Summary

5  reflected that Plaintiff had placed an order for fourteen (14) grocery items, with an

6  estimated total of $50.40, exclusive of delivery charge ($9.95) and fuel surcharge

7  ($1.38).  The use of the Order Summary, which provides an estimated total, is

8  utilized by Safeway to further convey the impression that the final prices cannot be

9  determined until the items are selected from the consumer's local grocery store.

10      32.    The groceries were gathered by Safeway from a Genuardi's store

11  located near Plaintiff's residence.

12      33.    The groceries were subsequently delivered to Plaintiff's home, along

13  with a Delivery Form reflecting the amount charged for each item, and the store it

14  came from, and the time of checkout.

15      34.    Plaintiff compared the prices from the Order Summary (and the

16  Delivery Form) with the prices at his local Genuardi's store to determine if he had

17  been overcharged.

18      35.    In the course of reviewing the prices, Plaintiff determined that he had

19  been overcharged approximately ten percent (10%) on at least ten (10) of the

20  fourteen (14) purchased items:

| Item | | Online price | In-Store price |
|------|------|------|------|
| 1) | Butter | $4.39 | $3.99 |
| 2) | Mustard | $4.05 | $3.65 |
| 3) | Vinegar Rice | $3.89 | $3.49 |
| 4) | Yokogirl Noodles | $2.59 | $2.29 |
| 5) | Viva Rolls | $2.19 | $1.99 |
| 6) | Cream Cheese | $2.19 | $1.99 |
| 7) | Ketchup | $2.49 | $2.19 |

11

| 8)  | Coca Cola        | $6.59 | $5.49 |
|-----|------------------|-------|-------|
| 9)  | Mayonnaise       | $4.69 | $4.19 |
| 10) | Cannellini Beans | $2.19 | $1.99 |

36.   The inflated charges imposed on Plaintiff are entirely consistent with the scheme outlined in Paragraph 24 above, and which are routinely and regularly imposed on consumers making purchases nationwide through Safeway.com.

37.   As a result of Defendant's conduct, Plaintiff and members of the Class have suffered injury-in-fact and otherwise been damaged.

## CLASS ACTION ALLEGATIONS

38.   Plaintiff brings this lawsuit, both individually and as a class action, on behalf of similarly situated consumers, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3).  The proposed class consists of:

> All persons in the United States who have have purchased groceries from Safeway.com ("Class").

Excluded from the proposed Class are Defendant, its respective officers, directors and employees, and any entity that has a controlling interest in Defendant.  Any claims for personal injury are expressly excluded from this action.  Plaintiff reserves the right to amend the Class definition as further investigation and discovery require.

39.   **Numerosity:** Upon information and belief, the Class comprises thousands of consumers throughout the United States and is so numerous that joinder of all members of the Class is impracticable.  While the exact number of Class members is presently unknown and can only be ascertained through discovery, the identity of Class members is readily determinable by reviewing Defendant's records.  The unlawful practice of marking up grocery prices by approximately ten percent (10%) is not unique to Plaintiff's purchases but, rather, is routinely and uniformly employed by Safeway on all Class members.

40.   **Common Questions of Law and Fact Predominate:** There are questions of law and fact common to the Class, which predominate over any

1  individual issues, including:

2        (a)    whether Safeway overcharged consumers for groceries;

3        (b)    whether Safeway's conduct violated its contracts with Plaintiff
4              and members of the Class;

5        (c)    whether Defendant's conduct as alleged herein violates the
            UCL;

6        (d)    whether Defendant's conduct as alleged herein violates the
7              CLRA;

8        (e)    whether Defendant's conduct as alleged herein violates the
            FAL;

9        (f)    whether Plaintiff and Class members have sustained monetary
10             loss and the proper measure of that loss; and

11       (g)    whether Plaintiff and Class members are entitled to declaratory
            and injunctive relief.

12    41.    **Typicality:** Plaintiff's claims are typical of the claims of the members

13 of the Class.  Plaintiff and all members of the Class have been similarly affected

14 by Defendant's common course of conduct since they all relied on Defendant's

15 uniform representations and contractual provisions.

