1  James C. Shah (SBN 260435)
   SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
2  401 West A Street, Suite 2350
   San Diego, CA 92101
3  Telephone: (619) 235-2416
   Facsimile: (619) 235-7334
4  jshah@sfmslaw.com

5  Attorneys for Plaintiff and on Behalf
   of All Others Similarly Situated
6
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
7     A Limited Liability Partnership
      Including Professional Corporations
8  P. CRAIG CARDON, Cal. Bar No. 168646
   BRIAN R. BLACKMAN, Cal. Bar No. 196996
9  4 Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
10 Telephone:    415-434-9100
   Facsimile:    415-434-3947
11 E-Mail:       ccardon@sheppardmullin.com
                 bblackman@sheppardmullin.com
12
   Attorneys for Defendant
13 SAFEWAY INC.

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16 MICHAEL RODMAN, on behalf of himself          Case No. 3:11-CV-03003 JSW (JCS)
   and all others similarly situated,
17                                               **JOINT LETTER REGARDING
              Plaintiff,                         DISCOVERY DIPSUTE**
18
        v.                                       Trial Date:   None Set
19                                               Judge:        Jeffrey S. White
   SAFEWAY INC.,                                 Mag. Judge:   Joseph C. Spero
20
              Defendant.
21

22     **Meet & Confer Attestation:**

23         Pursuant to Judge Spero's Standing Order Re: Discovery, the parties engaged in multiple

24 meet and confer telephone conferences and exchanged letters addressing these issues.  Due to the

25 fact Safeway's lead trial counsel was in Asia on business for the three weeks prior to this letter,

26 the parties held their final meet and confer session by telephone conference.  Lead trial counsel for

27 both parties participated in that conference.

28

October 8, 2012

Magistrate Judge Joseph C. Spero
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom G - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

RE:     *Rodman v. Safeway, Inc.*, No. C 11-03003 JSW (JCS)
        Joint Letter Concerning Discovery Disputes

Dear Judge Spero:

     Pursuant to Your Honor's Standing Order Regarding Discovery, the parties respectfully submit this joint letter outlining discovery disputes that have arisen pertaining to Plaintiff's first set of requests for production of documents and interrogatories.

     **PLAINTIFF'S PRELIMINARY STATEMENT:**  In this putative class action, Plaintiff alleges that defendant, Safeway, Inc., overcharged consumers for groceries ordered online through Safeway.com. Groceries ordered online are picked and delivered from a local store to the consumer.  At least as early as 2009, the terms and conditions for online orders (*i.e.*, the relevant contract, or "Special Terms"), and also the Frequently Asked Questions (FAQs) on the website, stated that the prices shown online were "estimates" only and, except for a delivery charge of around $10, customers would be charged the "*prices in the store* on the date your order is [filled/picked] and delivered."  Thus, there was "Price Parity" between product prices online and in the local store.  Around 2010, however, *without any changes to the terms of the contract or the FAQs*, Safeway began secretly marking up the prices of groceries ordered online. Safeway began adding an extra dime for every $.99 of the in-store base price for products ordered online.  So, for a product that cost $.99 in the local store, Safeway would charge $1.09 for that item delivered from the same store; for a product that cost $1.39 in the store, Safeway would charge $1.59; and so on.[1]

     Plaintiff claims that Safeway breached its contract with consumers and violated consumer protection laws.  In denying Safeway's Motion to Dismiss, Judge White stated that "the Court is not persuaded by Safeway's interpretations," and "Plaintiff's interpretation of the contract [at issue] is more likely the accurate construction...."  Dkt. No. 38, 4-5.  The Court further noted that "[Safeway] clearly stated that there was price parity between the online purchases and the price charged at the store." Dkt. No. 38, at 5. Plaintiff believes the evidence will show that Safeway was not merely negligent, but that it deliberately concealed the markup to increase the profitability of its struggling online segment. Plaintiff seeks compensatory and punitive damages, as well as other recoverable damages.

     At the May 25, 2012 conference, Judge White refused Safeway's request to bifurcate discovery, thereby entitling Plaintiff to discovery on all relevant matters. Judge White commented that "[it] should be pretty easy to get to the bottom of this... [s]o *I'm hoping the party in discovery will get you all to what really happened here.*" *See* Dkt. No. 55, at 4:15-23 (emphasis added).  Safeway, however, is refusing to produce clearly relevant evidence.  Plaintiff is entitled to know "what really happened here," which includes Safeway's internal documents regarding the decision to eliminate Price Parity without changing its disclosures.  To date, Safeway has produced only a database of transactions and less than 600 pages of other documents, and it refuses to produce virtually any internal documents.  Indeed, Safeway has not produced a single document related to why it eliminated Price Parity or why it decided

---

[1]      Plaintiff believes that Safeway used ten cent increments, as opposed to a percentage increase, in order to further conceal the mark-up from consumers.  By adding a dime, the final digit is always consistent with the final digit in the store, which is often a nine (*e.g.*, $1.99). If Safeway used a percentage increase, the last digit of the product price could be an unusual number and raise suspicion.

