SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
JAMES C. SHAH (SBN 260435)
ROSE F. LUZON (SBN 221544)
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (619) 235-7334
jshah@sfmslaw.com
rluzon@sfmslaw.com

*Attorneys for Plaintiff and on Behalf
of All Others Similarly Situated*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RODMAN, On Behalf of Himself and All Others Similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> SAFEWAY, INC., <br><br> Defendant. | Case No.: 3:11-cv-03003 JST (JCS) <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Date: December 5, 2013 <br> Time: 2:00 p.m. <br> Crtrm.: 9 – 19th Floor <br> Trial Date: None Set <br> Judge: Hon.  Jon S. Tigar <br><br> Complaint filed: June 17, 2011 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

NOTICE OF MOTION.................................................................................................... 1

I.    INTRODUCTION ....................................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................ 3

III.    ARGUMENT .............................................................................................. 9

    A.    Standard For Class Certification ................................................. 9

    B.    This Action Meets The Requirements For Class Certification ................................................................................... 10

        1.    The Class Is Sufficiently Numerous And Ascertainable.................................................... 10

        2.    Common Issues Exist And Predominate ................................ 11

            a.    Multiple Common Questions Exist................................. 11

            b.    Common Questions Of Law And Fact Predominate Over Any Questions Affecting Only Individual Members................................. 12

                i.    The Breach Of Contract Claim ........................... 15

                ii.    The CLRA Claim ................................................ 16

                iii.    The UCL And FAL Claims................................. 17

                    (a)    Safeway's Conduct Is Unlawful............................ 19

                    (b)    Safeway's Conduct Is Fraudulent ........................ 19

                    (c)    Safeway's Conduct Is Unfair ................................ 20

        3.    Plaintiff's Claims Are Typical Of Those Of The Class .................................................................. 20

        4.    Plaintiff Meets The Adequacy Requirement........................... 21

5.    A Class Action Is Superior To All Other Methods
For The Fair And Efficient Adjudication Of This
Controversy And The Action Is Manageable ........................................ 22

6.    Treatment Of This Case As A Class Action
Is Manageable ....................................................................................... 23

C.    California Law Applies to Plaintiff's Claims.................................................... 24

IV.    CONCLUSION........................................................................................................ 25

# **TABLE OF AUTHORITIES**

## **CASES**

*AIU Ins. Co. v. Superior Court,*
799 P.2d 1253 (Cal. 1990) ................................................................. 15

*Allstate Ins. Co. v. Hague,*
449 U.S. 302 (1981) ............................................................................ 24

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) ............................................................................ 24

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
133 S. Ct. 1184 (2013) ........................................................................ 10

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) ................................................................

*Badie v. Bank of America,*
67 Cal.App.4th 779 (1998) ................................................................. 15

*Bower v. AT & T Mobility, LLC,*
196 Cal.App.4th 1545 (2011) ............................................................. 18

*Brockey v. Moore,*
107 Cal.App.4th 86 (2003) .......................................................... 18, 19

*California Consumer Health Care Council v. Kaiser Foundation Health Plan, Inc.,*
142 Cal.App.4th 21 (2006) ................................................................. 19

*California Rural Legal Assistance. Inc. v. Legal Servs. Corp.,*
917 F.2d 1171 (9th Cir. 1990) ............................................................ 11

*Chavez v. Blue Sky Natural Bev.,*
268 F.R.D. 365 (N.D. Cal. 2010) ....................................................... 12

*Clothesrigger, Inc. v. GTE Corp.,*
191 Cal.App.3d 605 (1987) ................................................................. 25

*Coast Plaza Doctors v. UHP Healthcare,*
105 Cal.App.4th 693 (2002) ............................................................... 17

iii

*Comb v. Paypal, Inc.*,
218 F. Supp. 2d 1165 (N.D .Cal. 2002) ........................................................... 15

*Committee on Children's Television v. General Foods Corp.*,
35 Cal.3d 197 (1983) ...................................................................... 18, 18

*Cortez v. Purolator Air Filtration Prods. Co.*,
23 Cal.4th 163 (2000) ............................................................................. 17

*Daugherty v. American Honda Motor Co., Inc.*,
144 Cal.App.4th 824 (2006) ...................................................................... 20

*Douglas v. United States Dist. Court*,
495 F.3d 1062 (9th Cir. Cal. 2007) ........................................................ 7, 14

*Earley v. Superior Court*,
79 Cal.App.4th 1420 (2nd Dist. 2000) ...................................................... 24

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .................................................................... 10

*Engalla v. Permanente Med. Grp., Inc.*,
15 Cal.4th 951 (1997)  ........................................................................ 17, 18

*Ewert v. eBay, Inc.*,
2010 U.S. Dist. LEXIS 108838 (N.D. Cal. Oct. 25, 2010)................. 12, 13, 14, 16

*Falk v. General Motors Corporation*,
496 F.Supp.2d 1088 (N.D.Cal. 2007) ...................................................... 19

*Fletcher v. Security Pacific National Bank*,
23 Cal.3d 442 (1979)  ............................................................................. 18

*General Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982)........................................................................... 10, 21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................... *passim*

*Helfand v. National Union Fire Ins. Co.*,
10 Cal.App.4th 869 (1992) ...................................................................... 15

*In re Facebook, Inc. v. PPC Advertising Litig.*,
282 F.R.D. 446 (N.D. Cal. 2012) .............................................................. 10

*In re First Alliance Mort. Co.*,
471 F.3d 977 (9th Cir. 2006) ........................................................................ 11

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
148 F.3d 283 (3d Cir. 1998)............................................................................ 21

*In re Tobacco II Cases*,
46 Cal.4th 298 (2009) ............................................................... 17, 18, 19

*Johns v. Bayer Corp.*,
280 F.R.D. 551 (S.D. Cal. 2012) ...........................................................13-14

*Johnson v. General Mills, Inc.*,
276 F.R.D. 519 (C.D. Cal. 2011) ................................................................... 11

*Johnson v. General Mills, Inc. and Yoplait USA, Inc.*,
275 F.R.D. 282 (C.D.Cal. 2011) .................................................................... 15

*Jordan v. Los Angeles County*,
669 F.2d 1311 (9th Cir. 1982) ...................................................................... 11

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008) ................................................................... 21

*Kasky v. Nike, Inc.*,
27 Cal.4th 939 (2002) ................................................................................... 18

