UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RODMAN,<br><br>        Plaintiff,<br><br>     v.<br><br>SAFEWAY INC.,<br><br>        Defendant. | Case No. 11-cv-03003-JST<br><br>**ORDER DENYING MOTION TO DECERTIFY THE CLASS**<br><br>Re: ECF No. 238 |

This class action concerns Safeway's practice of charging customers a markup for items purchased using its online delivery service, despite contracting with customers to charge the same prices charged in Safeway's physical stores. The Court previously certified the class, ECF No. 163, and granted Plaintiff summary judgment that Safeway had breached its contract with customers. ECF No. 223. Safeway now argues that the Court should decertify the class because Safeway's affirmative defenses requiring individualized inquiry predominate over issues common to the class. The Court will deny the motion.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Rodman used the Safeway.com delivery service and later discovered that the prices charged online were higher than those in his local store. He then brought this suit, alleging causes of action for breach of contract and under California's Unfair Competition Law, Consumer Legal Remedies Act, and False Advertising Law. Plaintiff argued that he understood the Special Terms to promise the same prices in the local stores as were charged on the website.

On March 9, 2014, the Court granted Plaintiff's motion to certify a class for the purpose of bringing the breach of contract action, but denied class certification as to Plaintiff's other causes of action. ECF No. 163. The Court defined the class as: "All persons in the United States who: (1) registered to purchase groceries through Safeway.com at any time prior to November 15, 2011,

and (2) purchased groceries at any time through Safeway.com that were subject to the price markup implemented on or about April 12, 2010." Id.

In opposing certification, Safeway had argued that "certain customers learned of the additional charges and continued to shop with Safeway.com after so learning" and that it would assert "affirmative defenses of waiver/affirmation, consent, and estoppel." Id. at 17. Safeway asserted that, because these affirmative defenses would require individualized inquiry, the class could not satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b)(3). Pointing to record evidence that customers who became aware of the charges had complained about them, the Court expressed doubt that customers had "legally consented to the undisclosed charges by continuing to use the Safeway.com service." Id. Nonetheless, the Court posited that the defenses would not "require so much individualized inquiry as to defeat certification," as the Court could make legal determinations regarding the effect of customers continued use of the service after learning of the markup and then "subdivide the class as appropriate." Id. The Court noted that a contrary outcome, whereby class certification could be defeated by the possibility that certain putative class members may have consented to the contract's terms, would lead to the result that "no class action could ever be maintained for breach of a form contract." Id. at 18 (citing Brotherson v. Prof'l Basketball Club, L.L.C., 262 F.R.D. 564, 573 (W.D. Wash. 2009)).

Both parties subsequently filed cross-motions for summary judgment on the Class's breach of contract claims, disputing whether the contract had promised price parity between the online store and brick-and-mortar Safeway stores. ECF Nos. 171, 173. The Court found Plaintiff's interpretation of the contract as promising price parity more compelling, but looked to extrinsic evidence submitted by Safeway to determine whether there was any support for concluding that the "ambiguous language should be interpreted in the manner Safeway suggests." ECF No. 223 at 11. The Court found that, even in light of Safeway's extrinsic evidence, Plaintiff had presented "the more faithful interpretation of what a reasonable contracting party would have understood the terms to promise." Id. at 13. Because "[t]he Special Terms promise that, with the exception of the actually disclosed special charges and delivery fees, the prices charged for safeway.com products will be those charged in the physical store where the groceries are delivered." Id.

The Court also found that Safeway's alteration to the Special Terms on November 15, 2011, which had disavowed price parity, was not effective as to class members, all of whom had signed a version of the contract that had promised price parity. Id. at 13-18. The Court found ineffective language in the Special Terms that purported to bind class members to any future alterations Safeway made to the contract without notice. Id.

## II.     LEGAL STANDARD

The parties dispute which party bears the burden on a motion for decertification. The Plaintiff acknowledges "some disagreement among courts" on this issue, but states that "[m]any courts hold that the party seeking decertification (here, Safeway) bears the burden." ECF No. 244-5 at 1 n. 1. Safeway argues that "even though the defendant is the moving party in a motion for decertification, the burden remains on the plaintiff to show that certification continues to be appropriate as the case has progressed." ECF No. 238-4 at 11.

