SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
JAMES C. SHAH (SBN 260435)
ROSE F. LUZON (SBN 221544)
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367
jshah@sfmslaw.com
rluzon@sfmslaw.com

CHIMICLES & TIKELLIS, LLP
STEVEN A. SCHWARTZ (*pro hac vice*)
TIMOTHY N. MATHEWS (*pro hac vice*)
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
SteveSchwartz@chimicles.com
TimothyMathews@chimicles.com

*Attorneys for Plaintiff and on Behalf*
*of All Others Similarly Situated*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RODMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>SAFEWAY, INC.,<br><br>Defendant. | Case No.: 3:11-cv-03003 JST (JCS)<br><br>**PLAINTIFF'S OPPOSITION TO SAFEWAY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES**<br><br>Date:  July 30, 2015<br>Time:  2:00 p.m.<br>Crtrm.: 9 – 19th Floor<br>Trial Date: October 5, 2015<br>Judge: Hon.  Jon S. Tigar<br><br>Complaint filed: June 17, 2011 |

1

## TABLE OF CONTENTS

2    TABLE OF AUTHORITIES ...........................................................................................ii

3    I.      INTRODUCTION ...................................................................................... 1

4
     II.     FACTS ........................................................................................................ 2
5
     III.    LEGAL STANDARD .............................................................................. 3
6

7    IV.     ARGUMENT ........................................................................................... 5

8            A.    The LOL Clause Limits Breach Of Contract Damages For Each Order
                   To The Total Amount Paid For That Order, Which Has No Impact On
9                  Damages Here ................................................................................... 5

10           B.    The Plain Meaning Of The LOL Clause Does Not Support Safeway's
11                 Argument ......................................................................................... 7

12           C.    Safeway's Interpretation Of The LOL Clause, If Accepted, Would
                   Render The LOL Clause Unconscionable ...................................... 9
13

14           D.    Safeway's LOL Clause Is Void As Against Public ........................ 13

15   V.      MOTION TO STRIKE .......................................................................... 16

16   VI.     CONCLUSION....................................................................................... 17

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF AUTHORITIES

## Cases

*Abramson v. Juniper Networks, Inc.*,
  115 Cal. App. 4th 638 (Cal. App. 6th Dist. 2004) ...................................................................... 11

*Akin v. Business Title Corp.*,
  264 Cal. App. 2d 153 (Cal. App. 2d Dist. 1968) ........................................................................ 16

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (Cal. 2000) ...................................................................................................... 10, 11

*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*,
  116 Cal. App. 4th 1375 (Cal. App. 5th Dist. 2004) ..................................................................... 5

*Artukovich v. Pac. States Cast Iron Pipe Co.*,
  78 Cal. App. 2d 1 (Cal. App. 1947) .......................................................................................... 12

*Baker v. BDO Siedman, L.L.P.*,
  390 F. Supp. 2d 919 (N.D. Cal. 2005) ........................................................................................ 5

*Boghos v. Certain Underwriters at Lloyd's*,
  109 Cal. App. 4th 1728 (Cal. App. 6th Dist. 2003) ..................................................................... 4

*Cal. Earthquake Auth. v. Metro. W. Sec., LLC*,
  2014 U.S. Dist. LEXIS 90672 (E.D. Cal. July 2, 2014) .............................................................. 5

*Cal. Farm Bureau Fed'n v. Cal. Wildlife Conservation Bd.*,
  143 Cal. App. 4th 173 (Cal. App. 3d Dist. 2006) ...................................................................... 12

*City of Santa Barbara v. Superior Court*,
  41 Cal. 4th 747 (Cal. 2007) ...................................................................................................... 16

*Civic Ctr. Drive Apts. Ltd. P'ship. v. Southwestern Bell Video Servs.*,
  295 F. Supp. 2d 1091 (N.D. Cal. 2003) ..................................................................................... 14

*Flores v. Transamerica HomeFirst, Inc.*,
  93 Cal. App. 4th 846 (Cal. App. 1st Dist. 2001) ....................................................................... 10

*Food Safety Net Servs. v. Eco Safe Systems USA, Inc.*,
  209 Cal. App. 4th 1118 (Cal. App. 2d Dist. 2012) ........................................................... 12, 14, 15

*Gardner v. Downtown Porsche Audi*,
  180 Cal. App. 3d 713 (Cal. App. 2d Dist. 1986) ........................................................................ 16

*Gavin W. v. YMCA of Metro. L.A.*,
106 Cal.App.4th 662 (Cal. App. 2d Dist. 2003) ................................................ 16

*Health Net of Cal., Inc. v. Dep't of Health Servs.*,
113 Cal.App.4th 224 (Cal. App. 3d Dist. 2003) ................................................ 16

*Henrioulle v. Marin Ventures, Inc.*,
20 Cal.3d 512 (1978) .......................................................................................... 16

*Little v. Auto Stiegler, Inc.*,
29 Cal. 4th 1064, 1071 (Cal. 2003) .................................................................... 11

*Mariscal v. Graco, Inc.*,
52 F.Supp.3d 973 (N.D. Cal. 2014) .................................................................... 17

