1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    MICHAEL RODMAN,                          Case No.  11-cv-03003-JST

            Plaintiff,                        **ORDER 1) DENYING DEFENDANT'S**
8                                             **MOTION FOR PARTIAL SUMMARY**
                                              **JUDGMENT 2) DENYING**
9         v.                                  **PLAINTIFF'S MOTION FOR PARTIAL**
                                              **SUMMARY JUDGMENT AS TO CLASS**
10   SAFEWAY INC.,                            **MEMBERS WHO REGISTERED PRIOR**
                                              **TO 2006 3) GRANTING PLAINTIFF'S**
            Defendant.                        **MOTION FOR SUMMARY JUDGMENT**
11                                            **AS TO DAMAGES**

12                                            Re: ECF Nos. 267, 269, 273

13

14         In this certified class action for breach of contract, the Court previously granted Plaintiff's

15   motion for partial summary judgment that Defendant Safeway, Inc. breached its contract with

16   class members who registered to shop online after 2006 "by charging higher prices for groceries

17   on its online Safeway.com delivery service than it charged in the stores where the groceries were

18   selected."  ECF No. 237 at 1.  The Court found that the terms and conditions of Safeway's online

19   contract with customers had promised, with certain exceptions, that the prices charged for on

20   Safeway.com would be the same as the prices charged in the physical store from which the

21   groceries were selected and delivered.  Id. at 13.

22         The parties have now each filed motions for summary judgment regarding the measure of

23   damages that Safeway owes to class members for this breach.  Safeway thinks the Court should

24   cabin its liability pursuant to a limitation of liability provision in the contract, but thinks that all

25   other damages issues should be left to the jury.  ECF No. 267-5.  Plaintiff argues that no factual

26   issues remain as to the measure of damages and that the Court should grant the class breach of

27   contract damages equal to the aggregate difference between the amounts charged to class members

28   on the online store as compared to the amount charged for the same products at the brick and

mortar location from which they were procured ("the markup").  ECF No. 274-5.  Plaintiff has also filed an additional motion for partial summary judgment that seeks to establish liability for class members who registered prior to 2006.  ECF No. 269-5.

## I.   Background

### A.   Factual and Procedural Background[1]

Since 2006, Safeway has operated an online grocery delivery service on its website, Safeway.com.  In order to shop on the website, a customer was required first to register and agree to Safeway's Special Terms for use of the website.  This Court previously concluded that the Special Terms "promise[d customers] that, with the exception of the actually disclosed special charges and delivery fees, the prices charged for Safeway.com products will be those charged in the physical store where the groceries are delivered."  ECF No. 237.

The Special Terms also included a provision titled "Limitation of Liability," which reads:

ANY LIABILITY OF SAFEWAY (INCLUDING ITS EMPLOYEES, AFFILIATES, OR AGENTS) TO YOU FOR DAMAGES, INJURIES, LOSSES AND CAUSES OF ACTION, OF ANY KIND OR NATURE, WHETHER IN CONTRACT, TORT, OR OTHERWISE, EITHER JOINTLY OR SEVERALLY, SHALL BE STRICTLY LIMITED TO THE AGGREGATE DOLLAR AMOUNT PAID BY YOU TO SAFEWAY IN YOUR MOST RECENT USE OF THE ONLINE SHOPPING SERVICE IMMEDIATELY PRIOR TO THE CLAIMED INJURY, LOSS, OR DAMAGE.

ECF Nos. 177-1, 177-2, 177-3.

Despite the Special Terms' promise that online prices were the same as those charged in store, beginning in April 2010, the online store in fact mechanically applied a markup to the prices charged in the physical store from which the customer's order was picked and delivered ("the pick store").  "If the price of an item is between $0.00 and $0.99, the markup adds $0.10, from a $1.00 to $1.99, the markup adds $0.20 cents, from $2.00 to $2.99 the markup adds $0.30 cents, and so on."  ECF No. 237 at 4.  The prices displayed for items on the Safeway.com website displayed the marked-up price, however did not inform customers of the price the item would cost if the

---

[1] Throughout this section, the Court includes, without citation, undisputed facts drawn from this Court's previous order on Plaintiff's motion for partial summary judgment.  Rodman v. Safeway Inc., No. 11-CV-03003-JST, 2015 WL 604985 (N.D. Cal. Feb. 12, 2015);  ECF No. 237.

United States District Court
Northern District of California

customer were to purchase it in the pick store.

Plaintiff Rodman, who used the Safeway.com delivery service and later discovered the prices were higher than those charged in his pick store, brought suit in June 2011.  ECF No. 1.

On November 15, 2011, Safeway revised the Special Terms to include the following language: "Please note before shopping online at [Safeway.com] that online and physical store prices, promotions, and offers may differ."  Safeway did not contact Safeway.com registrants to notify them that it had amended the Special Terms.  The Court previously concluded that class members could recover damages for purchases made after this amendment to the Special Terms, because Safeway did not give class members notice of the change and the Court could not infer class members' assent to the revised Special Terms from their continued use of Safeway.com following November 15, 2011.  Id.

On August 29, 2012, Safeway sent an email to customers who had opened an email from Safeway.com in the last six months, informing them that "Grocery delivery prices, promotions, discounts, and offers may differ from your local store."  This email also did not reference the Special Terms.  The Court previously concluded that class members could recover damages for purchases made following this email because assent to the revised Special Terms also could not be inferred from their continued use of Safeway.com following the email, which was only sent to some class members, may not have been read by those who received it, and did not reference the Special Terms.

On March 10, 2014, the Court granted Plaintiff's motion for class certification as to his breach of contract claim, but denied certification as to Plaintiff's statutory claims, finding that common issues did not predominate.  ECF No. 163.  Although Safeway had argued that individualized issues regarding Defendant's affirmative defenses would predominate over common issues, the Court disagreed, reasoning that "[i]f the Court needs to determine whether shoppers who continued to use the service after learning of the undisclosed charge legally waived their rights to enforce the contract, it can make such a legal determination commonly and then subdivide the class as appropriate."  Id. at 17.  Aside from certain exclusions not relevant here, the class was defined as:

United States District Court
Northern District of California

3

> All persons in the United States who registered to purchase groceries through Safeway.com at any time prior to November 15, 2011, and made one or more purchases subject to the price markup implemented on or about April 12, 2010 (the "Class").

Id. at 32.

On December 10, 2014, this Court granted Plaintiff partial summary judgment that Safeway's markup of goods sold in the online store from the prices in the pick store breached its Special Terms.  ECF No. 233.  Following a motion for reconsideration filed by Safeway, the Court amended its order to make clear that Plaintiff's summary judgment motion had only demonstrated a breach of the Special Terms beginning in 2006.  ECF No. 236.

On December 21, 2014, Safeway began including an information window in its ordering process that stated:

> Our Special Terms relating to online grocery ordering and delivery have changed over time. Provisions related to mobile applications, relative pricing between physical stores and online, arbitration and our Drive Up & Go service have been added or changed, along with other changes. Please review the current Special Terms before completing your order as these terms will apply to your current purchases. The current Special Terms have been in effect since April 9, 2014.

Safeway subsequently filed a motion for decertification arguing that, because the Court had already resolved the common issue of liability, individualized damages issues now predominated.  ECF No. 238-3.  The Court disagreed, noting that the legal effect of Safeway's affirmative defenses had not yet been established but that, in any event, the affirmative defenses could be adjudicated on a classwide basis and the Court could, if necessary, subdivide the determination of damages as appropriate.  ECF No. 264 at 5-6.

## B.  Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) & (6), the Class Action Fairness Act of 2005 ("CAFA"), since there are 100 or more proposed class members, the amount in controversy exceeds $5,000,000, and at least one plaintiff and defendant are citizens of different states.