16    42.    **Adequacy of Representation:** Plaintiff will fairly and adequately

17 represent and protect the interest of the Class.  Plaintiff has retained counsel with

18 substantial experience in handling complex class action litigation.  Plaintiff and

19 his counsel are committed to prosecuting this action vigorously on behalf of the

20 Class.

21    43.    **Superiority of Class Action:** A class action is superior to all other

22 available methods for the fair and efficient adjudication of this lawsuit, because

23 individual litigation of the claims of all Class members is economically unfeasible

24 and procedurally impracticable.  While the aggregate damages sustained by the

25 Class are likely in the millions of dollars, the individual damages incurred by each

26 Class member resulting from Defendant's wrongful conduct are too small to

27 warrant the expense of individual suits.  The likelihood of individual Class

28 members prosecuting their own separate claims is remote, and, even if every Class

13

1  member could afford individual litigation, the court system would be unduly

2  burdened by individual litigation of such cases.  Individual members of the Class

3  do not have a significant interest in individually controlling the prosecution of

4  separate actions, and individualized litigation would also present the potential for

5  varying, inconsistent, or contradictory judgments and would magnify the delay

6  and expense to all of the parties and to the court system because of multiple trials

7  of the same factual and legal issues.  Plaintiff knows of no difficulty to be

8  encountered in the management of this action that would preclude its maintenance

9  as a class action.  In addition, Defendant has acted or refused to act on grounds

10  generally applicable to the Class and, as such, final injunctive relief or

11  corresponding declaratory relief with regard to the members of the Class as a

12  whole is appropriate.

13     44.    Certification of the Class under the laws of California is appropriate

14  because:

15          (a)    Safeway is a corporation conducting substantial business in and

16  from California;

17          (b)    Safeway's principal and executive offices, as well as its

18  corporate headquarters, are located in California;

19          (c)    Decisions regarding Safeway's on-line grocery business

20  through Safeway.com were (and are) made in California;

21          (d)    Safeway's representations regarding the conduct at issue in this

22  litigation were coordinated at, emanate from, and/or are developed at its California

23  headquarters;

24          (e)    The CLRA and other claims asserted in this Complaint on

25  behalf of the Class may be appropriately brought on behalf of California and

26  out-of-state Class members; and

27          (f)    A significant number of members of the Class reside in the

28  State of California.

14

Moreover, the terms and conditions provide as follows: "These Terms and Conditions and the order form, collectively constituting the sole and entire agreement between Safeway and you regarding the online shopping services, are governed by laws of the State of California without regard to conflict of laws and rules. The parties agree to jurisdiction and venue for any dispute hereunder solely in Pleasanton, California and Alameda County, California."

45.     Unless a class is certified, Defendant will retain monies received as a result of its conduct that was taken from Plaintiff and proposed Class members. Unless an injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

46.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

47.     To place orders for home grocery delivery, Class members must register and agree to Safeway's terms and conditions, which are a binding contract between Safeway and Class members.

48.     Safeway's terms and conditions state that consumers will be charged the in-store price on the day of delivery.

49.     Contrary to the terms of the contract, Safeway has charged Plaintiff and the Class members significantly more than the in-store prices on virtually all items delivered.

50.     Plaintiff and the Class members have performed all conditions and promises required by them to be performed in accordance with the terms and conditions of the contract.

51.     Safeway breached and continues to breach the contract by charging inflated prices for groceries beyond what is permitted under the express contract.

52.     As a result of Safeway's breach, Plaintiff and Class members have

15

1    suffered damages in an amount to be determined at trial.

2                          **SECOND CAUSE OF ACTION**
                  **For Violations of the Consumers Legal Remedies Act -**
3                          **Civil Code §1750, *et seq.***

4        53.    Plaintiff realleges and incorporates by reference the allegations

5    contained in the paragraphs above as if fully set forth herein.

6        54.    This cause of action is brought pursuant to the CLRA.  Plaintiff is a

7    consumer as defined by California Civil Code §1761(d).  The groceries constitute

8    goods within the meaning of the CLRA.