The Hon. Joseph C. Spero
October 8, 2012
Page 2

against making any disclosures to customers about its decision to eliminate Price Parity. Although Judge White indicated that he hoped that the parties would get to the bottom of this quickly (with which sentiment Plaintiff concurs), he did not say that Safeway could refuse to produce discovery on core issues. Contrary to Safeway's straw-man argument, Plaintiff is not demanding that Safeway search the computers of every Safeway employee for possible responsive documents. Safeway should be required, however, to search for responsive documents from the computers of the four individuals it has identified as having implemented the elimination of Price Parity, along with any employees identified per Order of this Court (see Section A below) as persons who played a substantive role in the decision to eliminate Price Parity without disclosing the mark-up to Safeway customers.

**SAFEWAY'S PRELIMINARY STATEMENT:** This is a breach of contract and false advertising case. Plaintiff claims Safeway promised through its public statements on Safeway.com that it would charge the same prices online that were available in its physical stores. Although Safeway originally provided price parity between its online and physical stores, it eliminated that policy in April 2010. Safeway denies that its terms and FAQS ever promised price parity.[2] At the May 25, 2012, Scheduling Conference, Judge White laid out his vision of what discovery would look like in this case. First, Judge White noted that, at this stage of the case, the point of discovery should be to determine "what really happened here." *See* May 25, 2012 Hearing Transcript (Dkt. No. 55) at 4:15-5:4. Judge White suggested a narrow course of discovery; "[t]he facts are whatever they are," he noted, and instructed the parties to "just figure out what the implication of those facts are without turning over every leaf." *Id.* To that end, Judge White remarked that "discovery needs to be tightly controlled," and he wanted to be certain that discovery was "limited on a very narrow trail, getting to the truth of what happened here." *Id.* Given Judge White's admonition, the Court might reasonably expect Plaintiff would propound limited, tightly focused discovery targeted at determining the "truth of what happened here." That, unfortunately, is not the case.

Instead, Plaintiff served overly broad requests essentially seeking "all documents relating to" broad categories of information such as Safeway.com's pricing, procedures, policies, communications, decision making, advertising, and internal drafts. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008) ("all documents" requests "take little account" of "responsibility" to propound requests with "reasonable particularity" under Rule 34). Plaintiff's requests even sought the identity and personal information of Safeway.com's customers, which Safeway refused and Plaintiff has decide not to pursue "at the present time." Safeway has attempted, in its response, to place reasonable boundaries around the requests by providing the material directly relevant to Plaintiff's claims, going to the truth of what happened. For example, Safeway produced transaction data from January 2008-October 2011, reflecting the sale and transaction information for tens of millions of online product sales. It also identified the key decision makers involved and produced the documents of the marketing executives in charge of the program at issue. It produced scripts and Call Center logs relating to price parity, refunds and cancellations. It produced consumer surveys, examples of order summaries, and versions of its webpages. It has also agreed to produce its advertising circulars that amount to some 250,000 ads. Despite this, Plaintiff has repeatedly insisted he wants more. In doing so, he has ignored Judge White's "narrow trail" and instead elected to "turn[] over every leaf."

---

[2]      Plaintiff's reference to the District Court's order, denying Safeway's Motion to Dismiss, is a red-herring. It ignores the context of the Motion to Dismiss (limited to selected out of context statements in Plaintiff's pleading) and the complexities of grocery pricing. Indeed, the Order does not mention and appears to have overlooked the FAQ that directly addresses this pricing issue and states that a customer will be charged the price stated in the "online store."

The Hon. Joseph C. Spero
October 8, 2012
Page 3

There are numerous discovery requests before this Court and almost as many issues. Nonetheless, the principal issues are fairly discrete and fall into five categories: (1) whether Plaintiff is entitled to materials regarding Safeway's "state of mind" in eliminating price parity; (2) whether Safeway must perform calculations and analyses for Plaintiff despite having provided the relevant data and formulas; (3) whether Safeway must produce documents after October 2011, despite the fact customers after June 2011 were explicitly on notice Safeway did not provide price parity; (4) whether Safeway is required to produce now any document it may ultimately use to support its defense or oppose class certification and (5) whether Plaintiff is entitled to know (and ultimately depose) every Safeway executive who, in any way, was involved in the decision to eliminate price parity. Even if Plaintiff were entitled to full-blown discovery, these requests would be improper. But where, as here, discovery is "limited on a very narrow trail," Plaintiff's requests fall well outside the bounds of the limited discovery Judge White discussed. Given the breadth of Plaintiff's requests, the volume of information produced and the limited space of this joint letter, Safeway requests further briefing on these issues.