*Keilholtz v. Lennox Hearth Products Inc.*,
268 F.R.D. 330 (N.D.Cal. 2010) ................................................................... 14

*Kleiner v. First Nat'l. Bank of Atlanta*,
97 F.R.D. 683 (N.D. Ga. 1983)...................................................................... 12

*Kwikset Corp. v. Superior Ct.*,
51 Cal.4th 310 (2011). .................................................................................. 18

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) ....................................................................... 18

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ....................................................................... 21

*Mass. Mut. Life Ins. Co. v. Sup. Ct.*,
97 Cal.App.4th 1282 (2002) ................................................................ 16, 17

*Mazur v. eBay Inc.,*
257 F.R.D. 563 (N.D. Cal. 2009) ........................................................... 10

*McAdams v. Monier, In*c.,
182 Cal.App.4th 174 (2010) ................................................................. 17

*McKell v. Wash. Mut., Inc.,*
142 Cal.App.4th 1457 (2006) ............................................................... 19

*Menagerie Prods. v. Citysearch,*
2009 U.S. Dist. LEXIS 108768 (C.D. Cal. Nov. 9, 2009) ................................. 12, 13, 16, 24

*O'Connor v. Boeing N. Am., Inc.*
184 F.R.D. 311 (C.D. Cal. 1998) ........................................................... 10

*Occidental Land, Inc. v. Superior Court,*
18 Cal.3d 355 (1976) ....................................................................... 17

*Parkinson v. Hyundai Motor Am.,*
258 F.R.D. 580 (2008) ...................................................................... 24

*Parra v. Bashas', Inc.,*
536 F.3d 975 (9th Cir. 2008) .............................................................. 11

*People v. Casa Blanca Convalescent Homes, Inc.,*
159 Cal.App.3d 509 (1984) ................................................................. 20

*Phillips Petroleum v. Shutts,*
472 U.S. 797 (1985) ................................................................... 24, 25

*Prata v. Superior Court,*
91 Cal.App.4th 1128 (2001) ................................................................ 19

*Rodriguez v. Hayes,*
591 F.3d 1105 (9th Cir. 2010) ........................................................... 11

*Roling v. E*Trade Sec., LLC,*
756 F. Supp. 2d 1179 (N.D. Cal. 2010) .................................................... 15

*Saunders v. Superior Court,*
27 Cal.App.4th 832 (1994) ................................................................. 20

*Sawyer v. Bill Me Later, Inc.,*
2010 U.S. Dist. LEXIS 138098 (C.D. Cal. Oct. 4, 2010) .................................... 15

vi

*Schnall v. Hertz Corp.*,
78 Cal.App.4th 1144 (2000) ............................................................ 18

*Schulken v. Washington Mutual Bank*,
2012 U.S. Dist. LEXIS 2005 (N.D.Cal. Jan. 5, 2012) ...................... 13

*State Farm Fire & Cas. Co. v. Sup. Ct.*,
45 Cal.App.4th 1093 (1996) ............................................................ 20

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .......................................................... 21

*Steroid Hormone Product Cases*,
181 Cal.App.4th 145 (2010) .............................................. 17, 18, 19

*Tait v. BSH Home Appliances Corp.*,
2012 U.S. Dist. LEXIS 183649 (C.D. Cal. Dec. 20, 2012) ............... 12

*United Steel Workers v. Conoco-Phillips Co.*,
593 F.3d 802 (9th Cir. 2010) ..................................................... 10, 13

*Vasquez v. Superior Court*,
4 Cal.3d 800 (1971) ........................................................................ 18

*Vedachalam v. Tata Consultancy Services, Ltd.*,
2012 U.S. Dist. LEXIS 46429 (N.D.Cal. Apr. 2, 2012) ........... 13, 15, 16

*Villa v. United Site Servs. of Cal., Inc.*,
2012 U.S. Dist. LEXIS 162922 (N.D. Cal. Nov. 13, 2012)................. 11

*Vinole v. Countywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) .......................................................... 12

*Walmart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011)...................................................................... 11

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1997) ........................................................ 22

*Wash. Mut. Bank, FA v. Superior Court*,
24 Cal. 4th 906 (2001) .................................................................... 24

*Wiener v. Dannon Co.*,
255 F.R.D. 658 (C.D. Cal. 2009) ............................................... 12, 15

*Wolin v. Jaguar Land Rover North America, LLC*,
   617 F.3d 1168 (9th Cir. 2010) ..................................................................... 9, 20, 21

*Wolph v. Acer Am. Corp.*,
   2011 WL 1110754 (N.D.Cal. Mar. 25, 2011) .............................................. 17, 19


## **STATUTES**

Fed. R. Civ. P. 23 .......................................................................................... 1, 12

Fed. R. Civ. P. 23(a) ............................................................................... 9, 11, 20

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 10

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 20

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 21

Fed. R. Civ. P. 23(b) ............................................................................................. 9

Fed. R. Civ. P. 23(b)(3) ................................................................................. 10, 22

Fed.R.Civ.P. 23(b)(3)(A) .................................................................................... 23

Fed.R.Civ.P. 23(b)(3)(C) .................................................................................... 23

Fed.R.Civ.P. 23(b)(3)(D) .................................................................................... 23

Cal. Consumers Legal Remedies Act, ("CLRA"), Civil Code § 1750 ................. 1, 12, 16, 19

False Advertising Law ("FAL") Cal. Bus. & Prof. Code § 17500 ....................... 1, 12, 17, 18

Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 ............................ *passim*

Cal. Civ. Code §1770(a)(5) .................................................................................. 16

Cal. Civ. Code §1770(a)(7) .................................................................................. 16

Cal. Civ. Code §1770(a)(9) .................................................................................. 16

Cal. Civ. Code §1770(a)(16) ................................................................................ 16

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on December 5, 2013 at 2:00 p.m. in Courtroom 9 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Ave., San Francisco, California 94102, the Honorable Jon S. Tigar presiding, Plaintiff, Michael Rodman ("Plaintiff" or "Rodman"), will move, and hereby does move, the Court for certification of the following proposed class pursuant to Federal Rule of Civil Procedure 23:

> **All persons in the United States who: (1) registered to purchase groceries through Safeway.com at any time prior to November 15, 2011, and (2) purchased groceries at any time through Safeway.com that were subject to the price markup implemented on or about April 12, 2010.**