Under Ninth Circuit law, Safeway is correct that the plaintiff class bears the burden of establishing that certification is appropriate throughout the class action. "[A]s to the class-decertification issue, [plaintiff], as the party seeking class certification, bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." Marlo v. United Parcel Serv., Inc., 639 F.3d 942, 947 (9th Cir. 2011). Nonetheless, because the Court already found that those requirements were met when it approved class certification, "decertification and modification should theoretically only take place after some change, unforeseen at the time of the class certification, that makes alteration of the initial certification decision necessary." 3 William B. Rubenstein et al., Newberg on Class Actions § 7:34 (5th ed.2013) (cited approvingly in In re Apple iPod iTunes Antitrust Litig., No. 05-CV-0037 YGR, 2014 WL 6783763, at *5 (N.D. Cal. Nov. 25, 2014)).

## III.    ANALYSIS

Safeway argues that, because the Court has already resolved the common issues of the contract's interpretation and breach, common questions no longer predominate over the individualized damages issues that remain in the case. Safeway thus contends that the Court should reevaluate whether continued certification of a class is appropriate, as the adjudication of

3

Safeway's affirmative defenses of "consent, waiver, estoppel, and mutual mistake, among others . . . will require individualized inquiry." ECF No. 238-4 at 12.[1]

But the Court already considered Safeway's affirmative defenses in resolving the question of predominance under Rule 23(b)(3). The Court's certification decision found unpersuasive Defendant's argument that common issues did not predominate because "certain customers learned of the additional charges and continued to shop Safeway.com after so learning." ECF No. 163 at 17. The Court concluded that nothing in the record "suggests that determining this issue will require so much individualized inquiry as to defeat certification." Id. The Court reasoned that, to the extent the Court might be required "to determine whether shoppers who continued to use the service after learning of the undisclosed charge legally waived their rights to enforce the contract, it can make such a legal determination commonly and then subdivide the class as appropriate." Id.

Just because the Court has resolved certain common issues in the case by summary judgment does not mean that individual issues now predominate. Although the Court has ruled on issues regarding contract interpretation and breach, these common issues remain in the case and should still be considered in evaluating predominance.[2] A contrary rule would turn grants of summary judgment into pyrrhic victories for class action plaintiffs, since any case strong enough to win a motion for summary judgment on common merits questions would then become subject to decertification before damages could be recovered. Such a rule would be contrary to the goals of Rule 23. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively

---

[1] Safeway also argues again that the superiority requirement is not satisfied, as it argued at class certification. The Court previously addressed this precise argument at ECF No. 163 at 22-23. Nothing has changed to alter the Court's previous conclusion that Ratner v. Chemical Bank New York Trust Company, 54 F.R.D. 412, 416 (S.D.N.Y. 1972), is inapposite and that "[r]esolving the Proposed Class Members' claims for breach of a form contract in a class action is a superior method of resolving the dispute than conducting litigation on an individual basis." Id.

[2] The continued importance of these common issues in this litigation is further demonstrated by Safeway's recently-filed motion for interlocutory appeal of a portion of the Court's summary judgment ruling. ECF No. 251.

paltry potential recoveries into something worth someone's (usually an attorney's) labor." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617 (1997) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (1997)).

For this reason, "[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003) (citing 6A Fed. Proc., L.Ed. § 12:248, Defenses to Individual Members' Claims (2002); 32B Am.Jur.2d Federal Courts § 2018 & n. 1 (2002); Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 924 (3d Cir.1992); Cameron v. E.M. Adams & Co., 547 F.2d 473, 478 (9th Cir.1976)). "After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." Smilow, 323 F.3d at 39. If, at any stage in the class litigation, it becomes clear that "an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms," such as placing "class members with potentially barred claims in a separate subclass." Id. at 39-40.