*Markborough Cal. v. Superior Court*,
227 Cal. App. 3d 705 (Cal. App. 4th Dist. 1991) .............................................. 13

*Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.*,
200 Cal. App. 3d 1518 (1988) .................................................................... 4, 9, 13

*Pelletier v. Alameda Yacht Harbor*,
188 Cal.App.3d 1551 (Cal. App. 1st Dist. 1986) ............................................... 16

*Peregrine Pharms., Inc. v. Clinical Supplies Mgmt.*,
2014 WL 3791567 (C.D. Cal. July 30, 2014) ....................................... 10, 12, 14

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*,
55 Cal. 4th 223 (Cal. 2012) ............................................................................... 10

*Queen Villas Homeowners Ass'n v. TCB Prop. Mgmt.*,
149 Cal. App. 4th 1 (2007) .............................................................................. 4, 9

*Simulados Software, LTD v. Photon Infotech Private, LTD*,
40 F. Supp. 3d 1191 (N.D. Cal. 2014) ............................................................... 13

*Tunkl v. Regents of University of California*,
60 Cal. 2d 92 (Cal. 1963) ...................................................................... 14, 15, 16

*Vedachalam v. Tata Consultancy Servs.*,
2012 U.S. Dist. LEXIS 46429 (N.D. Cal. Apr. 2, 2012) ..................................... 4

*Vilner v. Crocker Nat'l Bank*,
89 Cal.App.3d 732 (Cal. App. 1st Dist. 1979) ................................................... 16

*Wolf v. Walt Disney Pictures & Television,*
 162 Cal. App. 4th 1107 (Cal. App. 2d Dist. 2008) .......................................................... 4

**Statutes**

Cal. Civ. Code. § 1643 ........................................................................................................ 4, 9

Cal. Civ. Code § 1644 ............................................................................................................. 4

Cal. Civ. Code § 1668 ................................................................................................. 13, 14, 16

Cal. Civ. Code § 1670.5 ......................................................................................................... 10

Cal. Com. Code § 2719 ................................................................................................ 10, 11, 12

**Other Authorities**

4 Witkin Cal. Proc. Plead. § 53 .............................................................................................. 5

California Retail Food Code, Health & Saf. Code, § 113700 *et seq*. ................................... 15

Restatement (Second) of Contracts § 206 ............................................................................. 4

Restatement (Second) of Contracts § 236 ............................................................................. 5

## I.    INTRODUCTION

Plaintiff, Michael Rodman ("Plaintiff"), respectfully submits this Opposition to Defendant, Safeway, Inc.'s ("Safeway"), Motion for Partial Summary Judgment on Damages (the "Motion").  Safeway's Motion seeks an Order holding that the limitation of liability clause ("LOL Clause") in the Special Terms restricts each Class member's total recovery for breach of contract damages to the value of each Class member's most recent online order prior to December 23, 2014, regardless of how many times Safeway breached the contract by overcharging each Class member for grocery orders between April 2010 and December 22, 2014.

The plain language of the LOL Clause does not support Safeway's argument.  Instead, the plain language of the LOL Clause states that Safeway's liability "for damages, injuries, losses, and causes of action" is limited to the amount of the most recent online order "prior to the *claimed injury*, loss, or damage."  In other words, the LOL Clause merely states that liability for a claimed injury is limited to the amount of the most recent order prior to when the *injury occurs*.  It is axiomatic that each breach of a contract constitutes a separate and distinct claim or cause of action.  Here, Safeway breached the contract with respect to each order on which it "marked up the charges for the in-store prices beyond the disclosed delivery and special charges…." *See* Amended SJ Order (Dkt. No. 237), at 13.  Indeed, Safeway admits that: "The *claimed injury*, loss, or damage in this case is the alleged breach that occurred when Safeway *fulfilled an online order* for groceries at prices including the markup."  Motion, at 5 (emphasis added).  Thus, each breach of contract is its own "claimed injury, loss, or damage," and the LOL Clause merely limits recoverable damages for each such claimed injury to the amount of the most recent order immediately prior to the claimed injury.  Since the amount of the Markup for an individual order is always less than the total order amount, the LOL Clause has no impact on recoverable damages here.

Moreover, although the LOL Clause has no impact whatsoever on damages in this case, it is also is unenforceable because: (1) it is unconscionable if applied in the manner in which

Safeway seeks to apply it; and (2) it is void as against public policy since it purports to limit liability in transactions affecting the public interest.

Finally, the Court should strike the June 19, 2015 Declaration of Joseph Anastasi ("Anastasi") in Support of Safeway's Motion and Appendix B attached thereto (Dkt. Nos. 267-7 and 267-9) because the opinions asserted therein were never disclosed prior to the close of expert discovery. Specifically, in his rebuttal report served on May 22, 2015, Anastasi assumed that the last order *prior to the Court's Order certifying the Class* was the "Limiting Order" (*i.e.*, the order which supplies the damages cap under Safeway's reading of the LOL Clause).[1] *See* Anastasi Rebuttal (Dkt. No. 275-6). Plaintiff deposed Anastasi on this basis. Now, however, Anastasi has changed tack, and his June 19, 2015 Declaration assumes that the *last order prior to December 23, 2014* serves as the Limiting Order, and he re-calculates damages accordingly. This new theory was never disclosed until the instant Motion was filed on June 19, 2015, well after expert discovery had closed. While Safeway's Motion is based on a gross misreading of the LOL Clause, and therefore Anastasi's calculations concerning the LOL Clause in both the rebuttal and his June 29, 2015 declaration are wholly irrelevant, the Court should nevertheless refuse to countenance Safeway's attempt to substitute a new expert opinion after the deadline for expert discovery had passed.