## C.  Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

4

1  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

2  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

3  of law." Fed R. Civ. Pro. 56(c).  In order to prevail, a party moving for summary judgment must

4  show the absence of a genuine issue of material fact with respect to an essential element of the

5  non-moving party's claim. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the movant

6  has made this showing, the burden then shifts to the party opposing summary judgment to

7  designate "specific facts showing there is a genuine issue for trial." <u>Id.</u>  The court draws all

8  reasonable factual inferences in favor of the non-movant.  <u>Anderson v. Liberty Lobby Inc.</u>, 477

9  U.S. 242, 255 (1986).  "[A]t the summary judgment stage," courts are "not permitted to weigh

10 evidence." <u>Zobmondo Entm't, LLC v. Falls Media, LLC</u>, 602 F.3d 1108, 1121 (9th Cir. 2010).

11 **II.     Defendant's Motion for Summary Judgment as to Limitation of Liability**

12         Safeway asks the Court to limit its liability to each class member to the total amount of that

13 class member's most recent order prior to December 23, 2014, "the date on which a customer

14 could no longer place an online order without expressly consenting to the current Special Terms."

15 ECF No. 267-5 at 1.  Safeway points to a provision in the Special Terms, printed in all capital

16 letters, that purported to strictly limit "any liability of Safeway . . . for damages, injuries, losses

17 and causes of action, of any kind or nature, whether in contract, tort, or otherwise . . . to the

18 aggregate dollar amount paid by you to Safeway in your most recent use of the online shopping

19 service immediately prior to the claimed injury, loss, or damage."  Safeway argues that the Court

20 should adopt December 23, 2014 as the operative date for determining the most recent use of the

21 online shopping service prior to a class member's "claimed injury," as it is the "undisputed last

22 date on which a class member could suffer an injury or loss arising from Safeway's alleged breach

23 of contract in this case." <u>Id.</u> at 5.

24         Plaintiff responds that the proper reading of Safeway's limitation of liability provision

25 would not have any effect on damages in this case, as the markup of each purchase made by a

26 class member in violation of the Special Terms constituted a separate "claimed injury" and the

27 amount of the markup is less than the aggregate dollar amount paid by a class member for each

28 purchase.  ECF No. 286-5 at 5.

United States District Court
Northern District of California

United States District Court
Northern District of California

The Court agrees with Plaintiff's interpretation of the limitation of liability provision. "With respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy." Food Safety Net Servs. v. Eco Safe Sys. USA, Inc., 209 Cal. App. 4th 1118, 1126, 147 Cal. Rptr. 3d 634, 642 (2012).[2]  However, "contractual clauses seeking to limit liability will be strictly construed and any ambiguities resolved against the party seeking to limit its liability." Peregrine Pharm., Inc. v. Clinical Supplies Mgmt., Inc., No. SACV 12-1608 JGB ANX, 2014 WL 3791567, at *5 (C.D. Cal. July 31, 2014) (quoting Nunes Turfgrass, Inc. v. Vaughan–Jacklin Seed Co., 200 Cal.App.3d 1518, 1538, 246 Cal.Rptr. 823 (1988)).

Safeway advances an interpretation of the limitation of liability clause under which "a class member cannot recover damages in excess of the amount of his or her most recent order" prior to December 23, 2014.  ECF No. 267-5 at 4.  Safeway argues that the use of the term "any liability" demonstrates that Safeway "intended to create a broad limitation on liability, applicable to multiple 'injuries' or 'losses.'"  Id.  Safeway reasons that the Special Terms contemplated an ongoing business relationship between users and Safeway that would span multiple orders and provided that "a class member cannot recover damages in excess of the amount of his or her most recent order."  ECF No. 267-5 at 4.

Safeway's interpretation of the contract as limiting damages recoverable for all injuries resulting from an individual's use of the online store to that individual's most recent purchase is not supported by the plain language of the contract's limitation provision.  The provision limits damages for "any liability . . . to the aggregate dollar amount paid by you to Safeway in your most recent use of the online shopping service *immediately prior to the claimed injury, loss, or damage*."  (emphasis added).  Rather than limiting Safeway's total liability to a particular individual to that individual's most recent order, as Safeway would urge, the provision limits Safeway's total liability for a particular "claimed injury, loss, or damage" to the injured

---

[2] Plaintiff additionally argues that, if the Court were to accept Safeway's interpretation of the limitation of liability provision, the provision would be unconscionable or void as against public policy.  Because the Court does not accept Safeway's interpretation of the limitation provision, it need not reach these arguments.

1   individual's use of the online store immediately prior to that injury.  If an individual has suffered

2   multiple injuries, giving rise to multiple claims for damages, nothing in the limitation of liability

3   clause indicates that the total damages recoverable by that individual are limited in relation to the

4   last order made by that individual on the online store.

5         Safeway argues that the phrase "strictly limited to the aggregate dollar amount paid by

6   you" in the limitation of liability provision demonstrates Safeway's "intent to limit damages and

7   to resolve any doubts about limiting damages in favor of limitation."  ECF No. 267-5 at 4.

8   Safeway underlines in particular the word "strictly," arguing that Plaintiff's interpretation of the

9   provision would result in limitation not being "strictly" limited, running afoul of the tenet of

10   contract construction that "contracts are construed to avoid rendering terms surplusage."  ECF No.

11   267-5 at 4 (citing Rebolledo v. Tilly's, Inc., 228 Cal. App.4th 900, 923 (2014)).

12         Plaintiff's interpretation would not render the word "strictly" surplusage, as it would still

13   strictly limit Plaintiff's damages in exactly the manner that Safeway contracted for: to an

14   individual's most recent purchase "immediately prior to the claimed injury, loss, or damage."

15   Contrary to Safeway's argument, Plaintiff's interpretation of the contract still shields Safeway

16   from liability for contractual damages in excess of the amount paid to Safeway under the contract,

17   for instance in cases where a plaintiff seeks consequential damages.  See, e.g., Lewis Jorge Const.

18   Mgmt., Inc. v. Pomona Unified Sch. Dist., 34 Cal. 4th 960, 969 (2004) (noting that under

19   California law, consequential damages are recoverable in certain circumstances).

20         Safeway's proposed interpretation of the contract, however, would render the words

21   "immediately prior to the claimed injury, loss or damage" surplusage.  Without that final phrase,

22   Safeway would in fact have limited its liability on a per-individual basis to an individual's most

23   recent order.  Such a provision would have limited "any liability of Safeway . . . for damages,

24   injuries, losses and causes of action, of any kind or nature, whether in contract, tort, or otherwise .

25   . . to the aggregate dollar amount paid by you to Safeway in your most recent use of the online

26   shopping service."[3]  Although Safeway could have drafted its limitation provision to achieve the

27

28

United States District Court<br>Northern District of California

_____

[3] The Court expresses no opinion as to whether such a clause would be enforceable.

United States District Court
Northern District of California

result it now seeks, it did not.

A straightforward application of the limitation provision to the online shopping experience demonstrates that it unambiguously does not operate as Safeway argues.  Imagine if a customer used Safeway.com to purchase, for the price of $479.90, ten bottles of Clos de L'Oratoire des Papes Chateauneuf-du-Pape red wine[4] that were never delivered.  The "most recent use of the online shopping service immediately prior to the claimed, injury, loss, or damage" for that customer, if she were to bring suit for breach of contract relating to that purchase, would be the use of the online store during which she purchased the bottle of wine that she never received.  This would not change even if, prior to bringing suit, she had one week later placed an order in the amount of $1.50 for a single 25 ounce can of Pabst Blue Ribbon beer[5] that was never delivered.  The customer would have a separate breach of contract claim for each purchase that was never delivered, and the "most recent use of the online shopping service immediately prior to the claimed injury loss, or damage" for each claim would be defined in relation to the use of the online shopping service in which each breached contract was formed.