9        55.    Defendant violated and continues to violate the CLRA by engaging in

10   the following practices proscribed by California Civil Code § 1770(a) in

11   transactions with Plaintiff and the Class which were intended to result in, and did

12   result in, the sale of groceries online:

13               (5) Representing that goods or services have
                 sponsorship, approval, characteristics, ingredients, uses,
14               benefits, or quantities which they do not have or that a
                 person has a sponsorship, approval, status, affiliation, or
15               connection which he or she does not have;

16               (9) Advertising goods or services with intent not to sell
                 them as advertised;
17
                 (14) Representing that a transaction confers or involves rights,
18               remedies, or obligations which it does not have or involve, or which
                 are prohibited by law; and
19
                 (16) Representing that the subject of a transaction has been supplied
20               in accordance with a previous representation when it has not.

21       56.    Defendant violated the CLRA by representing that the groceries

22   purchased through Safeway.com would be the same price as if the groceries were

23   purchased in the local store at the time the order was filled.

24       57.    Plaintiff and the members of the Class reasonably relied on Safeway's

25   representations regarding the amount they would be charged for the groceries and

26   Plaintiff and the members of the Class have all been damaged and otherwise

27   suffered injury in fact as a result of Safeway's conduct.

28       58.    Pursuant to Section 1782 of the CLRA, Plaintiff notified Defendant in

                                                                              16

1   writing of the particular violations of Section 1770 of the CLRA by letter dated

2   May 17, 2011 (the "Notice Letter"). Defendant failed to comply with Plaintiff's

3   demands within thirty (30) days of receipt of the Notice Letter. Accordingly,

4   Plaintiff seeks all remedies available under the CLRA including, but not limited

5   to, damages.

6       59.   Defendant's conduct was and is fraudulent, wanton and malicious.

7       60.   Plaintiff and the members of the Class also are entitled to recover

8   attorneys' fees and costs pursuant to Civil Code §§ 1780 and 1781.

9       61.   Plaintiff's requisite CLRA Declaration, which was filed with the

10  initial Complaint, is attached hereto as Exhibit "A."

**THIRD CAUSE OF ACTION**
**False and Misleading Advertising**
**Violation of Bus. & Prof. Code § 17500,** *et seq.*

13      62.   Plaintiff realleges and incorporates the above allegations by reference

14  as if set forth fully herein.

15      63.   Defendant has engaged in the advertising and marketing alleged

16  herein with an intent to directly or indirectly induce the purchase of groceries from

17  Safeway.com.

18      64.   Defendant's representations regarding the comparative price of

19  groceries purchased in-store and on Safeway.com were and are false, misleading,

20  and deceptive.

21      65.   The false and misleading representations were intended to, and did,

22  deceive reasonable consumers, including Plaintiff.

23      66.   The false and misleading misrepresentations were material to Plaintiff

24  and Class members in connection with their respective decisions to purchase

25  groceries from Safeway.com.

26      67.   Plaintiff and other Class members relied on the false and misleading

27  representations, which played a substantial part in influencing the decision of

28  Plaintiff (and the Class) to purchase groceries from Safeway.com.

17

1     68.    At the time it made and disseminated the representations alleged

2 herein, Defendant knew, or should have known, that the statements were untrue or

3 misleading, and acted in violation of Cal. Bus. & Prof. Code §17500, *et seq.*

4     69.    Plaintiff, on behalf of himself and on behalf of the Class, seeks

5 restitution, disgorgement, injunctive relief, and all other relief allowable under

6 §17500, *et seq.*

7 **FOURTH CAUSE OF ACTION**
**Unlawful Business Acts and Practices in Violation of**

8 **California Business and Professions Code Section 17200, *et seq.***

9     70.    Plaintiff realleges and incorporates the above allegations by reference

10 as if fully set forth herein.

11     71.    California Business and Professions Code §17200 prohibits any

12 "unfair, deceptive, untrue or misleading advertising." For the reasons discussed

13 above, Defendant has engaged in unfair, deceptive, untrue and misleading

14 advertising, in violation of California Business & Professions Code §17200.

15     72.    California Business & Professions Code §17200 also prohibits any

16 "unlawful . . . business act or practice." Defendant has violated §17200's

17 prohibition against engaging in unlawful acts and practices by, *inter alia*, making

18 the representations and omissions of material facts, as set forth more fully herein,

19 and violating California Civil Code §§1572-1573, 1709, 1710, 1711, 1770,

20 Business & Professions Code §17200, *et seq.*; §17500, *et seq.*, and the common

21 law.