A.    **Interrogatories Nos. 1 and 2 – Identification of Witnesses**

**Plaintiff's Statement:** Safeway refuses to identify the individuals who were directly and substantively involved or consulted in: (1) the *decision* to eliminate Price Parity; and (2) the *decision* to (not) make disclosures concerning the elimination of Price Parity. Instead, Safeway identified only four individuals who were responsible for "implementing" changes or communications.[3] *Implementing* a new policy, of course, is very different from making a *decision* to change the policy. Merely identifying individuals who carried out the decisions is insufficient. Moreover, as discussed below, Safeway's state of mind in failing to make adequate disclosures is clearly relevant. (See Section E). "Interrogatories request[ing] 'the identity and location of persons having knowledge of any discoverable matter,' ... fall squarely within Rule 26(b)(1). *In re Aetna Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 8038, *6 (E.D. Pa. May 26, 1999); *see also Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.*, 2005 U.S. Dist. LEXIS 43648 (N.D. Cal. June 21, 2005) ("parties may be compelled to disclose the identity of persons having knowledge"); 8 Wright, Miller, & Marcus, FEDERAL PRACTICE AND PROCEDURE 2d § 2013 (1994) (hereinafter, "Wright, Miller") ("courts have repeatedly allowed discovery of the names and locations of persons with knowledge of the facts") Plaintiff has made clear he is not seeking identification of *every* person who had some remote role. Rather, Plaintiff seeks identification of persons who played a key or substantive role. Similarly, Plaintiff has never said he intends to depose every single witness and, in any event, that is not a basis to conceal the identity of witnesses with relevant knowledge.

**Safeway's Statement:** Safeway has not "refused" to identify the individuals directly involved in the "decisions" to eliminate price parity and/or change Safeway's public disclosures. Rather, it has identified the actual decision makers, who provided the input and analysis for eliminating price parity and were responsible for creating and implementing the public statements and actions taken relating to the elimination of price party. Plaintiff, however, continues to insist that Safeway identify everyone up Safeway's chain of command no matter how tangential their involvement. That information goes well beyond the focused discovery Judge White directed. Moreover, why Safeway decided to eliminate price parity – its motivation – is entirely irrelevant. Plaintiff's complaint alleges false advertising and breach of contract claims based upon the published statements/information on Safeway's website. Under established California law, Safeway's motivation (its state of mind) when it published its allegedly false advertisements or breached its contract is irrelevant. *People v. Dollar Rent-A-Car Systems, Inc.*, 211 Cal.App.3d 119, 130 (1989) ("in order to recover under [Section 17500], it is necessary to show

---

[3]    Safeway's portion of this letter states that it identified individuals who provided "input and analysis," but Safeway's actual interrogatory responses, and consistent with the parties' meet and confer sessions, were limited to individuals who "were substantively involved and responsible for *implementation.*" (emphasis added). Safeway is refusing entirely to produce documents and information regarding decision-makers central to the core issues in the litigation.

only that members of the public are likely to be deceived."). "Intent of the disseminator and knowledge of the customer are both irrelevant." *Chern v. Bank of America*, 15 Cal.3d 866, 876 (1976). Safeway has repeatedly asked Plaintiff to explain how such information is relevant. Plaintiff has never provided an adequate response. Frankly, Plaintiff wants to compel Safeway to identify high-ranking Safeway executives in order to depose them on a subject with which they have only passing familiarity. That is inappropriate. *See Thomas v. Cate*, 715 F.Supp.2d 1012, 1048 (E.D. Cal. 2010); *General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002) (courts often deny depositions of high-ranking corporate officials when lower executives have same information).

**B.    Interrogatory No. 3 – Mark-up Calculations**

**Plaintiff's Statement:** Safeway refuses to answer Plaintiff's interrogatory requesting that Safeway provide its calculation of aggregate mark-ups charged to Safeway's consumers. Instead of providing these sums (which are undoubtedly readily available to Safeway), it told Plaintiff that he must calculate the answer from a database of approximately *26 million* individual sales records, produced as text files. (At the same time, Safeway has also refused to produce any internal financial documents that reflect mark-up information -- see Section D below.)