Plaintiff seeks certification of his claims for breach of contract, as well as violations of the California Consumers Legal Remedies Act ("CLRA"), Civil Code § 1750, *et seq*., False Advertising Law ("FAL"), California Business and Professions Code § 17500, *et seq*., and Unfair Competition Law, California Business and Professions Code § 17200, *et seq*. ("UCL"). Plaintiff also seeks appointment as class representative for the proposed Class ("Class") and of his counsel as Co-Lead Class counsel.  This motion is based on the Memorandum of Points and Authorities, the accompanying declarations and exhibits, and any further briefing and arguments of counsel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Since at least 2006, Defendant, Safeway Inc. ("Defendant" or "Safeway") has offered online grocery delivery service in certain geographic regions.  Customers place orders online, and the groceries are picked, checked out, and delivered from a local Safeway store to the customer's home or business.  Safeway charges a delivery fee, plus a fuel surcharge for the service.  Upon initial registration for this service, all customers must agree to terms and conditions, called the "Special Terms," which constitute the legal agreement between them and Safeway.  At all relevant times, the Special Terms stated that the prices shown online are "estimated prices only," and that the prices charged would be "the *prices in the store* on the date

your order is filled and delivered."  For many years, Safeway.com did in fact charge the in-store prices.

Beginning in early 2010, however, without making any changes to the Special Terms, and without notice to customers, Safeway began adding approximately 10% to the in-store prices of most products delivered.  Plaintiff alleges that Safeway breached its contract with consumers by charging prices not permitted under the Special Terms, and that Safeway also violated California law by deceptively misrepresenting the prices that would be charged for groceries ordered through Safeway.com.

In denying Safeway's Motion to Dismiss, the Court has already concluded that "Plaintiff's interpretation of the contract [*i.e.*, Special Terms] is more likely the accurate construction which gives meaning to the intention of the parties at the time of contracting…." Dkt. No. 38, at 4.  The Court has also examined the relevant extrinsic evidence, consisting of Safeway's Frequently Asked Questions ("FAQs") posted on its website, and concluded that "Defendant clearly stated that there was price parity between the online purchases and the prices charged at the store."  *Id*. at 5.  In short, "[t]he Court [was] not persuaded by Safeway's interpretations."  *Id*. at n. 3.

The sole issue presented by this motion is whether Plaintiff can present the claims on a class-wide basis.  The answer is a resounding "yes."  Plaintiff's claims involve a form contract, to which all Class members were required to agree before they could place an order, and which includes an integration clause and a California choice of law provision.  Thus, the legal and factual issues are predominantly common.  The Class includes thousands of members, all of whom can be identified from Safeway's database records, which contain detailed information about, *inter alia*, each product delivered, quantity, weight, promotions applied, and price charged.  Thus, the Class is both numerous and ascertainable, and damages can be calculated individually and on a class-wide basis.  Finally, Plaintiff's claims are typical of the Class, and he has retained experienced Class counsel.  There is no question that Class certification is warranted.

## II.    FACTUAL BACKGROUND

Safeway has offered groceries for home delivery through Safeway.com[1] since at least 2006.  *See* Declaration of Timothy N. Mathews ("Mathews Decl.") at Ex. A, at p. 4.[2]

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

The Special Terms, which constitute the legal agreement for online shopping, stated:

> The <u>prices quoted on our web site</u> at the time of your order <u>are estimated prices only</u>. You will be charged the prices quoted for Products you have selected for purchase at the time your order is <u>processed at checkout</u>. <u>The actual order value cannot be determined until the day of delivery because the prices quoted on the Web site are likely to vary either above or below the **prices in the store**</u> on the date your order is filled and delivered.

*See* Ex. C, at ¶ 3 (emphasis added).  Upon delivery, the Safeway.com delivery driver provides a receipt which states the store number, address, and phone number of the local store from which the groceries are delivered, along with the time of check out.  *See* Ex. D.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[1] Safeway sells groceries under the trade names Safeway.com and Vons.com, and, for most of the Class period, also sold under the trade name Genuardis.com.  For simplicity, we use the term Safeway.com to include all three entities. ███████████ Ex. O, at pp. 47:13-25.  The online delivery segment is sometimes referred to as Safeway.com or "dotcom," as distinguished from the larger Safeway grocery business.

[2] All references to Exhibits refer to the Mathews Declaration, unless otherwise noted.

[3] ████████████████████████████████████████████████████████ Ex. O, at pp. 241:20-242:10.  Hence, in 2009 Safeway.com decided to stop matching in-store promotions on these "bulk" items. *Id.* at 39:15-23.

---

[5] For example, using a straight ten percent mark-up, an item that cost $1.29 in the store would cost $1.42 online.

---

[6] Peapod is a competitor grocery delivery service that delivers groceries from Royal Ahold's two main American chains, Stop & Shop and Giant Food.  Peapod's "Pricing Policy," which is clearly marked on its website, states "The prices of Giant groceries purchased through Peapod by GIANT may be different from the prices in Giant retail stores." Ex. BB.  Costco, which also provides a grocery delivery service, states, "All prices listed on this website are 'delivered prices,' which include a slight markup over the walk-in price to cover the costs associated with delivery." Ex. Y.



Accordingly, Plaintiff seeks certification of a Class of all consumers (including individuals and businesses) who: (1) registered to purchase groceries through Safeway.com prior to November 15, 2011 (the date the Special Terms were changed), and (2) purchased groceries at any time through Safeway.com that were marked-up.  The proposed Class includes all persons who registered any time prior to November 15, 2011, and includes all purchases by those consumers (both before and after November 15, 2011)

The Ninth Circuit has squarely held that "Parties to [a contract established through online terms and conditions] have

no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side." *Douglas v. U.S. Dist. Court*, 495 F.3d 1062 (9th Cir. Cal. 2007).[9]

███████████████████ the Special Terms contained an integration clause which stated, "These Terms and Conditions, as amended from time to time, shall be the sole terms of the agreement between you and [Safeway] regarding your online purchases. <u>All statements otherwise made on the Web site, or otherwise, are intended only for your convenience and do not form and are not included in our Agreement or the terms for your purchase</u>." Ex. C, at ¶ 19 (emphasis added).   Thus, any other statements made on the website are not relevant to interpretation of the contract, which is unambiguous as to pricing. Nevertheless, to the extent extrinsic evidence is relevant, it is readily apparent that Safeway never provided *any* clear disclosure of the mark-up such that it could have changed the meaning of the contract.  To the contrary, as this Court previously observed, at least one FAQ said exactly the opposite.