Because the legal effect of Safeway's affirmative defenses has not yet been established, "questions of law or fact common to class members" continue to "predominate over any questions affecting only individual members." Fed. R. Civ. Pro. 23(b)(3). Safeway puts the cart before the horse by asking the Court to decertify the class when the Court has not even resolved whether those class members who continued to use Safeway's online shopping service after learning of the markup waived their right to recover or otherwise consented to the markup. Indeed, the Court has previously expressed its skepticism of these arguments. See ECF No. 163 at 17 ("It is far from clear that these customers legally consented to the undisclosed charges by continuing to use the Safeway.com service.") Having not yet determined the legal effect of Safeway's affirmative defenses, the Court sees no need to decertify the class at this juncture to inquire into individualized factual issues. If the Court ultimately concludes that class members who continued to use the service after learning of the markup did not waive their claims or consent as a matter of law, then

there would be no need for individualized factual inquiry.[3] The Court's position, stated in its certification order, has not changed: these legal determinations can be made on a classwide basis and the Court can then, if necessary, subdivide the class as appropriate.

Defendant argues that Plaintiff has not proposed a damages model for the class. This is not true. Plaintiff has consistently argued that the measure of damages should be the full amount of the difference between the prices charged in stores and the prices charged online. See ECF No. 163 at 16 ("If Plaintiff can prevail on the merits on its theory of the contract, all Class Members will have damages in the amount of the undisclosed fees, and calculating damages is a simple matter of refunding those charges.") Defendant contests this, arguing that class members received certain benefits due to the markup and should be estopped from claiming the full amount of the markup as damages. The Court has never endorsed Defendant's theory that those Plaintiffs, having received other potential benefits such as online discounts, are estopped from recovering the markup in full.[4] Again, the legal question of whether Plaintiffs who received a benefit from shopping online are not entitled to full recovery of the markup can be determined on a classwide basis.

Although the parties' briefing spends significant time arguing the merits of Safeway's affirmative defenses, the merits of those defenses are not currently before the Court. As Safeway notes, "Plaintiff has not moved for summary judgment on these defenses." ECF No. 249-4 at 1, n. 1. Neither has Safeway. The only question before the Court at this juncture is whether the individualized facts underlying these defenses so predominate as to require decertification. See

---

[3] Even if the Court were to conclude these defenses did affect recovery, they would only apply to a minority of class members. By Safeway's own estimate, "between 13% and 38% of Safeway's online customers knew or believed that Safeway charged higher prices online for non-promotional items than it charged for such items in its physical stores, and that a vast majority of them continued to place online orders." ECF No. 238-4 at 2. Therefore, if Safeway's defenses of consent or waiver are found to have legal effect on the recovery of certain class members, those defenses still likely do not apply to a predominant number of class members.

[4] The Court notes that many of the cases cited by Defendant for this proposition concern food labeling class actions, which involve concerns not present in this case. As aptly summarized by Plaintiff, those cases involve damages questions about how to "segregate[e] the portion of the purchase price attributable solely to the alleged false representation from the purchase price attributable to the other benefits of the product." ECF No. 244-5 at 22 n. 25.

Amgen Inc. v. Conn. Ret. Plans & Trust Funds, ___ U.S. ___, 133 S. Ct. 1184, 1194-1195 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). After rigorous inquiry, at certification and in consideration of this motion, the Court concludes individualized factual questions do not so predominate.

Soon, the Court will have occasion to resolve the merits of these defenses. The Court's scheduling order in this case, ECF No. 246, provides for damages summary judgment briefing to be submitted on June 19, 2015. This briefing will provide an opportunity for the Court to address the common legal question of what effect Safeway's affirmative defenses have on recovery by those class members against whom they apply. Because the Court has not yet found that any defenses requiring individualized factual inquiry will have any effect on the recovery of any class members, certification continues to be appropriate at this time.

## CONCLUSION

Defendant's motion to decertify the class is hereby denied.

IT IS SO ORDERED.

Dated: May 14, 2015

_____
JON S. TIGAR
United States District Judge