## II.    FACTS

Like the contractual promise of price parity itself, Safeway's LOL Clause was present in its contract with Class members from the inception of the delivery business in 2001 through at least November 2011. *See* Declaration of Steven A. Schwartz in Support of Plaintiff's Motion for Partial Summary Judgment (1) Establishing Liability for Class Members Who Registered Before 2006 and (2) Establishing the Operative Version of the Special Terms ("Schwartz Decl.") (Dkt. No. 273-1), at Exs. 9-25, 27. The clause states in full:

---

[1]    As noted in Plaintiff's Motion to Exclude and Strike the report and opinions of Anastasi, Safeway's damages expert (Dkt. No. 279-5, at p. 22), Anastasi also improperly addressed the LOL Clause for the first time in his rebuttal report.

**LIMITATION OF LIABILITY.**
SAFEWAY SHALL NOT BE LIABLE TO YOU FOR ANY
INTERCEPTION OF ONLINE COMMUNICATIONS, SOFTWARE OR
HARDWARE PROBLEMS (INCLUDING, WITHOUT LIMITATION,
VIRUSES, LOSS OF DATA, OR COMPATIBILITY CONFLICTS),
UNAUTHORIZED USE OF YOUR CREDIT CARD, OR OTHER
CONSEQUENCE BEYOND THE REASONABLE CONTROL OF
SAFEWAY. ANY LIABILITY OF SAFEWAY (INCLUDING ITS
EMPLOYEES, AFFILIATES, OR AGENTS) TO YOU FOR
DAMAGES, INJURIES, LOSSES AND CAUSES OF ACTION, OF
ANY KIND OR NATURE, WHETHER IN CONTRACT, TORT, OR
OTHERWISE, EITHER JOINTLY OR SEVERALLY, SHALL BE
STRICTLY LIMITED TO THE AGGREGATE DOLLAR AMOUNT
PAID BY YOU TO SAFEWAY IN YOUR MOST RECENT USE OF
THE ONLINE SHOPPING SERVICE IMMEDIATELY PRIOR TO THE
CLAIMED INJURY, LOSS OR DAMAGE.

*Id.*[2]

Neither Safeway nor Plaintiff has submitted extrinsic evidence concerning the meaning

of this provision.

**III.    LEGAL STANDARD**

Under California law:

When the meaning of the words used in a contract is disputed, the trial
court engages in a three-step process. First, it provisionally receives any
proffered extrinsic evidence that is relevant to prove a meaning to which
the language of the instrument is reasonably susceptible. … If, in light of
the extrinsic evidence, the language is reasonably susceptible to the
interpretation urged, the extrinsic evidence is then admitted to aid the
court in its role in interpreting the contract. … When there is no material
conflict in the extrinsic evidence, the trial court interprets the contract as a
matter of law. … If, however, there is a conflict in the extrinsic evidence,
[such that ascertaining the intent of the parties depends on the credibility
of extrinsic evidence] the factual conflict is to be resolved by the jury.

---

[2]    While Plaintiff does not dispute that this LOL clause appeared in the relevant Special
Terms from 2001 through November 2011, Plaintiff objects to Safeway's citation to copies of
the Special Terms that did not form the operative contract.  Specifically, Safeway cites to copies
of the Special Terms that appeared on its "content" website (*see* Motion at 1, citing July 18, 2014
Blackman Decl. Exs. 9-11 (Dkt. Nos. 177-1, 177-2, and 177-3)), and not the Special Terms that
were placed on the eCommerce site and that actually formed the operative contract.  *See
generally,* Plaintiff's Motion for Partial Summary Judgment (1) Establishing Liability for Class
Members Who Registered Before 2006 and (2) Establishing the Operative Version of the Special
Terms (Dkt. No. 269-5), at 14-15.

1

2

*Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126-1127 (Cal. App. 2d Dist. 2008) (citations omitted).

3

4

5

      Here, neither party has submitted extrinsic evidence relevant to the meaning of the LOL Clause.  Thus, the Court must determine the meaning as a matter of law based on the language of the contract itself.

6

7

8

9

10

11

12

13

      "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." Cal. Civ. Code § 1644.  "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."  Cal. Civ. Code § 1643.  The Court must "construe the contract as a whole, giving effect to every part if reasonably practicable, with each clause assisting us in interpreting the other."  *Boghos v. Certain Underwriters at Lloyd's*, 109 Cal. App. 4th 1728, 1736 (Cal. App. 6th Dist. 2003) (quoting Cal. Civ. Code, § 1641).