Here, class members who used Safeway.com multiple times during the class period have multiple claims for breach of contract.[6]  Because the limitation of liability provision contemplates limiting Safeway's liability on a per-claim, rather than per-individual basis, those individuals can

_____

[4] Price estimate on Safeway.com as of July 17, 2015.

[5] Price estimate on Safeway.com as of August 30, 2015.

[6] Safeway argues for the first time in its reply brief that Plaintiff's proposed construction of the limitation of liability provision is "contrary to the Court's partial summary judgment ruling."  ECF No. 303-5 at 7-8.  Safeway contends that the Plaintiff argued at summary judgment that the Special Terms are a single form contract governing all purchases by class members.  Safeway asserts that Plaintiff cannot now argue that each order constitutes a separate contract.  Generally, the Court does not consider new arguments made for the first time in a reply brief.  See Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F.Supp.2d 1078, 1089 (E.D. Cal. 2006).  Even if the Court were to consider it, however, Safeway's argument on this ground would be unsuccessful.  The Court has never held that a new contract was not formed with each order.  The Court's summary judgment order held that class members who registered under the initial Special Terms and made subsequent purchases after the terms were changed without notice to them were not bound by terms about which Safeway never notified them because, without notice to class members, those terms never became a part of the contract.  Even if each purchase were not to be considered a separate contract, the limitation of liability provision limits damages per *claimed injury* (not per-contract).  Class members suffered an injury every time they were charged a markup in violation of the Special Terms to which they agreed.

1  recover up to the total amount of each purchase for which Safeway breached its contract to charge

2  the same prices online as in the physical store.  Because the amount of the markup for each breach

3  is only a fraction of the amount paid by the user during that transaction, the limitation of liability

4  provision has no effect on the class members' recovery.

5      Safeway's motion for summary judgment as to limitation of liability is hereby denied.

6  **III.**    **Plaintiff's Motions for Summary Judgment**

7      **A.**    **Plaintiff's Motion for Damages**

8          **1.**    **Recovering Damages in the Amount of the Markup**

9      Plaintiff first asks this Court to grant summary judgment that class members are entitled to

10  recover damages in the amount of the full markup charged to them for items in the online store as

11  compared to the prices customers were charged for those same items in the physical store from

12  which the items were selected.  "For the breach of an obligation arising from contract, the measure

13  of damages, except where otherwise expressly provided by this code, is the amount which will

14  compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the

15  ordinary course of things, would be likely to result therefrom."  Cal. Civ. Code § 3300.  This

16  Court's summary judgment order concluded that "the Special Terms promise[d] that, with the

17  exception of the actually disclosed special charges and delivery fees, the prices charged for

18  Safeway.com products will be those charged in the physical store where the groceries are

19  delivered."  ECF No. 237 at 13.  In the absence of Safeway's breach, Plaintiff argues that class

20  members would have received the products they purchased for the same prices those products

21  were sold for in the pick store.

22      Safeway argues that the aggregate amount of the markup charged to class members does

23  not represent the appropriate measure of damages.  Safeway reasons that the contract made with

24  online shopping customers included two different kinds of promises about the price of items.

25  According to Safeway, it did not breach what it refers to as the "absolute price promise" to

26  customers shopping online, by which it means the promise that the price that customers would

27  ultimately be charged online for an item was the same as "the amount quoted next to an item

28  online and included on the order form and receipt."  ECF No. 288-5 at 13.  Safeway acknowledges

United States District Court
Northern District of California

9

United States District Court
Northern District of California

that the Court has concluded that Safeway breached the Special Terms' promise that the price charged for an item purchased in the online store would be the same as the price charged in the pick store from which it was selected.  Safeway characterizes this as the "price parity promise." But Safeway argues that its breach of the "price parity promise" does not entitle class members to recover the absolute amount of the markup, as "customers offered to pay prices that included the markup" at the time of checkout.  Id. at 14.

While Safeway acknowledges that customers may have placed some value on the "price parity promise," stemming from the ability to compare the "cost or value of traveling" to a physical store with the "cost or value" of delivery and the confidence that the pick store customers were not paying less, Safeway contends these "benefits are difficult to quantify" and "not a matter of simple subtraction."  Id. at 15.  Therefore, Safeway argues that Plaintiff's damages model, which would award class members the total difference between the online and physical store prices, is flawed.  Rather than awarding class members the aggregate markup, Safeway puts forward a damages model that "uses a variety of data, event studies and statistical analysis to show the benefit the Class placed on the price-parity promise and the damage suffered by breach, and calculates total damages as between $ 3.8 million and $ 15.4 million."  ECF No. 288-5 (citing Anastasi Rebuttal Report, ECF No. 275-6 at ¶¶ 12-50).[7]  Safeway argues that the existence of competing damages models is an issue of fact that must be decided by the factfinder at trial.  Id.

---

[7] Plaintiff has moved to strike certain paragraphs from the reports of Safeway's expert Joseph Anastasi.  ECF No. 280.  Specifically, Plaintiff asks the Court to exclude Anastasi's opinions (1) "that a significant part of the Class placed no 'material value' on the promised price parity, so those members should be omitted from the damages calculation," (2) "that Class members who were aware of the markup and continued to shop at Safeway online should be omitted from the damages calculation," (3) "that Plaintiff's damages theory did not account for the special promotional discounts offered online but not in stores," (4) "that the proper calculation of damages should be based upon a contrived 'but for' alternate world where Safeway knew beforehand that it would be held liable for breaching its contractual promise of price parity to the Class and thus behaved differently," (5) "that Plaintiff's damages theory is inapplicable because of the ostensible logistical and operational problems Safeway would have faced had it kept its contractual promise to the Class."  ECF No. 279-5 at 2-3.  Whether Safeway's proposed damages model is supported by contract law is a legal question for the Court and therefore an "inappropriate subject[] for expert testimony."  Aguilar v. Int'l Longshoremen's Union Local # 10, 966 F.2d 443, 447 (9th Cir. 1992).  Although the Court will not exclude Anastasi's reports, the Court finds Anastasi's damages model, which would not award class members the aggregate amount of the markup, to be legally irrelevant for the reasons discussed throughout this section.

United States District Court
Northern District of California

The Court does not agree, as Safeway's proposed damages model does not square with the facts of the case.  Safeway never made an "absolute price promise" to online customers, as the Special Terms told customers that the prices they were shown at the time they placed an order were "estimated prices only."  The Special Terms informed customers that these estimated prices were "likely to vary" from the prices charged at the physical store "on the date your order is filled and delivered."  Although Safeway now argues that the website displayed the marked up price ultimately charged to customers, the Special Terms expressly disavowed the notion that customers would pay "the amount quoted next to an item online" for that item.  Rather, the Special Terms stated that online shopping customers would ultimately be charged "the prices quoted for Products you have selected for purchase at the time your order is processed at checkout."  Therefore, the *only* promise made to online shoppers about the price of the items was the "price parity promise" that customers would be charged the prices quoted for goods in Safeway's pick stores at the time of checkout.[8]  Safeway breached this term by mechanically applying a markup to the prices of all items purchased on the online store at the time they were processed at checkout.

In the absence of this breach, customers would have been charged the prices quoted at checkout in the pick stores, without any markup.  Safeway argues that it may have structured its pricing of the online store differently if it had known it would ultimately be held to its promise to charge to same prices online as in physical stores.  According to this argument, Plaintiff's damages model "ignores benefits conferred to the class" by virtue of online shopping and would therefore result in a windfall to class members.  ECF No. 288-5 at 19.  As noted in this Court's order denying Safeway's decertification motion, the cases cited by Safeway in support of this argument are food labeling class actions, which involve concerns not present in this case.  See ECF No. 264 at 6, n. 4.  In those cases, class members purchased food products that were mislabeled and purported to have certain qualities that they did not in fact have.  Those cases do not address breach of contract actions, but class allegations of either unlawful, unfair, and

---

[8] Safeway also argues that the "absolute prices" charged to customers were the same prices quoted on customers' "delivery receipts."  ECF No. 288-5 at 15.  But customers did not receive the delivery receipts until the time that their groceries were delivered, so the prices appearing on the receipts were not a price promise made to customers at the time of sale.