22     73.    Plaintiff and the Class reserve the right to allege other violations of

23 law which constitute additional unlawful business acts or practices. Such conduct

24 is ongoing and continues to this date.

25     74.    Defendant's acts, omissions, misrepresentations, practices and

26 nondisclosures, as alleged herein, also constitute "unfair" business acts and

27 practices within the meaning of Business & Professions Code §17200, *et seq.*, in

28 that its conduct is substantially injurious to consumers, offends public policy, and

1 is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct
2 outweighs any alleged benefits attributable to such conduct.

3     75.    As stated in this Complaint, Plaintiff alleges violations of consumer
4 protection, unfair competition and truth in advertising laws in California resulting
5 in harm to consumers.  Plaintiff asserts violations of the public policy of engaging
6 in false and misleading advertising, unfair competition and deceptive conduct
7 toward consumers.  This conduct constitutes violations of the unlawful, fraudulent
8 and unfair prongs of the UCL.

9     76.    There were reasonably available alternatives to further Defendant's
10 legitimate business interests other than the conduct described of herein.

11     77.    Defendant's conduct caused and continues to cause substantial injury
12 to Plaintiff and other Class members.  Plaintiff has suffered injury in fact and has
13 lost money as a result of Defendant's conduct.

14     78.    Defendant's claims, nondisclosures and misleading statements, as
15 more fully set forth above, were false, misleading and/or likely to deceive the
16 consuming public within the meaning of Business & Professions Code §17200.

17 **PRAYER FOR RELIEF**

18     **WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for
19 relief and judgment as follows:

20     1.    For preliminary and permanent injunctive relief enjoining Defendant,
21 its agents, servants and employees, and all persons acting in concert with it, from
22 engaging in, and continuing to engage in, the unfair, unlawful and/or fraudulent
23 business practices alleged above and that may yet be discovered in the prosecution
24 of this action;

25     2.    For certification of the putative Class and appointment of Plaintiff as
26 representative of the Class and his counsel as Class counsel;

27     3.    For restitution and disgorgement of all monies or property wrongfully
28 obtained by Defendant by means of its herein-alleged unlawful, unfair, and

1  fraudulent business practices;

2      4.      For an accounting by Defendant for any and all profits derived by

3  Defendant from its herein-alleged unlawful, unfair, and/or fraudulent conduct

4  and/or business practices;

5      5.      For an award of statutory damages according to proof;

6      6.      For an award of general damages according to proof;

7      7.      For an award of special damages according to proof;

8      8.      For exemplary damages;

9      9.      For an Order requiring Defendant to cease and desist from engaging

10  in the wrongful conduct alleged herein and to engage in a corrective advertising

11  campaign;

12      10.     For attorneys' fees and expenses pursuant to all applicable laws

13  including, without limitation, Code of Civil Procedure §1021.5, the CLRA, and

14  the common law private attorney general doctrine;

15      11.     For costs of suit;

16      12.     For statutory pre-judgment and post-judgment interest on any

17  amounts; and

18      13.     For such other and further relief as the Court deems just and proper.

19                              **JURY DEMAND**

20      Plaintiff demands a trial by jury on all causes of action so triable.

21

22  Dated: September 15, 2011          SHEPHERD, FINKELMAN, MILLER
23                                      & SHAH, LLP

24                              BY:

25                                  Lesley E. Weaver (SBN 191305)
                                    199 Fremont Street, 20th Floor
26                                  San Francisco, CA 92101
                                    Telephone: (415) 992-7282
27                                  Facsimile: (415) 489-7701
                                    lweaver@sfmslaw.com
28

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Shah (SBN 260435)
Scott R. Shepherd
SHEPHERD, FINKELMAN,
MILLER & SHAH, LLP
35 E. State Street
Media, PA 19063
Telephone (610) 891-9880
Facsimile (610) 891-9883
jshah@sfmslaw.com
sshepherd@sfmslaw.com

Steven A. Schwartz (pro hac vice)
Timothy N. Matthews (pro hac vice)
CHIMICLES & TIKELLIS, LLP
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
SteveSchwartz@chimicles.com
TimothyMathews@chimicles.com

*Attorneys for Plaintiff and the Class*

21