Under Rule 33(d), a party can answer an interrogatory by reference to documents only when the burden of ascertaining the answer is substantially the same for both parties. *Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 650 (N.D. Cal. 2004). "An important—often key—factor in weighing the respective burdens on the parties is the interrogated party's familiarity with its own documents." *RSI Corp. v. IBM*, 2012 U.S. Dist. LEXIS 105986, *3-4 (N.D. Cal. July 30, 2012). Safeway is unquestionably in a better position to calculate the aggregate amount of the mark-up. This is particularly true here since Safeway has not provided any formula or script that can be plugged into the database to calculate the mark-up. Given the relative burden of calculating the aggregate number, it is incumbent on Safeway to answer this interrogatory. Moreover, it is entirely appropriate for Plaintiff to use interrogatories as a means of gathering evidence to be used at trial and gaining admissions. *See Woods v. Kraft Foods, Inc.*, 2006 U.S. Dist. LEXIS 73126, *9 (E.D. Cal. Sept. 21, 2006).

**Safeway's Statement:** This interrogatory asks Safeway to state the monthly aggregate price and percentage difference between online and physical store prices. Safeway, however, has produced detailed information on all of its online sales transactions from January 2008-October 2011. Safeway also provided the mark-up formula so that Plaintiff can run his own projections and analyses. Plaintiff insists Safeway must run these reports for him because it has the ability to do it. But under *RSI Corp. v. IBM*, 2012 U.S. Dist. LEXIS 105986, at *3 (N.D. Cal. July 30, 2012) – a case cited by Plaintiff – a "requesting party claiming an inappropriate use of Rule 33(d) must make a prima facie showing that the use of Rule 33(d) is somehow inadequate, whether because the information is not fully contained in the documents or because it is too difficult to extract." Plaintiff has not made any showing that he has even *tried* to manipulate or analyze the data before him or that it would be "too difficult" to do so. Moreover, not only is that request burdensome, it requires much more of Safeway than is permitted under the Federal Rules. *See Ransom v. Gray*, 2009 U.S. Dist. LEXIS 118793, at *11 (S.D. Cal. 2009) (sustaining objection that is was "improper" for plaintiff to "attempt[] to have Defendant's retained expert do Plaintiff's work"); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006).

**C.    Document Requests Nos. 1 and 2 – Database Records after October 2011**

**Plaintiff's Statement:** Plaintiff's first two document requests sought transaction data. Safeway has refused to produce records regarding any transactions after October 2011, based on its argument that it has no liability after it modified its website disclosures in October 2011. Plaintiff, however, disputes Safeway's argument and notes the Court, in denying Safeway's motion to dismiss, did not limit the temporal scope of class members' claims. Plaintiff believes that the modified disclosures were ineffectual because (a) they did not fairly disclose the shift from price parity, and (b) in any event

The Hon. Joseph C. Spero
October 8, 2012
Page 5

Safeway failed to provide *actual notice* of the new policy to existing customers. S*ee e.g., Douglas v. United States Dist. Court*, 495 F.3d 1062 (9th Cir. Cal. 2007) ("Parties to [a contract established through online terms and conditions] have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side"). Just like the defendant in *Douglas*, Safeway merely posted a change to the contract terms on its website, without actually notifying pre-existing customers—who already went through the extensive registration process—that the terms had changed. In any event, this discovery dispute is not the time to resolve the legal question. "A party may base [discovery] on its theory of the case. [Discovery] cannot be objected to because, on the [opposing] party's theory, [the requests] are based on a false assumption." 8A Wright, Miller §2168. Accordingly, the post-October 2011 transaction data (a) bears on the scope of the class, and (b) could likely be deemed to be part of the class members' damages.