That was it.

[10]

---

[9] *See also* note 12, below.  Of course, the Court need not decide the merits of that issue on this Motion.  It is sufficient to conclude here that the question as to whether changes to the Special Terms without notice are effective is a common question that can be decided on a class-wide basis.

Further, ████████████████ another Safeway FAQ continued to affirmatively (and falsely) state:

> **Why does my order confirmation say that the prices are estimates only**
>
> Prices on our web site are estimated due to a number of reasons. Products sold by weight (for example: produce, meat, etc.) have estimated prices. The price you pay will be based on the actual weight of those items at the time your order is picked for delivery. The order confirmation shows estimated prices only and does not include sales tax, CRV and other charges. Depending upon the delivery date you select, prices could vary from the time you place your order and the time your order is delivered, due to sale changes. <u>You will be charged the prices charged in the store on the day your order is picked and delivered.</u>

*See* Ex. A, at p. 7 ¶ 7, and Ex. T (underline added). The Court has already concluded that this FAQ "clearly stated that there was price parity between the online purchases and the prices charged at the store." Dkt. No. 38, at p. 5.

Class certification is appropriate. The interpretation of the Special Terms and, to the extent relevant, the interpretation of any other statement by Safeway, is a class-wide issue. The contract includes a California choice of law. Ex. C, at ¶ 17. ████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████ There is no bar to class certification here.

## III.   ARGUMENT

### A.   Standard for Class Certification

Class certification is proper under Federal Rule of Civil Procedure Rule 23(a) if Plaintiff can show that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In addition, Plaintiff must show that the case can proceed as a

████████████████████████████████████████████████████████

class action under subparts (1), (2), or (3) of Rule 23(b).  The decision to grant class certification lies within the Court's broad discretion.  *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010).  Although Rule 23 requires a "rigorous analysis" of underlying facts and legal issues going to the certification question, *Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982), the class certification question tests Plaintiff's theory of the case, not whether the merits of his claims or theories are proved.  *United Steel Workers v. Conoco-Phillips Co.*, 593 F.3d 802, 808-9 (9th Cir. 2010) (reversing denial of certification); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983, n.8 (9th Cir. 2011) (the ultimate merits of the claims or defenses should not be decided at this stage).  *See also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191, 1196 (2013) ("the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'").

    **B.**    **This Action Meets The Requirements For Class Certification**

        **1.**    **The Class Is Sufficiently Numerous And Ascertainable**

To satisfy the Rule 23(a)(1) requirement that joinder of all members of the class is impracticable – commonly referred to as "numerosity" – Plaintiff "need not state the exact number of potential class members, nor is there a specific number that is required."  *In re Facebook, Inc., PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012).  "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members."  *Id*.  In addition, the class should be "ascertainable," *Mazur v. eBay Inc*., 257 F.R.D. 563, 567 (N.D. Cal. 2009), meaning that the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member."  *O'Connor v. Boeing N. Am., Inc*., 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Here, Safeway offers home delivery of groceries purchased online throughout

███████████████████████████   The numerosity and ascertainability requirements are easily satisfied.

### 2.   Common Issues Exist And Predominate

#### a.   Multiple Common Questions Exist

To satisfy Rule 23(a)'s commonality requirement, a class claim "'must depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Villa v. United Site Servs. of Cal., Inc*., No.: 5:12-CV-00318-LHK, 2012 U.S. Dist. LEXIS 162922, at *15 (N.D. Cal. Nov. 13, 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)). The "key consideration in assessing commonality is 'not the raising of common questions – even in droves – but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id*. at *16 (quoting *Wal-Mart Stores*, 131 S.Ct. at 2551) (emphasis in original); *see also Johnson v. General Mills, Inc*., 276 F.R.D. 519, 521-522 (C.D. Cal. 2011). Commonality is generally construed liberally and is satisfied by "the existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class." *Jordan v. County of L.A.*, 669 F.2d 1311, 1320 (9th Cir. 1982); *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019-1020 (9th Cir. 1998); *see also In re First Alliance Mort. Co*., 471 F.3d 977, 990-991 (9th Cir. 2006). Commonality does not require complete congruence or that all questions of fact and law be common. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010); *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) ("a proposed class can consist of members with widely differing experiences as they relate to the case. . . ."). "[E]ven a single common question will do." *Wal-Mart Stores,* 131 S. Ct. at 2556. *California Rural Legal Assistance. Inc. v. Legal Servs. Corp*., 917 F.2d 1171, 1175 (9th Cir. 1990) (commonality exists where plaintiffs share one common issue of law or fact and their "situations are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.").

Here, the common core questions apt to drive the resolution of this case are (1) did Safeway's Special Terms promise Plaintiff and Class members parity between "online" and "in store" prices?; (2) if so, did Safeway breach its price parity promise by marking up the price of groceries by approximately 10%?; and (3) were Safeway's price parity representations false and likely to deceive the reasonable consumer?

Courts repeatedly have held that disputes regarding the interpretation of standard contracts like the Safeway.com Special Terms satisfy the commonality requirement. *See, e.g., Ewert v. eBay, Inc*., No. C-07-02198 RMW, 2010 U.S. Dist. LEXIS 108838, at *20-21 (N.D. Cal. Oct. 25, 2010) (citing *Kleiner v. First Nat'l. Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) for the proposition that "[w]hen viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such"); *Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 U.S. Dist. LEXIS 108768, at *17-18 (C.D. Cal. Nov. 9, 2009) (finding commonality for a case asserting, *inter alia*, breach of contract and UCL claims).  Likewise, where "proposed class members clearly share common legal issues regarding [the] alleged deception and misrepresentations in [the] advertising and promotion of [p]roducts," commonality is also readily established.  *Wiener v. Dannon Co*., 255 F.R.D. 658, 665-665 (C.D. Cal. 2009); *Tait v. BSH Home Appliances Corp*., 2012 U.S. Dist. LEXIS 183649, at *34 (C.D. Cal. Dec. 20, 2012) ("district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL"); *Chavez v. Blue Sky Natural Bev*., 268 F.R.D. 365, 378 (N.D. Cal. 2010) (finding commonality common issues of fact and law as to the question of whether defendant's packaging and marketing materials were unlawful, unfair, deceptive or misleading to a reasonable consumer).  The commonality requirement is satisfied here.