14

15

16

17

18

19

20

21

22

23

      Further, "[w]hen ordinary principles of contract interpretation do not resolve an ambiguity, the contract language should be construed against the party that drafted the language. This rule applies with special force to contracts of adhesion."  *Id.* (citing Civ. Code, § 1654); *see also* Restatement (Second) of Contracts § 206 ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."); *Vedachalam v. Tata Consultancy Servs*., No. 06-0963, 2012 U.S. Dist. LEXIS 46429, at *26-27 (N.D. Cal. Apr. 2, 2012) ("Even if Defendants could establish some ambiguity with extrinsic evidence, the ambiguous contract terms would [be] interpreted against them, as the drafters of the form contract.").

24

25

26

      Finally, "contractual clauses seeking to limit liability will be strictly construed and any ambiguities resolved against the party seeking to limit its liability . . . ."  *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co*., 200 Cal. App. 3d 1518, 1538 (1988); *see also Queen Villas*

27

*Homeowners Ass'n v. TCB Prop. Mgmt.*, 149 Cal. App. 4th 1, 6 (2007) ("[E]xculpatory clauses are construed against the released party.").

## IV.    ARGUMENT

### A.    The LOL Clause Limits Breach Of Contract Damages For Each Order To The Total Amount Paid For That Order, Which Has No Impact On Damages Here

The LOL Clause states that "any liability of Safeway's … for damages, injuries, losses, and causes of action" is limited to the amount of the most recent online order immediately "prior to the claimed injury, loss, or damage."

Here, each breach of contract constitutes a separate and distinct injury.[3]  "[I]n California, courts have expressly held that each breach of contract should be considered a separate cause of action." *Baker v. BDO Siedman, L.L.P.*, 390 F. Supp. 2d 919, 924 (N.D. Cal. 2005) (citing 4 Witkin Cal. Proc. Plead. § 53 ("Separate breaches create separate causes of action.")); *see also Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1388 (Cal. App. 5th Dist. 2004) (noting that a breach of contract accrues "when all of the elements of a cause of action have occurred and a suit may be maintained," and even for continuing contracts, such as installment contracts and leases, each installment constitutes a separate accrual for breach of contract); *Cal. Earthquake Auth. v. Metro. W. Sec., LLC*, 2014 U.S. Dist. LEXIS 90672, at *22 (E.D. Cal. July 2, 2014) ("each of Defendants' failures to perform under the contract results in a new breach, giving rise to a new cause of action"); Restatement (Second) of Contracts § 236 ("every breach gives rise to a claim for damages").

Indeed, the Safeway Special Terms expressly state that each order constitutes a separate offer and acceptance:

> **1. Offer and acceptance.**
> By submitting a completed order form, you offer to purchase, pursuant to these Terms and Conditions and the order form, the groceries and other items (collectively, "Product") you select and

---

[3]    For simplicity, Plaintiff uses the term "injury" instead of repeating the words "injury, loss, or damages."  The outcome is the same no matter which term is used, however.

submit to Safeway.com ("Safeway") for purchase via the order form. Safeway may accept your offer by sending you an electronic confirmation that your order has been received and accepted. It shall be in Safeway's discretion to accept or reject your offer. If Safeway accepts your offer, these Terms and Conditions and the order form collectively constitute a legal agreement between Safeway and you governing your purchase of the Product from Safeway over the Safeway.com online shopping service.

*See, e.g.*, Schwartz Decl., at Ex. 9 (SWY0261293-98).[4]

By it plain terms, the LOL Clause merely limits liability for each asserted injury (*i.e.*, each breach of contract) to the total amount paid to Safeway immediately preceding the injury. Here, the injury is the amount of the Markup charged by Safeway in violation of the contract. Safeway admits as much, stating, "**The *claimed injury*, loss, or damage in this case is the alleged breach that occurred when Safeway *fulfilled an online order* for groceries at prices including the markup**." Motion, at 5 (emphasis added). The Markup is *always* less than the total amount of the order preceding the injury.[5] Thus, the LOL Clause has no effect on

---

[4]    The Special Terms also state, in relevant part:

Your <u>use of the Safeway online service</u> and the Site constitutes your agreement to the terms and conditions set forth below. …

**By completing the on-line registration process, <u>submitting each order and completing the checkout process</u>, you confirm and affirm that you have read, understood and agree to these Terms and Conditions, and the form in which they appear at the time your on line registration is completed. …**

**2. Responsibilities.**

<u>If Safeway accepts your order, Safeway shall, in return for your payment, provide the Product that you order through the online shopping service</u>. … Your payment for the Product and shipping and delivery, including any applicable sales taxes, is due upon completion of the checkout and delivery of your order. Safeway will charge the payment for Product to the credit card that you submit to Safeway as part of your registration, and will collect the payment from your bank. …

(Bold in original; underline added).

[5]    As Safeway acknowledges, since it charges the customer's credit card at the pick store, and then delivers the groceries, the breach of contract injury (*i.e.*, the overcharge) occurs after the payment is made to Safeway – *i.e.*, when Safeway "fulfills" the order. Even if the act of charging the customer's credit card itself is considered to be the point of injury, however, the injury obviously flows from the charge and therefore occurs *after* payment for that order, even though the passage of time between the charge and the injury may be infinitesimally small.

recoverable damages -- it merely limits breach of contract damages for each order to the total amount paid for that order.