United States District Court
Northern District of California

1    fraudulent business acts and practices in violation of California Business and Professions Code

2    section 17200 ("UCL"), violations of the Consumers Legal Remedies Act ("CLRA"), or

3    misleading, deceptive, and untrue advertising in violation of California Business and Professions

4    Code section 17500 ("FAL").  The correct measure of damages under statutes requiring actual

5    reliance is the fraction of the price customers paid that represents the value customers placed on

6    the products conforming to the representations made on their labels.  In such a case, "[r]eturn of

7    the full retail or wholesale prices is not a proper measure of restitution, as it fails to take into

8    account the value class members received by purchasing the products."  Jones v. ConAgra Foods,

9    Inc., No. C 12-01633 CRB, 2014 WL 2702726, at *19 (N.D. Cal. June 13, 2014).

10       The present case, a breach of contract action,[9] is readily distinguishable and represents an

11   application of the contract law principle that "the plaintiff is entitled to damages that are

12   equivalent to the benefit of the plaintiff's contractual bargain."  Lewis Jorge Const. Mgmt., Inc. v.

13   Pomona Unified Sch. Dist., 34 Cal. 4th 960, 968, 102 P.3d 257, 261 (2004).  Under Plaintiff's

14   damages model, class members would receive the difference between the price they bargained to

15   pay (the price charged in the physical store from which their goods were selected and delivered)

16   and the price they were charged (which was consistently marked up from the in store price).

17   Safeway attempts to introduce additional damages offsets into the calculation, but these alleged

18   benefits were not a part of the bargain that class members agreed to.  If Safeway thought that it

19   should add a markup to goods purchased on the online store in exchange for providing users with

20   other benefits, that belief is not expressed anywhere in the Special Terms and was not a part of the

21   bargain entered into by class members.  Such hidden benefits of shopping in the online store are

22   therefore not properly deductible from the class members' contract damages in this case.

23       Class members are entitled to recover the aggregate amount of the difference between the

24   prices charged during the class period for items purchased in the online store as compared to the

25   _____

26   [9] Reliance is not an element of a breach of contract claim.  Plaintiff in this case initially pled UCL,
     FAL, and CLRA causes of action, but these claims are no longer in this case.  The Court refused

27   to certify a class as to these theories of liability because "actual reliance" was an essential
     element for all of the claims and it appeared likely that "an overwhelming majority of Safeway.com

28   customers did not view the alleged misrepresentations" at the time of registration.  ECF No. 163 at
     18-19.

1  price customers would have been charged for those items in the physical store from which they

2  were selected and delivered.

3                **2.**      **Calculation of Damages Under Plaintiff's Model**

4         Plaintiff argues that, if its damages model is accepted, damages can be calculated

5  mechanically by use of the Safeway "query run," "a data query [] which Safeway uses to calculate

6  and track the Markup charged on products delivered."  ECF No. 274-5 at 4.  That query was

7  written by Matt Campbell, a former data analyst for Safeway.  <u>Id.</u>  For the purposes of this

8  summary judgment motion, Plaintiff has accepted the calculation of Safeway's expert Joseph

9  Anastasi for the aggregate markup charged to class members between April 12, 2010, the date on

10  which the markup was instituted, and December 21, 2014, the date that Safeway provided

11  conspicuous notice of the markup to class members.  <u>Id.</u> at 6-7.  Anastasi calculates that

12  $31,188,492 in aggregate markup was charged to class members.  Anastasi Rebuttal Report, ECF

13  No. 275-6 at App. B-1, n. 2 ("The total Markup amount for the class period, before giving

14  consideration to returns, is $31,188,492.").

15         In spite of its own expert witness's statement, Safeway's opposition disputes the claim that

16  the query run calculation accurately totals the markup charged to customers, pre-return.

17  Specifically, Safeway contends that "in some instances, Safeway's internal data reflected on the

18  query run did not include an entry for the Pick Store price, but instead included only the price

19  charged online."  ECF No. 288-5 at 23.  In those cases, the query run estimated a Pick Store price

20  for the item by working backwards from the marked-up price charged online.  Campbell, the

21  creator of the query run, testified at deposition that, when confronting an item for which the

22  charged price is known but the pick store price is unknown, the query run first looks to whether

23  the item in question was on promotion, in which case no markup would have been charged when

24  the item was purchased in the online store.  ECF No. 274-13 at 12 (Campbell Deposition at 54:17-

25  55:15).  If the item was not promotional, the query run would proceed to estimate the price.

26         Campbell gave an example of how the query run would calculate the markup where an

27  item was not promotional and records reflected the customers was charged a dollar when

28  purchasing the item online.  <u>Id.</u> at 55:5-19.  In such a case, the query would assume that the item

had been marked up ten cents from its pick store price.  Id.  This is consistent with the operation of the markup as established in this Court's prior summary judgment order.  ECF No. 237 at 4 ("In April 2010, Safeway instituted a new pricing model for regular retail, non-promotional items on Safeway.com, instituting a markup applied to the prices charged in the price zone of the physical store from which the customer's order is picked and delivered. If the price of an item is between $0.00 and $0.99, the markup adds $0.10, from a $1.00 to $1.99, the markup adds $0.20 cents, from $2.00 to $2.99 the markup adds $0.30 cents, and so on." (internal citations and quotations omitted)).  Campbell testified at deposition he was unaware of any better way to calculate the markup for an item where the pick store price was unknown but the price charged to the online shopping customer was known.  Id. at 55:25-56:3.  Regardless of the fact that Safeway itself created and used the query run for internal accounting purposes, Safeway argues that in some of these cases, the online store may not have in fact charged a markup on the item in question, pointing only to Campbell's deposition testimony discussed above.  No evidence supports this speculation, so it does not create a genuine dispute for trial.  See Allen v. Scribner, 812 F.2d 426, 441 (9th Cir.) amended, 828 F.2d 1445 (9th Cir. 1987) ("Guesswork and speculation [] cannot defeat a motion for summary judgment.").

Second, Safeway argues that that "in some instances, Safeway did not turn on the markup in every geographic region or in every Pick Store, and often the markup would remain off for several months as Pick Stores were changed or regions came online."  Id.  Plaintiff notes that Safeway did not produce any documents in discovery reflecting a failure to turn on the markup.  ECF No. 295-5 at 14.  The only evidence Safeway submits regarding this claim is Campbell's deposition testimony that, when Safeway opened new stores, Safeway had to "go through steps to turn on the price zone-- the online price zone for that store."  ECF No. 274-3 at 14 (Campbell Depo. at 63:16-19).  Campbell testified that after some stores were opened, there was a lag before the online price zone was turned on.  Campbell estimated this happened on 10 to 15 occasions as new stores were opened.  Safeway has not presented any record evidence indicating that this would affect the damages recoverable by any class members to whom this Court's liability summary judgment order applies (post-2006 registrants), as Safeway has not identified the pick

14

stores for which the markup was not turned on or the class members who made purchases from those pick stores.  This information is all in Safeway's exclusive possession.  It has not been produced during discovery and does not appear in the summary judgment record.  Therefore, Safeway has not provided sufficient evidence to raise a genuine dispute of material fact that any class members' recovery was affected by a lag in activating the online price zone.

Finally, both parties agree that some amount should be deducted from the class award to represent items purchased online that were ultimately returned.  Although Plaintiff acknowledges that some class members may have returned or received a refund for products purchased during the class period, Safeway did not maintain data that would allow the Court to identify all refunds of products purchased online.  Safeway's expert Anastasi estimated that Safeway has refunded $187,131 in markup that it had charged to class members; Plaintiff's expert Paul Manning estimated $209,230 in refunded markup.  ECF No. 274-5 at 19.  As Plaintiff has conceded he is willing to deduct his own expert's larger refund offset amount of $209,230, the Court will subtract this figure from the query run total.