**Safeway's Statement:** Plaintiff's contention that Safeway must produce the transaction data through the present exceeds Safeway's discovery obligations and Judge White's instruction to tailor discovery to the narrow trail of what really happened here. Safeway provided the responsive data for the period of January 2008-October 2011 (and a list of available fields). Safeway asserts liability, if any, cut off in June 2011 when Safeway changed the FAQs to state that online and in-store prices, discounts and offers may differ. Despite this, Safeway provided responsive material through October 2011 – when the Special Terms were revised to expressly state that customers are charged the online store prices. Thus, customers knew that the online store prices (not physical store prices) were being charged. Moreover, each new order constitutes a new and separate contract subject to the terms at that time. Plaintiff argues these revisions were ineffective because customers were not individually notified, citing *Douglas v. United States District Court*, 495 F.3d 1062 (9th Cir. 2007), and *Sawyer v. Bill Me Later, Inc.*, 2010 U.S. Dist. LEXIS 138098 (C.D. Cal. Oct. 2, 2010). Both cases are inapposite. In *Douglas*, the Ninth Circuit simply held that, without advance notice, a telephone service provider could not change an existing contract by merely posting a revisions on its website. 495 F.3d at 1065. In *Sawyer*, the court found plaintiff bound to the new terms because he had been provided email notice of the revisions. Here, Safeway's customers were provided unequivocal notice that there is no price parity in June 2011 and knew of the changes to the terms in October 2011, because the revisions were posted on the same website customers use to place and complete their online orders and the customers were contractually obligated to review those terms prior to completing purchases, each of which constituted a new contract. Indeed, the Terms of Use and Special Terms (the "Terms") expressly informed customers that: 1) Safeway may revise the Terms at any time, 2) revisions would be posted on the website and effective upon posting, 3) continued use of the website after posting would constitute acceptance and consent, 4) customers should review the Terms regularly, and 5) they must review the Terms before each order. Regardless, the additional information sought is of the exact same type as has already been produced and is only relevant to calculating damages. It can be produced at a later date if needed without any prejudice.

## D.   Document Requests Nos. 2, 4, and 5 – Financial Documents

**Plaintiff's Statement:** As noted above, Safeway refuses to provide Plaintiff with its aggregate price mark-up calculations. At the same time, Safeway has also refused to provide *any* internal reports, memoranda, charts, etc., concerning the difference between prices charged online and prices in the store, arguing that these are irrelevant because the total mark-up can be computed through the database. Obviously the difference between prices charged online and prices in the store is not merely relevant, it is the gravamen of the case. Safeway has no basis to refuse to produce these documents.

It is beyond question that discovery of financial documents relevant to damages is appropriate. *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 693 (1933) ("discovery is as

appropriate for proof of a plaintiff's damages as it is for proof of other facts essential to his case").[4] Safeway's argument that internal documents related to price mark-ups are irrelevant is baseless. "A relevant matter is any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*, 2011 U.S. Dist. LEXIS 59724, *7 (N.D. Cal. June 2, 2011) (internal quotations omitted). In other words, "discovery should be allowed unless the information sought has no conceivable bearing on the case." *Id.*

In addition to being relevant, the requested documents are not "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). Unlike Safeway's own internal reports, charts, reports, etc., the database cannot be handed to a witness or shown to a jury. Further, Safeway cannot challenge the methodology in its own reports (as it likely would Plaintiff's calculations). Safeway cannot use the production of its transaction database to avoid producing other responsive materials.

**Safeway's Statement:** These Requests ask Safeway to produce certain reports and analyses of the transaction data that Safeway already provided to Plaintiff. Safeway has provided the relevant transaction and product sales data – it is now Plaintiff's job to decide what to do with it. *See* Section B above. These Requests also seek "all documents" relating to Safeway.com's financial reports, internal communications about pricing or price difference, and any online pricing policies and procedures. Plaintiff claims to need these internal documents to prove intent and damages. But, as before, Safeway's motivation – why it chose to change the price parity policy – is irrelevant. *See* Section A. Moreover, the burden of seeking "all documents" easily outweighs any nominal relevance the documents may have. Fed. R. Civ. P. 26(b)(2)(C)(iii); *Munoz-Santana v. U.S. Immigration & Naturalization Service*, 742 F.2d 561, 563 (9th Cir. 1984) (request seeking all INS applications for two-month period creates undue burden in view of how maintained, cost of partial compliance and given minimal need for records); *Ricotta v. Allstate Ins. Co.*, 211 F.R.D. 622, 624 (S.D. Cal. 2002) (burden and expense" of requiring the defendant to respond "far outweigh[ed] the likely benefit").

**E.     Document Requests Nos. 6, 9-10, 17,  19 and 35 – Internal Documents**

**Plaintiff's Statement:** The terms and conditions (*i.e.*, the contract) and other disclosures made concerning pricing (*e.g.*, FAQs) are central to this case. Plaintiff requested documents concerning those statements, including drafts and changes made thereto, and internal discussion and analysis thereof. Similarly, Plaintiff requested documents related to Safeway's decision to adopt the formula marking up prices in ten cent increments (instead of a more streamlined formula like a straight 10 % mark-up). Safeway, however, refuses to produce *any internal documents* concerning those pivotal matters, arguing that they are irrelevant because Safeway's "intent" is not at issue. Safeway almost assuredly has documents reflecting discussions whether to change disclosures when it eliminated Price Parity. Safeway's refusal to produce internal documents is baseless for at least five reasons.