### b.   Common Questions Of Law And Fact Predominate Over Any Questions Affecting Only Individual Members

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Vinole v. Countywide Home Loans, Inc*., 571 F.3d 935, 944 (9th

Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1022). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Like commonality, the predominance inquiry tests only the plaintiff's theory of the case, not whether the merits of the theory are proved. *United Steel Workers v. Conoco-Phillips Co*., 593 F.3d 802, 808-809 (9th Cir. 2010).

The predominance requirement is met in cases asserting breach of contract claims:

> [W]hen there is a standardized agreement like the form contract at issue in this case, the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.' Restatement (Second) of Contracts § 211(2). "[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it. The result may be to give the advantage of a restrictive reading to some sophisticated customers who contracted with knowledge of an ambiguity or dispute." *Id.* at Comment e. Accordingly, in construing the form contract between [defendant] and Class Members, the court need not delve into the actual knowledge of individual Class Members. The court therefore concludes that plaintiffs' breach of contract claim does not raise individual issues likely to be the object of most of the court's and the parties' efforts.

*Ewert*, 2010 U.S. Dist. LEXIS 108838, at *20-21; *see also Menagerie Prods.*, 2009 U.S. Dist. LEXIS 108768, at *36-37 ("[c]ommon issues of law and fact predominate with regard to plaintiffs' breach of contract claim. Here, the claim arises from a standard form contract prepared by Citysearch to which all advertisers in the class agreed. . . . To the extent that the language in the contract is unambiguous, the Court would apply that meaning and not look to extrinsic evidence. . . Extrinsic evidence, however, would be properly admitted to construe the terms of the contract if the Court determines that its language is ambiguous. . . . Extrinsic evidence that the Court would consider in making this determination, such as representations on Citysearch's website, can be established on a class-wide basis. Therefore, it cannot be said that individual issues predominate as to plaintiff's claim of breach of contract."); *Schulken v. Washington Mutual Bank*, No. 09-CV-02708-LHK, 2012 U.S. Dist. LEXIS 2005, *41-42 (N.D. Cal. Jan. 5, 2012) ("interpretation of the form contracts is likely to drive the outcome of

Plaintiffs' claims"); *Vedachalam v. Tata Consultancy Services, Ltd*., No. C 06-0963 CW, 2012 U.S. Dist. LEXIS 46429, at *47 (N.D. Cal. Apr. 2, 2012) ("These are standard forms that are susceptible to proof on a class-wide basis as well."); *Johns v. Bayer Corp*., 280 F.R.D. 551, 558 (S.D. Cal. 2012) ("when plaintiffs are exposed to a common advertising campaign, common issues predominate.").

All of Plaintiff's claims focus on Safeway's Special Terms, which were conveyed uniformly to all Class members and to which Class members necessarily agreed.  Plaintiff's theory of liability is therefore susceptible to proof on a class-wide basis and requires no individual analysis with respect to Class members. *See, e.g. Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 337 (N.D. Cal. 2010) (class members' claims "clearly have something vital to this case in common:  all class members own a home in which one of Defendants' fireplaces has been installed and their claims are based on a common theory of liability"); *Ewert*, 2010 U.S. Dist. LEXIS 108838, at *20-21 ("in construing the form contract between [defendant] and Class Members, the court need not delve into the actual knowledge of individual Class Members").

The fact that ████████████████████████████████████████████does not create individualized issues sufficient to defeat predominance as to either the breach of contract claim or statutory consumer protection claims.  The Special Terms expressly provide that all statements other than the Special Terms "made on the Web site, or otherwise, *do not form and are not included in our Agreement or the terms for your purchase*."  Ex. C.  This includes Safeway's FAQs.[11]

████████████████████████████████████████likewise raises contract interpretation issues that are appropriate for resolution at a class-wide trial or via summary judgment proceedings.[12]  Moreover, Safeway expressly provided that all amendments

---

[11] Nevertheless, to the extent they are relevant, the FAQs would have been equally available to all Class members.

[12] In any event, Safeway will not be able to establish that ██████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ *See Douglas v. United States Dist. Court*, 495 F.3d 1062, 1066 (9th Cir. Cal. 2007) (rejecting notion that a party has an "obligation" to periodically check the terms

to the Special Terms are forward-looking, applying only to orders placed after the amendment. *Id.* Thus, regardless of Safeway's belated November 2011 modification to the Special Terms, there is no need to prove individualized deception and reliance. In these situations, courts have held that predominance is established and certification is appropriate. *Johnson v. General Mills, Inc. and Yoplait USA, Inc.*, 275 F.R.D. 282, 288-289 (C.D. Cal. 2011) (rejecting defendants' argument that "individual issues predominate because purchasers of YoPlus have been exposed to different mixes of packages and advertisements since General Mills has, over time, modified the packaging of YoPlus and the content and emphasis of its marketing materials."); *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) (even if consumers were exposed to a mix of defendant's marketing efforts, the alleged misrepresentations were "prominently displayed" on all of the product packaging).

### (i)     The Breach Of Contract Claim

Under California law, "if the meaning a layperson would ascribe to contract language is not ambiguous, [the Court must] apply that meaning." *AIU Ins. Co. v. Superior Court*, 799 P.2d 1253, 1264 (Cal. 1990); *see also Helfand v. National Union Fire Ins. Co.*, 10 Cal.App.4th 869, 879 (1992) ("The words of a contract generally are to be understood in their ordinary and popular sense."). In the event of ambiguity, extrinsic evidence will be considered to aid in interpreting the disputed contract terms. *Vedachalam*, 2012 U.S. Dist. LEXIS 46429, at *42-43. But ambiguities are construed against the drafter, *Badie v. Bank of America*, 67 Cal.App.4th 779, 798 (1998), and this rule "is applied with particular force in the case of adhesion contracts." *Id.*

of a contract that is posted on a website to determine whether the other party has changed it); *accord Sawyer v. Bill Me Later, Inc.*, 2010 U.S. Dist. LEXIS 138098, *7-8 (C.D. Cal. Oct. 4, 2010) (A "meaningful opportunity" may be demonstrated by a party receiving notification of the revision, reviewing the revised contract term, and then deciding whether to accept the revision or terminate the contract; *Roling v. E*Trade Sec., LLC,* 756 F. Supp. 2d 1179, 1189-1190 (N.D. Cal. 2010) (finding the customer agreement that allowed E*Trade to make fee changes by simply posting "a separate fee scheduled on its website" and then require "customer [ ] to scour E*Trade's website for the terms of the agreement" evidenced both procedural and substantive unconscionability because it permitted E*Trade to "unilaterally, and without notice, change the operative fee schedule.") *Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165, 1174 & n.12 (N.D. Cal. 2002) (striking as unconscionable the provision that the user agreement "is subject to change by PayPal without prior notice (unless prior notice is required by law), by posting of the revised Agreement on the PayPal website.").