**B.      The Plain Meaning of the LOL Clause Does Not Support Safeway's Argument**

Safeway argues that the LOL Clause limits its liability for repeated breaches of contract to the amount of the most recent order prior to December 23, 2014, which is when Safeway began providing notice to customers who placed new orders that the Special Terms had changed. The plain language of the LOL Clause does not support this argument.

Although hardly pellucid, Safeway's argument appears to be that, by limiting its liability to the amount of the most recent online order immediately "prior to the claimed injury, loss, or damage," the LOL Clause limits liability for any and all injuries to the amount of the order immediately prior to the time *a claim is asserted*.  The problem with Safeway's argument is twofold.

First, this is not what the LOL Clause says.  As used in the LOL Clause, a "claimed injury" is simply an asserted injury; the word "claimed" being an adjective modifying the noun "injury."  The use of the term "*claimed* injury" is nothing more than a reference to the fact that Safeway might dispute the alleged injury.  The LOL Clause does *not* limit recovery to the order immediately prior to the date an injury "*is* claimed," as Safeway now wishes.  The term "claimed injury" denotes the time of the occurrence of the alleged injury, not the point in time at which a claim against Safeway is asserted.[6]

---

[6]      Interpreting the term "claimed injury" to mean the time an injury "is claimed" would also render the LOL Clause incapable of clear application.  At what time is an injury claimed? Would it be the date a customer complains to a Safeway employee?  The date a CLRA demand letter is sent to Safeway?  The date a lawsuit is filed?  The date an amended complaint is filed in the lawsuit?  At noted below, Safeway has been unable to answer the question and has asserted at least two different possible dates.  The fact that Safeway's interpretation of the LOL Clause results in an indefinite term demonstrates that its interpretation is incorrect.  In contrast, Plaintiff's interpretation creates no such unresolvable issues.

1   Second, Safeway's argument that the relevant Limiting Order is the most recent order

2   prior to December 23, 2014 is not even grounded in its own (mis)interpretation of the LOL

3   Clause.

4       Plaintiff filed this lawsuit in June 2011 and, at that time, asserted causes of action for

5   breach of contract on behalf of the Class members.  Safeway does not contend that the Limiting

6   Order for absent Class members is the most recent one prior to the date the Complaint was filed,

7   however, nor would that make any sense since Safeway continued to breach the contract for

8   several years thereafter.

9       The Class was certified in March 2014, at which point Plaintiff officially represented the

10  absent Class members.  In his rebuttal report served May 22, 2015, Anastasi, Safeway's expert,

11  assumed that the most recent order prior to Class certification was the Limiting Order for absent

12  Class members.  *See* Anastasi Rebuttal (Dkt. No. 275-6), at ¶ 14.  Anastasi even defended

13  Safeway's choice of that date in his deposition.  *See* Declaration of Timothy Mathews in Support

14  of Plaintiff's Opposition to Safeway's Motion ("Mathews Decl."), submitted herewith, at Exhibit

15  1 (Anastasi Depo. Excerpts), pp. 281:8-287:5.  Of course, Safeway continued to breach the

16  contract for several months after Class certification as well.  In its recent filing, Safeway has

17  abandoned that position.

18      Instead, Safeway now asserts that the Limiting Order is the most recent order prior to

19  December 23, 2014, which is the date on which Safeway began providing notice that the Special

20  Terms had changed to those Class members who placed new orders after that date.  In essence,

21  Safeway asserts that a Class member's total recovery for multiple breaches of contract over

22  several years is limited to the value of the final order for which Safeway breached the contract.

23  Safeway does not, because it cannot, even attempt to justify that stance under the express terms

24  of the LOL Clause.

25      In fact, Safeway essentially acknowledges that, under its interpretation, there is no

26  definitive answer to the question "*which* online order is the Limiting Order."  Instead, Safeway

27  beseeches the Court to find that "[b]ecause the Special terms expressly reference the 'most recent

use' … the best choice is the class member's last applicable online order before December 23, 2014…." Motion, at 5 (emphasis in original). Safeway further posits that "any ambiguity as to *which* use of Safeway's online shopping services was the 'most recent use' or Limiting Order does not mean that limitation of liability provision has no effect." *Id*. (emphasis in original). Safeway overlooks the obvious, however, which is that it misconstrues the LOL Clause altogether.

Safeway's interpretation of the LOL Clause results in an intractable problem, as it implicitly concedes. Plaintiff's interpretation of the LOL Clause, on the other hand, is definite, reasonable, and capable of being carried into effect. The law unequivocally supports Plaintiff's interpretation: "A contract must receive such an interpretation as will make it lawful, operative, *definite, reasonable, and capable of being carried into effect*, if it can be done without violating the intention of the parties." Cal. Civ. Code § 1643. Safeway's position would require the re-writing of the LOL Clause, which runs afoul of basic construction tenets because "contractual clauses seeking to limit liability will be strictly construed and any ambiguities resolved against the party seeking to limit its liability . . . ." *Nunes Turfgrass*, 200 Cal. App. 3d at 1538; *see also Queen Villas Homeowners Ass'n*, 149 Cal. App. 4th at 6 ("[E]xculpatory clauses are construed against the released party.").