The class is therefore entitled to recover $30,979,262 for Safeway's breach of the price parity promise.

### 3.    Safeway's Affirmative Defenses

Safeway argues that factual issues exist regarding the application of its affirmative defenses of waiver, consent, and mutual mistake to class members who made purchases after becoming aware of the existence of the online markup.  Plaintiff counters that Safeway lacks evidence to support any of its affirmative defenses and therefore summary judgment should be granted in the full amount of the markup.

### a.    Evidence Regarding Surveys Conducted by Safeway

Safeway's evidence for all of its affirmative defenses relates to surveys it conducted of online shopping customers between 2009 and 2014.  ECF No. 288-5 at 6.  In August 2009, before Safeway implemented its online markup, Safeway surveyed 3,442 customers, in response to internal speculation that a markup could negatively impact in-store shopping behavior.  ECF No. 288-20.  83% of the customers surveyed responded that they expected prices online and in stores

United States District Court
Northern District of California

to be the same, 6% expected store prices to be more expensive than online prices, and 10% expected online prices (not including the delivery fee) to be more expensive than in-store prices. Id. at 15.

In 2010, after Safeway instituted the online markup, it emailed a survey to randomly selected customers who had placed and received orders online.  ECF No. 288-22.  A series of questions asked customers to rate various features of the online shopping experience on a scale from "very dissatisfied" to "very satisfied."  Id.  One question read "Getting the same prices and promotions as in the local store."[10]  Id. at 4, 8, 12.  Some portion of the respondents for most weeks the survey was given responded either "dissatisfied" or "very dissatisfied."  Id.  Safeway has calculated this number to be 14.2% of the 3,446 total respondents.  ECF No. 288-5 at 7.

Safeway interviewed 1,139 customers from across the United States in late 2010.  939 of those interviewed were "Safeway.com non-users," but 200 respondents were "Safeway.com triers."  ECF No. 288-24 at 5.  75% of triers—that is, 150 users of the online website—responded that they agreed completely or somewhat with the proposition that "I'm able to get same prices/promotions get [sic] in store."  Id. at 25.

Finally, Safeway implemented a survey in 2010 and 2011 that was displayed via a link at the checkout screen of the website.  ECF Nos. 288-26, 288-28.  The message read "Click on link to take a survey."  Id.  1% of those who viewed the link at checkout clicked on the survey and 90% of that group went on to complete the survey.  Id.  Question 6 of the survey asked customers "Did you feel the prices and promotions offered on the site are the same as your local store?"  Id. at 5.  Safeway calculates that 35% of respondents in 2010 answered "No" and 37.97% of respondents in 2011 answered "No."  ECF No. 288-5 at 7.

**b.      Dr. Lewin's Report and Plaintiff's Motion to Strike**

In addition to these surveys, Safeway has submitted the expert report of Dr. David Lewin, whose "first opinion" opines on the conclusions that can be drawn from Safeway's survey

---

[10] The version of this exhibit provided by Safeway to the Court appears to be cut off mid-question and read "Getting the same prices and promotions as in the."  ECF No. 288-22 at 4.  Safeway's opposition represents the final two words of the question to have been "local store."  ECF No. 288-5 at 7.

evidence.  ECF No. 277-7 at ¶ 19.  Dr. Lewin also offers a "second opinion" that "further evidence can be presented at trial regarding the exact percentage of the Class who are subject to the affirmative defenses."  Id.  Specifically, Dr. Lewin states that "a survey could be designed, pre-tested, finalized and administered to a random sample of Safeway's online customers, and that the data obtained therefrom could be rigorously analyzed to determine customer knowledge of and satisfaction with online versus physical store prices."  ECF No. 277-7 at ¶ 18.

Plaintiff has moved to strike Dr. Lewin's "first opinion" regarding the surveys already conducted by Safeway.  ECF No. 277-5.  Dr. Lewin states that:

> [T]he findings from Safeway's customer surveys indicate that substantial proportions of those customers were aware of product pricing differences as between the online store and physical stores. Further, among customers who knew that product prices were higher when shopping online than when shopping at physical stores, substantial proportions of such customers nevertheless continued to purchase products online. This indicates that the actual behavior of such customers –their purchase behavior – was not negatively affected by their knowledge that online store prices were higher than walk-in or physical store prices. In other words, this behavior indicates practical cognitive acceptance of the existence of a pricing differential.

ECF No. 277-7 at ¶ 10.  Plaintiff argues that Dr. Lewin's opinion should be stricken because he did not undertake steps to determine whether the surveys on which his opinion relied were "valid and reliable."  ECF No. 277-5 at 4.  Plaintiff notes that Dr. Lewin's report does not account for the low response rate to Safeway's surveys or the surveys' use of compound and ambiguous questions that were not designed to be responsive to the theories of Safeway's affirmative defenses.

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Plaintiff does not challenge Dr. Lewin's qualifications, training, or experience, but challenges his use of the survey data provided by Safeway in this case.  "[T]he Ninth Circuit has held, on multiple occasions, that

United States District Court
Northern District of California

United States District Court
Northern District of California

1   challenges to survey methodology, including the format of the questions or the manner in which it

2   was taken, bear on the weight of the evidence, not its admissibility."  Wells Fargo & Co. v. ABD

3   Ins. & Fin. Servs., Inc., No. C 12-3856 PJH, 2014 WL 4312021, at *3 (N.D. Cal. Aug. 28, 2014)

4   (citing Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt, Inc., 618 F.3d 1025, 1036

5   (9th Cir.2010)).  This is because "[s]haky but admissible evidence is to be attacked by cross

6   examination, contrary evidence, and attention to the burden of proof, not exclusion."  Primiano v.

7   Cook, 598 F.3d 558, 564 (9th Cir. 2010).

8       The Court agrees that Dr. Lewin's report, while premised on the shaky foundation of

9   customer surveys that were not conducted for the purpose for which they are now being used, is

10   admissible.  Even in cases involving surveys with similarly low response rates, courts have held

11   that criticisms go to the weight rather than admissibility of the survey.  See Univ. of Kansas v.

12   Sinks, No. 06-2341-JAR, 2008 WL 755065, at *4-*5 (D. Kan. Mar. 19, 2008) ("significant flaws

13   in the methodology of [online] survey," including 2.16% response rate, "go to the weight and not

14   the admissibility"); United States v. H & R Block, Inc., 831 F. Supp. 2d 27, 34 (D.D.C. 2011)

15   (expert testimony on survey admissible although "survey's response rate appear[ed], by any

16   standard, to be quite low").  Dr. Lewin has himself acknowledged some of the issues with the

17   survey results in this case and openly discussed under deposition the manner in which he relied

18   upon the surveys.  See, e.g., 277-7 at ¶ 18 ("none of Safeway's aforementioned surveys was

19   designed solely or even primarily to obtain information about customers' satisfaction with or

20   knowledge of product price differences between the online store and physical stores").  The Court

21   will therefore admit the surveys and Dr. Lewin's discussion of them and discuss Plaintiff's

22   criticisms of Safeway's surveys and Dr. Lewin's analysis of those surveys infra in analyzing

23   whether Safeway has presented sufficient evidence to bring its affirmative defenses to trial.

24       Plaintiff has also moved to strike Dr. Lewin's "second opinion" suggesting that an

25   additional survey could be conducted to determine customer knowledge of online store pricing, as

26   Dr. Lewin has not yet conducted such a survey and expert discovery in this case closed on June 5,

27   2015.  ECF No. 277-5.  Parties wishing to rely on expert opinions must disclose those opinions

28   and the facts or data considered in forming them "at the times and in the sequence that the court

1    orders." Fed. R. Civ. P. 26(a)(2)(D).  Failure to comply with a court's discovery orders may lead

2    to discovery sanctions pursuant to Federal Rule of Civil Procedure 37(b), which include

3    prohibiting that party from using information not disclosed pursuant to the Court's schedule "to

4    supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified

5    or is harmless."  Fed. R. Civ. P. 37(c)(1).  In addition to, or instead of that sanction, the court may

6    also impose any of the other appropriate sanctions provided for in Rule 37. Fed. R. Civ. P.