First, since Plaintiff's false advertising claim can be proved by showing that Safeway made a statement "which *is known*, or which by the exercise of reasonable care should be known, to be untrue or misleading," Cal Bus & Prof Code § 17500 (emphasis added), any internal document reflecting Safeway's internal assessments is potentially critical evidence. Likewise, internal discussion could be relevant to show that Safeway's conduct was in fact unfair, deceptive, or fraudulent in support of Plaintiff's claims under the CLRA and Business and Professions Code.

Second, any documents reflecting that Safeway knew or had reason to know that consumers might be misled can be used as evidence in deciding the meaning of the contract at issue. *See e.g.*,

---

[4]     Financial information, such as the additional profit earned form the price markup, is also relevant to Plaintiff's punitive damages claim. *Del Campo v. Am. Corrective Counseling Servs.*, 2009 U.S. Dist. LEXIS 103771, *11 (N.D. Cal. Oct. 23, 2009).

The Hon. Joseph C. Spero
October 8, 2012
Page 7

Restatement 2d of Contracts, § 20 (where one party has reason to know the meaning attached to a contract term by the other party, and the second party does not know of any different meaning attached by the first, the meaning of the second party controls).

Third, Safeway raised its own "good faith" as its Twelfth Affirmative Defense in its Answer, thereby putting its own internal discussions and assessments at issue.  *See* Dkt. No. 39.

Fourth, Plaintiff has asserted a claim for punitive damages.  Thus, documents reflecting intentional or reckless conduct are relevant.

Fifth, production of these documents will likely reveal Safeway's thought process regarding its shift from price Parity to an undisclosed mark up. Such direct evidence and admissions will likely streamline the need to conduct more intrusive discovery into these issues.

**Safeway's Statement:**  In response to these Requests, Safeway has generally produced its published documents for the relevant period, including the Terms and FAQs, Call Center scripts and samples of published advertising and flyers.  Again, this was not enough for Plaintiff.  Ignoring Judge White's limitations, Plaintiff continues to seek documents "related to" Safeway's internal decision-making – again, to prove Safeway's motivation or intent in changing its policy and its choice of language.  As previously discussed, this is irrelevant; "intent" is not an element to establishing a false or misleading statement.  *Dollar Rent-A-Car Systems,* 211 Cal.App.3d at 130; *Chern,* 15 Cal.3d at 876.  Plaintiff through this process has agreed with the holding of *Dollar* as his liability burden.  However, he now points to language in the statute suggesting intent is an element.  Plaintiff cannot have it both ways.  If Plaintiff wants to acknowledge a higher threshold than what the case law requires (i.e., intentional deception versus members of the public likely being deceived) for discovery relevance, then he must live with it for purposes of assessing liability as well.  Plaintiff cannot choose a higher liability standard for discovery relevance and a lower liability standard for actually proving his claims.  Further, Plaintiff's citation to Section 20 of the Restatement of Contracts is misplaced.  That addresses whether one party is aware of the other's understanding.  Whether Safeway was aware that customers allegedly believed price parity persisted is not the information sought here.  Regardless, Safeway has produced the records responsive on that issue, e.g., Call Center logs.  Finally, the burden arguments discussed in Section D apply with equal force here.

## F.      Document Requests Nos. 7 and 8 – Customer Communications, Cancellations

**Plaintiff's Statement:**  Plaintiff requested that Safeway produce documents relating to "communications with customers concerning [online] prices," and "cancellations or refunds [for] customers who sought a refund relating to the prices charged."  Safeway refuses to produce anything other than call center records and public-facing advertisements.  Plaintiff is not seeking to have the computer of every Safeway employee searched as Safeway now claims.  Rather, Plaintiff takes issue with the fact that Safeway refuses to any produce internal documents.  Safeway should at least be required to search the computers of the four individuals it identified responsive documents.

**Safeway's Statement:**  Safeway has produced or agreed to produce the records that reflect direct communications with customers, i.e., Call Center logs and ads.  Safeway's internal discussions regarding these documents are irrelevant for the reasons discussed in Section A.

## G.      Document Request No. 11 – Employee Manuals

**Plaintiff's Statement:** Plaintiff requested "employee manuals, training materials, or instructions for fulfilling orders placed through Safeway.com."  These are relevant because Safeway asserts that the fulfillment process it utilized was consistent with its contractual arrangement with Plaintiff and members of the class.  Plaintiff disagrees.  Accordingly, documents detailing the process are relevant.

**Safeway's Statement:** This Request seeks "all documents" relating to manuals, training materials and instructions for fulfilling customer's orders. In response, Safeway produced its Call Center scripts relating to cancellations, refunds, price parity, or the lack thereof. There is no specific manual for online order fulfillment.