at 801, 803 (citations omitted); *Vedachalam*, 2012 U.S. Dist. LEXIS 46429, at *43 ("where a form contract of adhesion is at issue, the court will, wherever reasonable, interpret the agreement 'as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing' in order to 'effectuate the reasonable expectations of the average member of the public who accepts it.'") (citing *Ewert*, 2010 U.S. Dist. LEXIS 108838, at *20).  In such scenario, the court explained in *Ewert*, *supra*, "the court need not delve into the actual knowledge of individual class members." *Id.* at *20-21.

Here, Safeway's Special Terms unambiguously provided that the prices charged for groceries ordered online by consumers will be the "prices in the store."  That is the plain meaning of the contract.  But even if there were ambiguity, extrinsic evidence in the form of Safeway's own FAQs ("You will be charged the prices charged in the store on the day your order is picked and delivered") expressly confirm that the prices charged will be the prices in the store on the date of delivery.  To reach this conclusion, the Court need only interpret Safeway's Special Terms regarding pricing and need not "delve into the actual knowledge of individual class members." *Ewert*, 2010 U.S. Dist. LEXIS 108838, at *20-21.  Once interpreted, the only remaining question is whether Safeway breached its promise of price parity, readily capable of class-wide determination.[13]  Thus, as in *Ewert*, *Menagerie Prods.*, and *Vedachalam*, Plaintiff's breach of contract claim easily satisfies the predominance test.

### (ii)     The CLRA Claim

A defendant is liable under the CLRA if it misrepresents that its goods possess certain characteristics, uses or benefits they do not have or advertises goods with the intent not to sell them as advertised.  Cal. Civ. Code §1770(a)(5), (7), (9) and (16).  The statute is violated "in a transaction intended to result or which results in the sale or lease of goods or services . . . ."  Cal. Civ. Code §1770(a).  Materiality of a uniform misrepresentation can be proven on a class-wide

13 ███████████████████████████████████████████████████

basis. *Mass. Mut. Life Ins. Co. v. Sup. Ct*., 97 Cal.App.4th 1282, 1292 (2002). That is because, under the CLRA, if material misrepresentations were made to the class members, an inference of reliance (*i.e*., causation) arises as to the entire class. *Occidental Land, Inc. v. Superior Court*, 18 Cal.3d 355, 363 (1976); *McAdams v. Monier, In*c., 182 Cal.App.4th 174, 183 (2010) (a CLRA claim can be litigated on a class-wide basis when the "record permits an 'inference of common reliance' to the class.") (quoting *Mass. Mut*., 97 Cal.App.4th at 1293)). "Materiality of the alleged misrepresentation generally is judged by a 'reasonable man' standard." *Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 157 (2010). In other words, the relevant question is whether the objective, reasonable person would attach importance to the existence or non-existence of the misrepresentation in determining his or her choice of action. *Id*. (citing *Engalla v. Permanente Med. Grp., Inc*., 15 Cal.4th 951, 977 (1997)). This "objective standard . . . is susceptible to common proof," *Wolph v. Acer Am. Corp*., No. C 09–01314 JSW, 2011 WL 1110754, at *9 (N.D. Cal. Mar. 25, 2011), and materiality is generally a question of fact for the jury. *In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009).

   Here, the challenged misrepresentations at issue are Safeway's claims of parity with in-store prices, which Safeway has consistently and uniformly conveyed to Class members. As Judge White previously explained in his ruling denying Safeway's Motion to Dismiss: "[T]he alleged statements in both the contract and the FAQs could mislead a reasonable consumer into believing that there was price parity between the store and the online service for products. *Price differentials are material*. . . . [and] the inference of common reliance arises." Dkt. No. 38 at 5-6; 2012 U.S. Dist. LEXIS 126212, at *10 (citations omitted). In short, reliance of all Class members can be inferred and the question of materiality is quintessentially a class-wide issue that can be resolved on common proof.

### (iii)   The UCL And FAL Claims

   The UCL prohibits "unlawful," "fraudulent," or "unfair" business practices. *Coast Plaza Doctors v. UHP Healthcare*, 105 Cal.App.4th 693, 699-700 (2002). The UCL is a strict liability statute. *Cortez v. Purolator Air Filtration Prods. Co*., 23 Cal.4th 163, 181 (2000). The FAL, in turn, makes it unlawful "'with intent directly or indirectly to . . . induce the public to enter into

any obligation relating thereto' by means of advertising, 'which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .'" *Bower v. AT&T Mobility, LLC*, 196 Cal.App.4th 1545, 1555 (2011). "A violation of the UCL's fraud prong is also a violation of the [FAL]." *In re Tobacco II Cases*, 46 Cal.4th at 312 fn.12 (citing *Committee on Children's Television v. General Foods Corp.*, 35 Cal.3d 197, 210 (1983); *Brockey v. Moore*, 107 Cal.App.4th 86, 98 (2003)).

To state a claim under either the UCL or FAL, a plaintiff need only show that members of the public are likely to be deceived. *In re Tobacco II Cases*, 46 Cal.4th at 312; *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507-08 (2003); *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002). The objective "reasonable consumer" standard is used to determine likelihood of deception. *Lavie*, 105 Cal.App.4th at 506-07. More specifically, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. A misrepresentation is judged to be material *if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question*. . . ." *In re Tobacco II Cases*, 46 Cal.4th at 327-328 (quoting *Engalla*, 15 Cal.4th at 976–977) (internal citations and quotations omitted). Thus, unlike common law fraud, a plaintiff need not prove that every class member was actually deceived, relied upon the fraudulent practice, or sustained any damage. *In re Tobacco II Cases*, 46 Cal.4th at 320; *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1167 (2000). Nor must the message at issue provide the only reason to purchase. *In re Tobacco II Cases*, 46 Cal.4th at 326; *Vasquez v. Superior Court*, 4 Cal.3d at 814 n.9; *Kwikset Corp.v. Superior Court*, 51 Cal.4th, 310, 326-327 (2011). "[O]nce the named plaintiff meets [the standing] burden, no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members*." Steroid Hormone Product Cases*, 181 Cal.App.4th at 154. As the California Supreme Court explained in *Tobacco II*, the UCL's focus is "on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices. 46 Cal.4th at 312 (citing *Fletcher v. Security Pacific National Bank*, 23 Cal.3d 442, 453 (1979)). Like the CLRA, the materiality standard for

purposes of the UCL and FAL is an objective standard that is subject common proof and is a question of fact for the jury. *In re Tobacco II Cases*, 46 Cal.4th at 327; *Wolph*, No. C 09–01314 JSW, 2011 WL 1110754, at *9. Whether or not Safeway's conduct violated the UCL and FAL are class-wide questions favoring certification.