It is plain as day that the LOL Clause merely limits damages for each breach of contract (*i.e.*, the total overcharge applied to each order) to the total order value for that order which, in the context of this case, has no impact on damages whatsoever.

### C.    Safeway's Interpretation Of The LOL Clause, If Accepted, Would Render The LOL Clause Unconscionable

In addition to rendering the LOL Clause incapable of definite application, Safeway's interpretation would also render the LOL Clause unconscionable because it would restrict contractual remedies to less than what is actually promised by the contract. As such, it would

render the contractual promise of price parity one-sided, at least partially illusory, and violative of Section 2719 of the California Uniform Commercial Code.[7]

The doctrine of unconscionability is a judicially created doctrine, which the California legislature has codified. Cal. Civ. Code § 1670.5. Unconscionability entails analysis of both procedural and substantive elements. "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. … [P]rocedural unconscionability generally takes the form of a contract of adhesion." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 246 (Cal. 2012) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000)) (additional citations and quotations omitted). "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id*. In analyzing unconscionability, "[e]ssentially a sliding scale is invoked … [so that] the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114 (internal citations and quotations omitted).

There is no question that the contract here is a contract of adhesion and, therefore, satisfies the element of procedural unconscionability. "A finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (Cal. App. 1st Dist. 2001) (citations omitted). Here, the LOL Clause is buried within a prolix contract and there was significant disparity in bargaining power between Safeway and consumers, with consumers having no opportunity to negotiate or modify the terms of the contract.

---

[7]    Although interrelated and often considered together, the questions whether a limitation of liability clause is unconscionable and/or void as against public policy are distinct inquiries. *See generally, Peregrine Pharms., Inc. v. Clinical Supplies Mgmt.*, 2014 U.S. Dist. LEXIS 105756, at *28, 2014 WL 3791567 (C.D. Cal. July 30, 2014) ("Without any evidence of unconscionability, the Court turns to whether the LOD clauses are contrary to public policy."); *Civic Ctr. Drive Apartments*, 295 F. Supp. 2d at 1106 (noting that a limitation of liability clause may be enforced where a plaintiff alleges a breach of contract claim unless "the provision is unconscionable or otherwise against public policy"). As addressed herein, Safeway's LOL Clause fails both standards, the latter being addressed further below.

Safeway's interpretation of the LOL Clause would also render the clause substantively unconscionable, since it would bar a remedy necessary to achieve actual expectation damages under the contract. Indeed, a clause that restricts a contractual remedy to something less than what is actually promised by the contract would render the promise illusory.

Substantive unconscionability focuses on whether a contract provision is "overly harsh or [generates] one-sided results." *Armendariz*, 24 Cal. 4th at 114 (internal quotations and citations omitted). "[T]he paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (Cal. App. 6th Dist. 2004). "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (Cal. 2003). As Safeway interprets the LOL Clause, it would not permit complete enforcement of the contract itself -- many Class members would be entitled to only a small fraction of their contractual expectation damages.

Section 2719 of the California Commercial Code does not permit a contract for sale of goods that limits remedies to less than the direct contractual expectation. Section 2719 states that a contract:

> (1) ….
>
>     (a) … may provide for remedies … may limit or alter the measure of damages recoverable under this division, *as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts*….
>
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code.

Cal. Com. Code § 2719.

As illustrated by the examples listed in subsection (1)(a), Section 2719 contemplates certain limitations of remedies, such as for consequential damages, but it does not contemplate contractual limitations that would restrict remedies to partial repayment (*i.e.*, less than what the contract actually promised).[8] To the contrary, as explained in the official commentary to Section 2719:

---

[8]    Under the principle of *ejusdem generis*, "where … specific words follow general words in a statutory enumeration, the general words are construed to embrace only things similar in

> Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.
>
> However, it is of the ***very essence of a sales contract that at least minimum adequate remedies be available***.   If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be ***at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract***. Thus ***any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion*** and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed. Similarly, under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or ***operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article***.

*Id*. at cmt. 1 (emphasis added).   By requiring "at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract," and prohibiting a clause that would "deprive either party of the substantial value of the bargain," Section 2719 does not permit a contract to limit damages to less than the parties' actual expectations.

Safeway has cited no case, nor is Plaintiff aware of one, where a limitation of liability was upheld that limited breach of contract damages to *less* than actual, direct expectation damages.  To the contrary, in the cases cited by Safeway (all of which involved commercial contracts) the limitation clauses at issue limited damages to the *total* amounts paid to the defendant, not *less* than the total amount paid, as Safeway would have it here.  *See, e.g., Peregrine Pharms*., 2014 U.S. Dist. LEXIS 105756, at *27 (limiting liability in contract between biopharmaceutical corporation and clinical supply management company to the "amount of payments actually received"); *Food Safety Net Servs. v. Eco Safe Systems USA, Inc*., 209 Cal. App. 4th 1118, 1126 (Cal. App. 2d Dist. 2012) (contract between marketer of disinfection equipment and testing agency limiting recovery to the "total amount paid by you to [Food Safety] for the services herein covered"); *Artukovich v. Pac. States Cast Iron Pipe Co*., 78 Cal.