7    37(c)(1)(C).

8         Preclusion of late-filed evidence is not appropriate if the party's failure to provide

9    information was "substantially justified" or "is harmless."  Fed. R. Civ. P. 37(c)(1).  However,

10   "[d]isruption to the schedule of the court and other parties . . . is not harmless."  <u>Wong v. Regents</u>

11   <u>of Univ. of California</u>, 410 F.3d 1052, 1062 (9th Cir.2005).

12        Plaintiff notes that this case has been pending for four years and Safeway has not presented

13   any justification for its delay in conducting such a survey prior to the current motion for summary

14   judgment as to damages.  ECF No. 277-5.  Safeway responds that Plaintiff's attack on Lewin's

15   proposed survey is "premature," because the proposed survey has not yet "been designed or

16   offered."  ECF No. 288-7.  But that is Plaintiff's precise point—that over a month following the

17   close of expert discovery is not an appropriate time for Safeway to propose to undertake additional

18   discovery in order to stave off a motion for summary judgment.[11]

19        The Court will strike Dr. Lewin's second opinion regarding the possibility of designing an

20   additional survey, as expert discovery has closed and Safeway has not shown that the late

21   admission of such a survey would be substantially justified or harmless.

22                    c.    **Sufficiency of the Evidence as to Affirmative Defenses**

23        Safeway contends that the Court should deny summary judgment as to damages because

24

---

25   [11] Safeway also faults Plaintiff for opposing Safeway's request for a case management conference
     to discuss trial planning matters with respect to the presentation of damages issues.  ECF No. 288-

26   7 (citing ECF No. 259).  In that motion, filed just a month before the close of expert discovery,
     "Safeway suggested the possibility of a survey to be conducted by an expert whom the parties

27   would jointly retain."  <u>Id.</u>  Safeway bears the burden of proving its affirmative defenses at trial and
     Plaintiff was not required to assist Safeway in retaining an expert to meet this burden.  Plaintiff's

28   opposition to such a conference and the Court's denial of Safeway's request for one did not
     preclude Safeway from undertaking a survey on its own.

factual disputes remain regarding Safeway's affirmative defenses of mutual mistake, waiver, and consent. Safeway argues that summary judgment is inappropriate because it has "presented evidence that a significant percentage of the class knew of the price differential and placed orders thereafter." ECF No. 288-5 at 6. Plaintiff contends that he is entitled to summary judgment against Safeway's affirmative defenses, as Safeway lacks sufficient evidence to proceed to trial on any of them.

Safeway would bear the burden of proof as to its affirmative defenses at trial. As the party moving for summary judgment, Plaintiff "bears the initial burden of establishing the absence of a genuine issue of material fact" and can meet its burden by "'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000). "Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial." Id. "[A] party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982). "In deciding a motion for summary judgment on a claim to which a clear and convincing standard of proof applies, the question is whether the evidence in the record could support a reasonable jury finding that the plaintiff has established the claim by clear and convincing evidence." Prudential Ins. Co. v. Black, 211 F.3d 1274 (9th Cir. 2000).

### i)      Mutual Mistake

Safeway has not presented any evidence that would support a defense of mutual mistake at trial. "Under California law, a written instrument is presumed to express the true intent of the parties." Inamed Corp. v. Medmarc Cas. Ins. Co., 258 F. Supp. 2d 1117, 1123 (C.D. Cal. 2002). California Civil Code Section 3399, however, allows that "[w]hen, through fraud or a mutual mistake of the parties . . .  a written contract does not truly express the intention of the parties, it may be revised . . . so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." Cal. Civ.Code § 3399.

Safeway's opposition to Plaintiff's motion for summary judgment does not include any

20

argument regarding the defense of mutual mistake.  Safeway states that, under all of its defenses, "if Class members continued to make purchases even after learning that Safeway charged different prices online than in stores, the jury may conclude that they are foreclosed from pursuing damages for any order placed after learning of the price differential."  ECF No. 288-5 at 3.  But to prove the affirmative defense of mutual mistake, Safeway must show class members and Defendant both *intended to contract* for the online prices to be marked up from the prices charged in the online store.  See Hess v. Ford Motor Co., 27 Cal. 4th 516, 524, 41 P.3d 46, 52 (2002) ("when, through . . . mistake . . . , a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded.").  Safeway has not pointed to any evidence regarding any of the class members' state of mind at the time of contract formation.  Therefore, Safeway has no evidence that would allow a jury to conclude that any class members intended to contract for the markup at the time of registration.  Indeed, the evidence shows that Safeway did not disclose the markup pricing algorithm to class members at the time they signed the Special Terms.  Therefore, no class member could have had the intention of contracting to pay prices that were marked up in accordance with an algorithm of which they were unaware.

Safeway has not submitted any evidence indicating that class members and Safeway shared the intention to contract for the purchase of goods in the online store at a price that was marked up from the price in the physical store from which the goods were selected and delivered.  Therefore, the Court grants Plaintiff's motion for summary judgment as to Safeway's affirmative defense of mutual mistake.

**ii)      Waiver**

Safeway has likewise failed to present evidence sufficient to establish a defense of waiver against any class member at trial.  "Waiver occurs when there is an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."  United States on behalf of Army Athletic Ass'n v. Reliance Ins. Co., (9th Cir. 1986) 799 F.2d 1382, 1387 (internal citations and quotations omitted).  "The burden . . . is on the party claiming a waiver of a right to

1    prove it by clear and convincing evidence that does not leave the matter to speculation, and

2    doubtful cases will be decided against a waiver." Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1,

3    31, 900 P.2d 619 (1995), as modified on denial of reh'g (Oct. 26, 1995).  Safeway has not

4    presented any evidence from which jurors could find by clear and convincing evidence that any

5    class member knew it had a contractual right to price parity but paid the marked up prices in the

6    online store in an intentional relinquishment of that right.

7         First, Safeway's 2009 survey was conducted before Safeway implemented the markup and

8    is legally irrelevant.

9         Safeway's 2010 survey asked customers how satisfied they were that they were "Getting

10   the same prices and promotions as in the local store."  14.2% of respondents stated they were

11   "dissatisfied" or "very dissatisfied."  A customer's response that they were dissatisfied does not

12   indicate that that customer knew of the existence of the markup or their right to price parity.  Such

13   a response could indicate that customers thought promotional prices were different online than in

14   stores—a belief that would have been incorrect.  Such a response could also have indicated that

15   customers were dissatisfied that prices online were the same as in stores because they expected

16   online shopping to be *less* expensive than shopping in the brick and mortar stores.  Even if the

17   survey answers contained sufficient evidence from which to impute knowledge to class members

18   that prices online were marked up from prices in the stores in spite of the contractual right to price

19   parity, Safeway lacks evidence that any of the respondents to the 2010 email survey ever placed

20   subsequent online orders.  The 2010 email survey was sent "to randomly-selected online

21   customers *after Safeway had delivered their online orders*."  ECF No. 288-5 at 7.  Safeway

22   therefore has no evidence that any of the customers who responded that they were "dissatisfied" to

23   this question ever in fact placed a subsequent online order.