## H.    Document Request No. 15 – Organizational Charts

**Plaintiff's Statement:** Plaintiff requested organizational charts and employee rosters that identify individuals with knowledge of the matters alleged in the Complaint. Safeway produced a single marketing department chart as of the date of Plaintiff placed his orders. That response is deficient for two reasons. First, Plaintiff is entitled to know the identity of witnesses during all relevant times so that, for example, he can obtain information from former employees. *See Plumbers & Pipefitters Local 572 Pension Fund*, 2005 U.S. Dist. LEXIS 43648, at *16 ("parties may be compelled to disclose the identity of persons having knowledge"). Second, the decision to eliminate Price Parity involved other departments, not just marketing. Safeway's protestations about depositions are premature.

**Safeway's Statement:** Safeway has produced an organizational chart of the department (Safeway.com marketing) responsible for this program and identified the Directors actively responsible for Safeway's pricing policy and public statements. As explained in Section A above, Plaintiff's demand for rosters and organization charts is merely a prelude to his attempt to improperly depose high-ranking Safeway executives and is improper.

## I.    Document Requests Nos. 20 and 21 – Fleming, Guthrie, and Marvin

**Plaintiff's Statement:** Safeway's Rule 26(a) disclosures identified three individuals likely to have discoverable information and who it may use to support its claims and defenses: Steve Fleming, Steve Guthrie, and Frank Marvin. Plaintiff sought production of responsive documents from the files of these three witnesses. Safeway refuses to produce documents from, or even search the files of, Mr. Marvin. There is no basis to refuse to search and produce documents from one of the witnesses Safeway's identified in its Rule 26(a) disclosures. Similarly, Safeway has also refused to search/produce any documents from the files of Safeway.com CFO/VP Michael McCready, who Safeway identified in its interrogatory responses as being involved in the implementation of the shift from Price Parity.

**Safeway's Statement:** Safeway has produced the files of both Steve Guthrie and Steve Fleming relating to the implementation of the elimination of price parity. Messrs. Guthrie and Fleming, as directors of marketing for Safeway.com, were responsible for implementing the elimination of price parity and the information published or removed from publication when Safeway decided to stop offering price parity. Messrs. Marvin and McCready are finance executives, who were not directly involved with the public facing statements. Plaintiff claims he wants all other internal communications as well. As discussed above, the internal communications reflecting Safeway's motivation are irrelevant. *See* Sections A and E above.

## J.    Document Requests Nos. 23 and 33 – Documents Safeway May Use

**Plaintiff's Statement:** Plaintiff sought all documents, to the extent not already produced, that Safeway may use in support of its affirmative defenses or in opposition to class certification. Safeway is obligated to disclose these documents anyway under Rule 26(a)(1)(A)(ii), and such requests are routine. *See e.g., Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, 2009 U.S. Dist. LEXIS 106424, *4-6 (S.D.N.Y. 2009) (grating motion to compel documents that defendants might use in support of affirmative defenses over the defendants objection that doing so would invade attorney work product privilege; "[w]hatever vitality this sweeping contention may once have had, it has been significantly diminished [by] Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure"); *see also Certain Underwriters at Lloyd's v. Nance*, 2007 U.S. Dist. LEXIS 9260, *8-13 (D.N.M. Jan. 29, 2007) ("There

can be no dispute that [a party] is entitled to discover … [fact and evidence on which the other party] will rely"). Safeway is not permitted by the rules to sandbag Plaintiff with surprise documents. In *McIntosh v. McAfee, Inc.*, 2008 U.S. Dist. LEXIS 120301, *9 n. 5 (N.D. Cal. Aug. 29, 2008), cited by Safeway, the Court declined to require production of documents the defendant might use to oppose class certification *because the Plaintiffs were no longer seeking class certification*, not because such requests are improper.

   **Safeway's Statement:** These Requests exemplify Plaintiff's flouting of Judge White's admonition to limit the scope of discovery. They are improper for numerous reasons: they are premature (Plaintiff has not even filed his class certification motion – how can Safeway know what it will rely on to oppose it?), they implicate the work-product doctrine (Safeway must provide Plaintiff with a preview of its case), and they have been propounded in the spirit of gamesmanship (Plaintiff contends he may seek to preclude Safeway from using documents unless produce now). For those reasons, these Requests are improper. *See, e.g., McIntosh v. McAfee, Inc.*, 2008 U.S. Dist. LEXIS 120301, at *10 (N.D. Cal. Aug. 29, 2008); *Gen-Probe Inc. v. Becton, Dickinson & Co.*, 2010 U.S. Dist. LEXIS 49436, at *4-5 (S.D. Cal. May 19, 2010).