### (a)   *Safeway's Conduct Is Unlawful*

It is well-settled that the unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *California Consumer Health Care Council v. Kaiser Foundation Health Plan, Inc.*, 142 Cal.App.4th 21, 27 (2006); *McKell v. Wash. Mut., Inc.*, 142 Cal.App.4th 1457, 1475 (2006) ("Unlawful business acts or practices within the meaning of the UCL include 'anything that can properly be called a business practice and that at the same time is forbidden by law.'"). The UCL therefore permits violations of other laws to be treated as unfair competition that are independently actionable. *Id.* at 1474-75. A violation of the underlying law is a *per se* violation of the UCL. *Steroid Hormone*, 181 Cal.App.4th at 155. Here, Plaintiff's class-wide proof will show that Safeway violated the CLRA by misrepresenting to consumers that the groceries purchased through Safeway.com would be the same price as if the groceries were purchased in the local store at the time the order was filled, a violation of the UCL.

### (b)   *Safeway's Conduct Is Fraudulent*

To state a cause of action under the fraudulent prong of the UCL, Plaintiff need only demonstrate that the challenged conduct presents the likelihood of public deception. *Prata v. Superior Court*, 91 Cal.App.4th 1128, 1146 (2001). Here, Safeway's affirmative misrepresentations regarding price parity with in-store prices clearly have, or are likely to, deceive the public. *Falk v. General Motors Corporation*, 496 F.Supp.2d 1088, 1098 (N.D. Cal. 2007) (allegations of failure to disclose known defects stated a cause of action under the fraud prong of the UCL).

Exs. F & J.  Moreover, the same class-wide proof of Safeway's violation of the UCL's fraud prong would also prove or disprove the FAL claim.  *In re Tobacco II Cases*, 46 Cal.4th at 312 fn.12 (citing *Committee on Children's Television*, 35 Cal.3d at 210); *Brockey*, 107 Cal.App.4th 86, 98 (2003).

### (c)   *Safeway's Conduct Is Unfair*

An "unfair" practice under the UCL is one "whose harm to the victim outweighs its benefits."  *Saunders v. Superior Court*, 27 Cal.App.4th 832, 839 (1994); *State Farm Fire & Cas. Co. v. Sup. Ct.*, 45 Cal.App.4th 1093, 1104 (1996) (The unfair "prong" of the UCL may be established by weighing '"the utility of the defendant's conduct against the gravity of the harm to the alleged victim. . . .'").  To demonstrate that conduct is unfair under the UCL, consumers need only show an alleged practice where "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided."  *Daugherty v. American Honda Motor Co., Inc*., 144 Cal.App.4th 824, 839 (2006).  A business practice is unfair "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *People v. Casa Blanca Convalescent Homes, Inc*., 159 Cal.App.3d 509, 530 (1984).  These claims, again, are appropriate for class determination. Safeway could have clearly disclosed the markup of in-store prices.  For example, Costco's grocery delivery site states "All prices listed on this website are 'delivered prices,' which include a slight markup over the walk-in price to cover the costs associated with delivery."  Ex. Y. Instead, Safeway deliberately decided against making such a disclosure.

### 3.   Plaintiff's Claims Are Typical Of Those Of The Class

Rule 23 (a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality ensures that "the interests of the named representatives align with the interests of the class." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have

been injured by the same course of conduct." *Id.* (citations omitted). Typicality does not require that the representative's claims be identical, but only that they are "reasonably co-extensive with [the claims] of absent class members." *Hanlon*, 150 F.3d at 1020. Typicality is satisfied if the class representative's claims arise from the same course of conduct and are based on the same legal theory as the class's claims. *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008). Accordingly, commonality and typicality "tend to merge," such that factors supporting a finding of commonality also support a finding of typicality. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982). The typicality requirement is satisfied where "the representative [p]laintiffs, as well as the members of the proposed class, all have claims arising from the fraudulent scheme perpetrated by [the defendant]." *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 311 (3d Cir. 1998). The typicality standard is "permissive," and requires only that the named plaintiffs' claims be "reasonably coextensive with those of absent class members[,] not substantially identical." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Plaintiff and every member of the Class agreed to the ███████████████ Special Terms and were subject to Safeway's uniform practice of improperly marking up the price of groceries purchased online and all suffered the same harm. On or about February 10, 2011, Plaintiff made an initial purchase of 25 items through Safeway.com, totaling $95.32, which included the markup. Ex. D. Prior to purchasing the items, Plaintiff was required to, and did, register for an account with Safeway.com, pursuant to which he was required to agree to the Special Terms. On or about April 29, 2011, Plaintiff placed a second order through Safeway.com. and was again charged the markup. Ex. D. Plaintiff, thus, satisfies the typicality requirement.

### 4.    Plaintiff Meets The Adequacy Requirement

The adequacy requirement of Rule 23(a)(4) is met if a plaintiff fulfills two conditions: (a) the plaintiff's attorneys must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, Plaintiff is

represented by counsel who are qualified and possess substantial experience in the conduct of litigation of the size, scope, and complexity of this case in general and consumer class actions in particular.  Exs. Z and AA. (firm resumes of Plaintiff's counsel, reflecting, *inter alia*, that undersigned counsel have been appointed class counsel by this Court and others within the Ninth Circuit and have secured large class settlements, including a recent $53 million non-reversionary cash settlement in a consumer class action with Apple and a $185 million class jury verdict).