---

nature to those enumerated by the specific words." *Cal. Farm Bureau Fed'n v. Cal. Wildlife Conservation Bd*., 143 Cal. App. 4th 173, 189 (Cal. App. 3d Dist. 2006).

App. 2d 1, 4 (Cal. App. 1947) (contract between co-partnership and manufacturer of cast iron pipe limiting damages to the "price of defective material"); *Markborough Cal. v. Superior Court*, 227 Cal. App. 3d 705, 709 (Cal. App. 4th Dist. 1991) (contract between developer and engineer limiting damages to the total amount of fees paid).[9]

In essence, Safeway's interpretation of the LOL Clause would prevent enforcement of the contract itself by preventing certain Class member's from recovering the full amount of their direct expectation damages under the contract. A contract that makes a promise which is not fully enforceable is illusory and unconscionable.[10]

### D.    Safeway's LOL Clause Is Void as Against Public Policy

Finally, although the Court need not reach the issue, Safeway's LOL Clause is also void as against public policy, regardless of how it is interpreted.

Cal. Civ. Code § 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code § 1668. Although the statute refers to exemptions from liability, "California courts have frequently applied the statute's analysis to cases in which the

---

[9]    Although not cited by Safeway, other relevant cases where limitations clauses have been upheld also involve clauses that limit recovery to the *total* amount paid to the party in breach. *See, e.g., Simulados Software, LTD v. Photon Infotech Private, LTD*, 40 F. Supp. 3d 1191, 1199, (N.D. Cal. 2014) ("The contract does not, as Simulados argues, prevent Simulados from recovery in the event of a breach. The limitation-of-liability clause expressly allows for recovery of the total amount received by Photon."); *Nunes Turfgrass*, 200 Cal. App. 3d at 1524 ("Liability for damages for any cause, including breach of contract or breach of warranty, with respect to this sale of seeds is Limited to a Refund of the Purchase Price of the Seeds.").

[10]    ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████ This is not a "rational and fair allocation of risk" as argued by Safeway at page 1 of its Motion. Nor is repaying the full amount of an extra-contractual overcharge the type of "unusual uncertainties and risks" that Safeway concedes at page 3 of its Memorandum is the proper purpose of an enforceable limitation of liability provision.

1  clauses at issue merely limited or capped the remedies available to a plaintiff." *Peregrine*

2  *Pharms.,* 2014 U.S. Dist. LEXIS 105756, at *26 (citing cases).

3      While some courts have examined limitation of liability clauses only *as applied* to the

4  claims at issue in the litigation, others have held that clauses like Safeway's (which purports to

5  limit Safeway's liability of "any kind or nature, whether in contract, tort, or otherwise") can be

6  struck as facially void under Section 1668, even though the claim at issue in the litigation is for

7  simple breach of contract. *See, e.g., Civic Ctr. Drive Apts. Ltd. P'ship. v. Southwestern Bell*

8  *Video Servs.*, 295 F. Supp. 2d 1091, 1106 (N.D. Cal. 2003) (rejecting the argument that "a

9  limitation of liability provision may be enforced -- even if it insulates a party from damages

10  resulting from its own fraudulent acts -- where a plaintiff alleges only breach of contract claims

11  and does not assert a tort cause of action," and concluding that "a limitation of liability provision

12  may be unenforceable if it is in violation of public policy, even if the plaintiff asserts only a

13  breach of contract claim."). Since Safeway's LOL Clause purports to limit liability for *all* kinds

14  of injury -- including fraud, willful injury, and statutory violations -- the Court would be justified

15  in holding that it is void on its face.

16      Nevertheless, even if the clause is examined solely "as applied" to the breach of contract

17  claim here, Safeway's interpretation of the LOL Clause is void as against public policy under

18  Section 1668. A limitation of liability for ordinary negligent conduct is void and unenforceable

19  if the "the underlying transaction 'affects the public interest' under the criteria specified in *Tunkl*

20  *v. Regents of University of California* [60 Cal. 2d 92 (Cal. 1963)]." *Food Safety Net Servs.*, 209

21  Cal. App. 4th at 1126. In *Tunkl*, the California Supreme Court provided a "rough outline of that

22  type of transaction in which exculpatory provisions [for ordinary negligence] will be held

23  invalid." Such transactions involve "*some* or all of the following characteristics":

24      It concerns a business of a type generally thought **suitable for public**
       **regulation**. The party seeking exculpation is engaged in performing a

25      **service of great importance to the public**, which is **often a matter of**
       **practical necessity for some** members of the public. The party holds

26      himself out as **willing to perform this service for any member of the**
       **public** who seeks it, **or at least for any member coming within certain**

27

**established standards**. As a result of the essential nature of the service, in the economic setting of the transaction, **the party invoking exculpation possesses a decisive advantage of bargaining strength** against any member of the public who seeks his services.  In exercising a superior

bargaining power the party confronts the public with a **standardized adhesion contract of exculpation**, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.  Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Tunkl*, 209 Cal. App. 4th at 98-101.