24        Safeway's 2010 interview survey interviewed 200 "triers," that is customers who Safeway

25   identified as having previously "used the online grocery service."  Id.  75% of respondents, or 150

26   triers, expressed agreement with the proposition that "I'm able to get same prices/promotions get

27   [sic] in store". ECF No. 288-24 at 25.  50 of the triers surveyed did not respond that they agreed

28   completely or somewhat with the proposition ever placed an order after being interviewed.  The

United States District Court
Northern District of California

22

United States District Court
Northern District of California

1    record does not indicate what those 50 respondents answered in response to this question and it is

2    possible they answered they were unsure if they were able to get the same prices or even declined

3    to answer the question altogether.  Therefore, this survey does not provide any evidence that those

4    50 customers knew of the existence of the markup or their right to price parity.  Safeway has also

5    not provided any evidence that those 50 respondents ever placed an order online after being

6    interviewed.

7            In 2010 and 2011, Safeway invited customers to complete an online survey immediately

8    following the point of purchase.  One question asked "Did you feel that prices and promotions

9    offered on the site are the same as your local store?"  ECF Nos. 288-26, 288-28.[12]  As with the

10   other surveys, the questions asked of these customers do not provide any evidence as to their

11   intention to relinquish their right to price parity under the Special Terms.  A "No" response to this

12   question does not provide evidence that any class members knew 1) that online prices were more

13   expensive than the prices in the store from which the customers' items were selected and

14   delivered, 2) the extent of the markup, and 3) that any markup was in violation of the Special

15   Terms' price parity promise.

16           Finally, Dr. Lewin's conclusory statement that the customer surveys discussed above

17   demonstrate that class members had a "practical cognitive acceptance of the existence of the

18   pricing differential" is also not sufficient to defeat summary judgment on the question of waiver.

19   Even if this Court accepts Dr. Lewin's conclusory statement, premised on the flawed surveys

20   discussed above, Dr. Lewin's statement does not indicate that these customers were 1) aware of

21   their right to price parity under the Special Terms and 2) intended to waive that right by

22   continuing to use the online store.

23           Safeway's evidence therefore is insufficient to create a genuine issue as to whether any

24

25   _____

     [12] Safeway represents that "[i]n 2010, 35% answered 'No,' and in 2011, 37.97% answered 'No.'"
26   ECF No. 288-5 at 7.  These are Safeway's calculations and have not been confirmed by the Court.
     Safeway's exhibits present the 2010-2011 survey data on a monthly, rather than annual basis, and
27   Safeway surveyed a different number of customers each month.  Regardless of the number of
     customers who responded no to the question, a "No" response to the question does not provide
28   sufficient information from which the factfinder could make any inferences regarding the
     respondent's intent to waive a breach of contract claim.

1   class members knowingly waived their rights under the contract.

2                       **iii)      Voluntary Payment or Consent**

3         "The voluntary payment doctrine bars the recovery of money that was voluntarily paid

4   with full knowledge of the facts." Parino v. BidRack, Inc., 838 F. Supp. 2d 900, 908-09 (N.D.

5   Cal. 2011) (citing Am. Oil Serv. v. Hope Oil Co., 194 Cal.App.2d 581, 586 (1961)). "But it is

6   elementary that an excessive payment made in ignorance of the fact that it is excessive is

7   recoverable." Am. Oil, 194 Cal.App.2d at 586. Whether a plaintiff knew her payment to be

8   excessive at the time of payment is "to be judged in light of the facts that were known to plaintiff"

9   and not whether plaintiff has the "means of knowledge" by which they could have discovered the

10  payment to be excessive. Id.

11        For the reasons discussed in the analysis of Safeway's waiver defense, Safeway also has a

12  complete lack of evidence in the summary judgment record concerning its defense of voluntary

13  payment. There is no evidence that any class members made excessive payments despite

14  awareness 1) that online prices were more expensive than the prices in the store from which the

15  customers' items were selected and delivered, 2) the extent of the markup, and 3) that any markup

16  was in violation of the Special Terms' price parity promise. Class members did not even possess

17  means of discovering this knowledge, as Safeway's online pricing algorithm was not publicly

18  disclosed. Therefore, the survey evidence could not "support a reasonable jury finding that

19  [Safeway] has established the [defense of voluntary payment] by clear and convincing evidence."

20  Prudential Ins. Co. v. Black, 211 F.3d 1274 (9th Cir. 2000).

21                       **d.       Conclusion**

22        The Court must finally address Safeway's contention that the class action mechanism has

23  limited its ability to present affirmative defenses in this case. See ECF No. 288-5 at 10. "[T]he

24  class action procedural device may not be used to abridge a party's substantive rights." Duran v.

25  U.S. Bank Nat. Assn., 59 Cal. 4th 1, 34 (2014). A court may not abridge or prevent a defendant

26  from presenting a defense "simply because that defense [would be] cumbersome to litigate in a

27  class action." Id. at 35. For instance, a "landlord sued for excess rent by a class of former tenants

28  [is] entitled to set off amounts the tenants owed for unpaid rent, repairs, and cleaning," even if

United States District Court
Northern District of California

24

calculating those offsets on a classwide basis might be difficult.  Id. (citing Granberry v. Islay Investments, 9 Cal.4th 738, 742–743 (1995)).  A nationwide class action "challenging a bank's practice of forcing homebuyers to purchase expensive replacement policies when the hazard insurance on their properties lapsed" cannot avoid difficult choice-of-law issues just because they might make a nationwide class action more challenging.  Id. (citing Washington Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 913, 15 P.3d 1071, 1076 (2001)).

But the Court has not granted summary judgment against Safeway because its affirmative defenses are cumbersome or would make for an overly-complicated trial.  It has done so because Safeway has failed to present any competent evidence in support of its affirmative defenses, all of which require Safeway to prove by clear and convincing evidence the state of mind of individual class members at discrete moments in time.  Although Safeway vigorously opposed certification and recently sought decertification in connection with its affirmative defenses, Safeway has never shown how decertification would make it any easier to obtain proof that distinct individuals were aware that the price parity promise was being breached by the markup at the time when they placed certain orders.  It is not surprising that Safeway cannot show that any individual class members possessed knowledge of the markup during the class period, as Safeway made the decision to actively conceal the existence of any markup from class members during that time.  Throughout this litigation, Safeway has likewise sought to seal from the public any reference to the manner in which the online shopping markup is calculated.  A defendant who has vigorously guarded information from the public cannot cry foul when it is unable to marshal any evidence showing that the public had knowledge of that information.

As this Court's certification order noted, Safeway's affirmative defenses ask the Court to assume that class members behaved irrationally, "knowingly and willingly cho[osing] to pay an additional fee that they were under no obligation to pay under the terms of the contract."  ECF No. 163 at 18.  But "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  Varig Airlines, 690 F.2d at 1238.  When a defendant breaches a written form contract with a large group of individuals, that defendant cannot defeat summary judgment by speculating that perhaps some unidentifiable number of those individuals knew the

1    contract was actually governed by secret, unwritten terms all along.  There is no evidence that

2    class members knew this to be the case here and yet continued to place online orders.  Plaintiff is

3    entitled to summary judgment against Safeway's affirmative defenses.

4                  **4.      Prejudgment Interest**

5            Plaintiff and the class are entitled to prejudgment interest of 10 percent per annum from the

6    time of breach as a matter of law under Cal. Civ. Code Section 3289(b).

7        **B.      Plaintiff's Motion Regarding Safeway's Liability to Pre-2006 Class Members**

8            In addition to the "damages summary judgment motion" provided for by this Court's case

9    schedule, ECF No. 246, Plaintiff filed a second summary judgment motion regarding Safeway's

10   liability to class members who registered to shop in the online store prior to 2006.  ECF No. 269-

11   5.[13]  Safeway's opposition brief argues that Plaintiff failed to seek leave of the Court to file this

12   motion, in violation of the Civil Local Rules and this Court's Standing Order.  Safeway also

13   argues that Plaintiff is not entitled to summary judgment on the merits of this issue.