**K.    Document Request No. 24 – Audited Financials**

   **Plaintiff's Statement:** Audited financial documents for the Safeway.com business segment are relevant to damages (*e.g.*, the increased profits associated with the elimination of Price Parity), as well as to punitive damages. The audited financials serve as a cross-check to the aggregate data. Production will streamline discovery regarding damages.

   **Safeway's Statement:** In response to this Request, Safeway has produced the specific transaction data that allows plaintiff to calculate each individual's alleged damage, i.e., the alleged overcharge. The only possible justification for production of Safeway.com's financial reports would be to support a punitive damages claim. The case scheduling order, however, only addresses class certification. This type of sensitive financial discovery is not necessary for purposes of class certification. It is premature and beyond the scope of Judge White's "narrow trail" of "what really happened here."

**L.    Document Requests No. 27 – Manuals and Software for the Database**

   **Plaintiff's Statement:** Plaintiff requested manuals or software that could be used with the database to convert online prices to their corresponding in-store price. During the September 27 meet and confer, Safeway refused to even disclose whether or not such documents exist. These documents are relevant to calculating damages.

   **Safeway's Statement:** This Request seeks "all documents" relating to any manuals or instructions for how to calculate on an aggregate and individual basis the price difference between the online and physical stores. This Request effectively asks Safeway to do Plaintiff's work for him. Plaintiff has the data, he has the formula – it is now his job to perform his own analysis. *See* Sections D and B above.

**M.    Document Request No. 30 – Promotion Parity**

   **Plaintiff's Statement:** One of the FAQs on Safeway.com during the relevant time stated that "Some *special offers and promotions, such as manager specials*, etc., are limited to in-store purchases only and are not available for online purchases." In its motion to dismiss, Safeway argued that this disclosure concerning the lack of "Promotion Parity" meant that Safeway could charge different base prices for products. Unless Safeway agrees to waive any argument based on this FAQ, Plaintiff is entitled to documents concerning Promotion Parity and the FAQ to rebut these arguments.

**Safeway's Statement:**  This Request seeks "all documents" concerning Promotion Parity. The Request goes well beyond the scope of discovery. Plaintiff has not alleged Safeway promised "promotion parity," and, in fact, acknowledges in the Amended Complaint (¶¶ 23-24) that Safeway communicated to customers that promotion parity did not exist. Nevertheless, Safeway has produced the public facing documents (Terms and FAQs) addressing this issue and has informed Plaintiff which items in the transaction data were on promotion.

**N.      Document Requests Nos. 31 and 32 – Surveys**

**Plaintiff's Statement:**  Safeway's Answer to the complaint denies that consumers were misled and even asserts that class members acted in bad faith and have unclean hands.  Plaintiff requested copies of all customer surveys concerning online shopping, as well as related documents such as communications with survey consultants and internal communications concerning the results. Safeway produced only surveys (which it apparently intends to rely upon in opposing class certification) referencing consumer awareness of prices and refuses to produce any communications with survey consultants (other than contracts) or internal discussion documents. First, Plaintiff is entitled to communications with the survey consultants and internal discussion of survey results because those are reasonably calculated to lead to the discovery of admissible evidence.  Second, Safeway is not entitled to limit its production only to surveys about consumer awareness of prices as other surveys are likely equally as relevant.

**Safeway's Statement:**  In response to these requests, Safeway has produced the surveys reflecting customer awareness of, materiality of, or reliance on price parity, and agreed to produce any portions of the contracts that reflect the methodology or parameters used in those surveys.  Again, Plaintiff wants more, including all internal communications regarding the surveys.  This exceeds Judge White's "narrow trail" and seeks irrelevant documents that go far beyond the scope of permissible discovery in this case.

Respectfully submitted,

Dated: October 8, 2012

**CHIMICLES & TIKELLIS LLP**
By: /s/ Timothy N. Mathews
Steve A. Schwartz
Timothy N. Mathews

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
By:  /s/ James C. Shah
Scott Rhead Shepherd
James C. Shah

*Attorneys for Plaintiff Michael Rodman*

Dated: October 8, 2012

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
By: /s/ Brian R. Blackman
P. Craig Cardon
Brian Blackman

*Attorneys for Defendant Safeway Inc.*

**CERTIFICATION**

I, Brian R. Blackman, am the ECF User whose identification and password are being used to file this Joint Letter Regarding Discovery Dispute.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that James C. Shah and Timothy N. Mathews have concurred in this filing.

Dated:  October 8, 2012              SHEPPARD MULLIN RICHTER & HAMPTON LLP


                                 By      _/s/ Brian R. Blackman_____
                                         Brian R. Blackman
                                         Attorneys for Defendant