As to the second prong of the "adequacy" test, only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.  Factual differences in the merits of the named plaintiff's underlying claims do not affect the plaintiff's ability to vigorously represent the class.  *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1997). Here, Plaintiff does not have any conflicts with the members of the Class, and his injuries are the same as those of the members of the proposed Class.  Plaintiff has, and will continue to, vigorously pursue relief on behalf of the proposed Class.  For example, he responded to interrogatories, produced documents in response to requests (including several years' worth of credit card statements), and agreed to travel cross-country to San Francisco to be deposed.  *See* Mathews Decl., ¶¶ 2-6.

### 5.     A Class Action Is Superior To All Other Methods For The Fair And Efficient Adjudication Of This Controversy And The Action Is Manageable

Certification of Plaintiff's claims is the only economically feasible method for the fair and efficient adjudication of this controversy.  Individual Class members' damages obviously are modest relative to the time and expense required to properly prosecute these claims, particularly in light of Safeway's financial resources and the ███████████ generated by its overcharging practice and individual Class members have no economic ability or incentive to wage costly and complex litigation against a substantial defendant like Safeway.

Rule 23(b)(3) requires the court to determine whether "a class action is superior to other available methods for a fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).  The four specific factors listed in the rule compel the conclusion that a class action is

superior to resolve the claims of Plaintiff and the proposed Class.  The first factor is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed.R.Civ.P. 23(b)(3)(A).  Here, the interest of Class members in individually controlling separate actions is minimal, because while the aggregate damages of the Class are significant, the damages of each individual Class member will be relatively small.  *Hanlon*, 150 F. 3d at 1023 ("[E]ven if efficacious, these claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs [since] [i]n most cases, litigation cost would dwarf potential recovery [and] [i]n this sense, the proposed class action is paradigmatic.").  As the Supreme Court noted in *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997), Rule 23(b)(3) aims primarily at vindicating "the rights of groups of people who individually would be without effective strength to bring their opponent into court at all" and "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id*. at 617 (internal quotations omitted).  This action is just such a "core" class action.

The second factor, "the extent and nature of any litigation concerning the controversy already commenced" by members of the Class, also supports proceeding with this action.  To Plaintiff's knowledge, there are no other class actions currently pending involving the same or similar claims against Safeway.  The third factor is the desirability "of concentrating the litigation of the claims in the particular forum." Fed.R.Civ.P. 23(b)(3)(C).  This forum is undoubtedly an appropriate forum for the resolution of Plaintiff's claims because Safeway's headquarters are in this District and the Special Terms require all disputes to be resolved in this forum.  The fourth and final factor is "the difficulties likely to be encountered in the management of a class action."  Fed.R.Civ.P. 23(b)(3)(D).  As discussed below, this action is exceedingly manageable and the claims for which Plaintiff seeks class certification are all based on the same set of operative facts.

### 6.   Treatment Of This Case As A Class Action Is Manageable

To date, the parties have not encountered any difficulties in managing this case as a class action and this case easily can be tried and adjudicated as a class action.  As the California Court

of Appeals noted in *Earley v. Superior Court*, 79 Cal.App.4th 1420, 1434 (2nd Dist. 2000), a class action can be tried as to liability and damages with the plaintiff acting as the fiduciary on behalf of the class.

In addition, calculating compensatory damages on a class-wide basis can be readily accomplished.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ Likewise, the

exemplary damages sought in connection with the statutory consumer protection claims can also be established based upon common proof that ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

#### C.     California Law Applies To Plaintiff's Claims

When seeking certification of a nationwide class for claims arising under the laws of the forum state, a party must show that the forum state has a "'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [state] law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-822 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-313 (1981). "[S]o long as the requisite significant contacts to California exist, a showing that is properly borne by the class action proponent, California may constitutionally require the other side to shoulder the burden of demonstrating that foreign law, rather than California law, should apply to the class claims." *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (2008) ("A court may certify a nation-wide class for alleged violations of state law.  For certification to be

proper, application of the state's laws to out-of-state class members must comport with due process.  Once plaintiffs make this showing, the burden shifts to the non-movant to show that the laws of another state apply.") (citations omitted).  Significantly, "[w]hen considering fairness in this context, an important element is the expectation of the parties."  *Shutts*, 472 U.S. at 822.

Here, there can be no argument but that California law applies - - indeed, Safeway insists on it through its choice of law provision in the Special Terms.  *Menagerie Prods.*, 2009 U.S. Dist. LEXIS 108768, at *51-52 ("California law can be applied to the plaintiffs' breach of contract claims, because  all versions of the contract between the class and Citysearch in force during the class period contain a choice of law clause stating that California law governs the contract.").  Moreover, Safeway is a California citizen, with its corporate headquarters and executive offices in California; all decisions concerning Safeway's online grocery business, including all decisions concerning pricing and the related misrepresentations, emanated from California; and a significant number of affected consumers reside in California.  (Am. Cpt., ¶¶10, 12, 44.)  *Clothesrigger, Inc. v. GTE Corp*., 191 Cal.App.3d 605, 613 (1987) (finding sufficient contacts with California to allow constitutional application of California law to the claims of a nationwide class where (a) the corporate defendants did business in California, (b) the principal offices of one of the corporate defendants were located in California, (c) a significant number of class members were located in California, and (d) the agents of the other corporate defendants who prepared the promotional and advertising literature at issue in the litigation did so in California, such that "the alleged fraudulent misrepresentations forming the basis of the claim of every Sprint subscriber nationwide emanated from California.").

## IV.    **CONCLUSION**

For the reasons stated above, the Court should grant Plaintiff's Motion for Class Certification.

Dated: September 27, 2013

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP

BY:   / s/James C. Shah
      James C. Shah (SBN 260435)
      Rose F. Luzon (SBN 221544)
      SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
      401 West A Street, Suite 2350
      San Diego, CA  92101
      Telephone: (619) 235-2416
      Facsimile: (619) 234-7334
      jshah@sfmslaw.com
      rluzon@sfmslaw.com

      Steven A. Schwartz (*pro hac vice*)
      Timothy N. Mathews (*pro hac vice*)
      CHIMICLES & TIKELLIS, LLP
      361 West Lancaster Avenue
      Haverford, PA 19041
      Telephone: (610) 642-8500
      Facsimile: (610) 649-3633
      SteveSchwartz@chimicles.com
      TimothyMathews@chimicles.com

      Scott R. Shepherd (admitted *pro hac vice*)
      SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
      35 E. State Street
      Media, PA  19063
      Telephone: (610-891-9880
      Facsimile: (610) 891-9883
      sshepherd@sfmslaw.com

      *Attorneys for Plaintiff and the Class*