Nearly all of these characteristics apply to the grocery delivery service at issue here. Grocery sales are heavily regulated by the state.  *See, e.g.*, California Retail Food Code, Health & Saf. Code, § 113700, *et seq*.  Not only is the sale of groceries obviously of great public importance, but the sale of groceries at the contracted price is also of great public importance. As a result, governmental officials have vigorously prosecuted grocery companies, including Safeway, for overcharging customers, and enjoined grocery companies, including Safeway, from persisting in overcharging customers.  *See, e.g.*, Ex. 48 to August 8, 2014 Mathews Supp. Decl. in Opposition to Safeway's Motion for Summary Judgment (Dkt. No. 187-7) (Final Judgment and Permanent Injunction against Safeway in case brought by the State of California for, *inter alia*, grocery overcharging).  Further, grocery delivery is a practical necessity for members of the public with limited mobility.  In fact, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  Safeway holds itself out as willing to sell groceries to any member of the public, and willing to deliver groceries to every member of the public whose delivery address is within certain geographic regions.  Safeway also possess a decisive advantage

in bargaining strength, and confronts the public with a standard contract of adhesion, with no provision whereby customers can negotiate for a different exculpation clause.

Thus, like exculpatory clauses in many other contracts that have been found to affect the public interest under the *Tunkl* factors, Safeway's LOL Clause is a void limitation of liability because the grocery delivery service impacts the public interest. *See, e.g., Henrioulle v. Marin Ventures, Inc.*, 20 Cal.3d 512, 517-20 (1978) (release of liability for negligence by residential landlord held void); *Gavin W. v. YMCA of Metro. L.A.*, 106 Cal.App.4th 662 (Cal. App. 2d Dist. 2003) (release of liability for negligence by provider of childcare services held void); *Pelletier v. Alameda Yacht Harbor*, 188 Cal.App.3d 1551 (Cal. App. 1st Dist. 1986) (release of liability for negligence by provider of harbor boat berth held void); *Gardner v. Downtown Porsche Audi*, 180 Cal. App. 3d 713, 716 (Cal. App. 2d Dist. 1986) (release of liability for negligence by auto repair shop held void); *Vilner v. Crocker Nat'l Bank*, 89 Cal.App.3d 732 (Cal. App. 1st Dist. 1979) (release of liability for negligence relating to banking services held void); *Akin v. Business Title Corp.,* 264 Cal. App. 2d 153 (Cal. App. 2d Dist. 1968) (release of liability for negligence by escrow company held void); *see also Health Net of Cal., Inc. v. Dep't of Health Servs.*, 113 Cal. App. 4th 224 (Cal. App. 3d Dist. 2003) (exculpatory clause related to managed health care for Medi-Cal beneficiaries held void).[11]

Simply put, as the provider of necessities whose business is imbued with a public purpose, Section 1668 does not permit Safeway to limit its liability for breaches of its own contract of adhesion, whether negligent or otherwise.

## V.    MOTION TO STRIKE

As noted previously, Safeway's expert, Anastasi, opined in his rebuttal report that the Limiting Order is the Order placed prior to March 10, 2014, the date the Court certified the Class. Anastasi defended this choice at his deposition, testifying ██████████████████

---

[11]    Activities which are found not to affect the public interest, in contrast, are often recreational activities. *See City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 759 (Cal. 2007) (citing cases).

Mathews Decl. Ex. 1 (Anastasi
Depo.), at 284:10-285:20.  He further explained

*Id.* at 286:16-
287:5 (emphasis added).  He also testified

*Id.* at 292:3-8.

In Anastasi's June 19, 2015 declaration submitted with the Motion, however, he uses an entirely different date for the Limiting Order, now opining that the most recent order prior to December 23, 2014 is the Limiting Order.  The deadlines for expert reports and to complete expert discovery expired long before June 19.  Plaintiff has been prejudiced because Safeway and Anastasi have now changed their theory after the close of expert discovery.

While the issue may be moot, since both of Anastasi's opinions are unsupported by the plain meaning of the LOL Clause (and since the LOL Clause is unconscionable and/or void altogether), Safeway's submission of a new expert opinion after the close of expert discovery should not be countenanced.  *See Mariscal v. Graco, Inc.*, 52 F.Supp.3d 973, 980-84 (N.D. Cal. 2014) (citing Fed. R. Civ. P. 26(a), 37(c)(1)).

## VI.    CONCLUSION

For the foregoing reasons, Safeway's Motion should be denied and Anastasi's June 19, 2015 declaration and Appendix B should be stricken from evidence.

Dated:  July 8, 2015                                CHIMICLES & TIKELLIS, LLP

By:      */s/ Timothy N. Mathews*
Steven A. Schwartz (*pro hac vice*)
Timothy N. Mathews (*pro hac vice*)
361 West Lancaster Avenue

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
SteveSchwartz@chimicles.com
TimothyMathews@chimicles.com

James C. Shah (SBN 260435)
Rose F. Luzon (SBN 221544)
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367
jshah@sfmslaw.com
rluzon@sfmslaw.com

Attorneys for Plaintiff and the Class