14           Civil Local Rule 7-2(b) provides that a motion should be "one filed document not

15   exceeding 25 pages in length."  This Court's Standing Order states that "[a]bsent good cause, the

16   Court will consider only one motion for summary judgment per party.  Any party wishing to

17   exceed this limit must request leave of court and must show good cause."  Plaintiff argues that the

18   Court "granted Plaintiff permission to file the instant Motion . . . when it granted Safeway's

19   Motion for Reconsideration" on the question of whether Plaintiff's prior summary judgment

20   contract had proven Safeway's liability to class members who had registered prior to 2006.  ECF

21   No. 297-5 at 4 (citing Order Granting in Part and Denying in Part Motion for Reconsideration at

22   ECF No. 236).

23           Despite Plaintiff's creative characterization, the Court's reconsideration order did not grant

24   Plaintiff leave to file this motion.  After noting that the Plaintiff's first partial summary judgment

25   _____

26   [13] Plaintiff's opening brief also asked the Court to hold that there was "no genuine question of material fact" as to which version of the Special Terms governed all Class Members' contract, an issue explicitly left open by this Court's prior summary judgment order.  ECF No. 237 at 15 ("The

27   Court finds it unnecessary to resolve the factual question of whether Plaintiff or Defendant's version of the Special Terms was operative at any particular moment in time.").  In his reply brief,

28   Plaintiff withdrew this portion of the motion.  ECF No. 297-5 at 1.

United States District Court
Northern District of California

motion had not placed before the Court pre-2006 versions of the Special Terms, the Court clarified that its summary judgment order did not reach class members who registered prior to 2006, but stated that "[t]his order *does not preclude* the Plaintiff from seeking summary judgment on these issues in the future." ECF No. 236 at 4 (emphasis added). Stating that a party is not precluded from raising an issue in the future is far different from affirmatively granting a party leave to file an additional summary judgment motion in order to address that issue. In light of the Court's reconsideration order, Plaintiff could have taken any number of actions other than filing a second motion for summary judgment that it had not been given leave to file. Plaintiff could have used a portion of its damages summary judgment briefing to move for summary judgment as to this issue, sought leave from this Court to exceed page limits if necessary, or filed a motion for leave to file a second motion for summary judgment.

Because Plaintiff did none of the above, the Court typically would be disinclined to reach the merits of this motion. Nonetheless, in light of the Court's grant of Plaintiff's motion for summary judgment on damages, Safeway's liability to class members who registered prior to 2006 is the only issue remaining in the case. To prevent further motion practice regarding this issue, which has been extensively briefed in connection with the current motion, the Court will reach the merits.

The Court concludes that Plaintiff is not entitled to summary judgment that class members who registered prior to 2006 contracted to pay the same prices in the online store that were charged in the physical store from which their groceries were selected and delivered. Plaintiff's previous motion for summary judgment regarding Safeway's liability focused on class members who registered beginning in 2006, as that was the year Safeway began operating the grocery delivery service on its website. See ECF No. 237 at 1. The Court's order on that motion concluded that the evidence demonstrated that class members who registered beginning in 2006 were required as part of their registration process to "click a box that states, 'Check this box if you agree to the Terms and Conditions.'" Id. at 2. Therefore, those customers were required as a part of registration to manifest assent to the Special Terms which included the term promising price parity between online stores and the physical stores from which the purchased goods were selected

1   and delivered.

2       Prior to 2006, Safeway's home delivery business was operated by GroceryWorks, which

3   Safeway contends was "a separate company during the entire 2001-2006 time period, with its own

4   employees and headquarters."  ECF No. 290 at 2.  Plaintiff has marshaled evidence in connection

5   with this motion that shows that Special Terms containing the same language that this Court's

6   prior order found promised price parity were posted on the online shopping website even prior to

7   2006.  But Plaintiff has not met its burden of demonstrating that class members who registered

8   prior to 2006 ever assented to those Special Terms.  This failure precludes summary judgment,

9   because "[m]utual manifestation of assent, whether by written or spoken word or by conduct, is

10  the touchstone of contract."  Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014)

11  (quoting Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 29 (2d Cir.2002) (applying California

12  law)).

13      Notably, Plaintiff has not introduced evidence establishing that customers who registered

14  prior to 2006 were required to click a box manifesting their agreement to the Terms and

15  Conditions.  Plaintiff maintains that it is entitled to summary judgment regardless, based upon

16  circumstantial evidence suggesting the registration process was the same during this period as it

17  was after 2006.  Plaintiff points to historical versions of the frequently asked questions posted on

18  Safeway's website prior to 2006 wherein Safeway stated that "[d]uring registration, you can also

19  view the full terms and conditions of our online shopping service . . ."  Id.  This same version of

20  the FAQs remained on Safeway's website following 2006, so Plaintiff asks the Court to conclude

21  that the registration process did not change in 2006 when Safeway assumed control of the online

22  shopping process.  Plaintiff also places great weight on a declaration from Safeway's corporate

23  designee witness Steve Guthrie, who swore without limitation as to any dates, that 'A customer

24  cannot register without checking the box.'"  Id. (citing ECF No. 174 at ¶ 4).  Although Plaintiff's

25  circumstantial evidence may persuade a jury that users who registered prior to 2006 manifested

26  assent to the Special Terms through a click box agreement, this evidence does not suffice to meet

27  Plaintiff's burden for purposes of summary judgment.

28      As a final back-up argument, Plaintiff contends that "evidence that the Special Terms

United States District Court
Northern District of California

1   were, at a minimum, linked to and viewable at the registration page is sufficient to meet the

2   preponderance standard to find that a contract was formed at registration." ECF No. 297-5 at 10.

3   This argument posits that the Special Terms constituted a "browse-wrap" agreement where users

4   should be deemed to have given their "assent simply by using the website." Nguyen, 763 F.3d at

5   1176. In the absence of evidence indicating that users had actual knowledge of the contract, "the

6   validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user

7   on inquiry notice of the terms of the contract." Id. at 1177. This is a highly fact-specific inquiry

8   that looks to "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices

9   given to users of the terms of use, and the website's general design." Id. On the current record,

10  the Court cannot find a valid "browse-wrap" agreement was formed by users who registered prior

11  to 2006, as Plaintiff has not submitted any evidence regarding the layout of the pre-2006

12  registration page and the placement of the link to the Special Terms contained on that page.

13       Plaintiff's motion for summary judgment regarding Safeway's liability to class members

14  who registered prior to 2006 is hereby denied.[14]

15                                  **CONCLUSION**

16       Plaintiff's motion for summary judgment awarding breach of contract damages in the

17  amount of the aggregate markup to class members is granted. Plaintiff's motion regarding

18  Safeway's liability to pre-2006 class members is denied. Defendant's motion for summary

19  judgment as to limitation of liability is denied. Plaintiff is ordered to file a form of judgment as to

20  / / /

21  / / /

22

23  [14] On August 20, 2015, Plaintiff submitted a motion for leave to supplement the summary
    judgment record with the declaration of Eric Falsken, a former employee of GroceryWorks. ECF

24  No. 325. Plaintiff's motion was filed almost three weeks after the Court took the summary
    judgment motion under submission following hearing. Under the Northern District of California's

25  Civil Local Rule 7-3(d), "[o]nce a reply is filed, no additional memoranda, papers or letters may
    be filed without prior Court approval." The only justification cited by Plaintiff for the delay in

26  submitting the information is that Plaintiff's counsel did not "intensif[y] preparations for possible
    trial . . . including internet search for potential rebuttal and/or impeachment evidence with respect

27  all currently-unresolved issues" until after the summary judgment hearing. ECF No. 325 at 2.
    The motion to supplement the summary judgment record is denied. Although the parties also

28  dispute whether Falsken should be permitted to testify at trial, the Court will not resolve that
    question in this order.

the class members whose claims are resolved by this order, stating the amount due following the calculation of prejudgment interest.

IT IS SO ORDERED.

Dated: August 31, 2015

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California