# Schwarz Exh. 29 with Safeway Proposed Redactions

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Timothy N. Mathews

| | |
|---|---|
| **From:** | Timothy N. Mathews |
| **Sent:** | Thursday, November 21, 2013 11:41 AM |
| **To:** | 'Brian Blackman' |
| **Cc:** | Steven A. Schwartz; 'Scott Shepherd'; Jim Shah (jshah@sfmslaw.com); Craig Cardon |
| **Subject:** | RE: Safeway - discovery-related issues |

Brian,

I hope all is well.

Can you let us know where things with respect to topics 3 and 4 below?

With respect to the database fields, unless it becomes relevant in connection with class certification briefing, we will agree to defer this issue pending the class certification determination.

With respect to Ms. Pattison's documents, as you know, she was not disclosed as a witness pursuant to Rule 26(a), or in response to our interrogatories directed to decision making regarding the elimination of price parity and related disclosures. As we understand the testimony of certain Safeway representatives including Mr. McCready and Mr. Guthrie, Ms. Pattison's involvement with respect to price-related disclosures was more than merely ministerial. Nevertheless, we are inclined to defer this issue provided Safeway does not intend to submit a substantive declaration from Ms. Pattison, or documents from her files that have not been produced, in connection with defendant's class cert. opposition. If you could provide guidance on this front, we should be able to reach agreement on this point as well.

Thanks.

Tim

---

**From:** Brian Blackman [mailto:BBlackman@sheppardmullin.com]
**Sent:** Tuesday, October 29, 2013 3:44 PM
**To:** Timothy N. Mathews
**Cc:** Steven A. Schwartz; 'Scott Shepherd'; Jim Shah (jshah@sfmslaw.com); Craig Cardon
**Subject:** RE: Safeway - discovery-related issues

Tim,

We are looking into issues 3 and 4. As for issues 1 and 2, these additional requests for documents and information go well beyond the scope of discovery authorized by Judge Spero's December 2012 Order [Dkt. No. 78].

Safeway has already produced the transaction data that provides a complete picture of potential damages in this case. The data allows Plaintiff to calculate the markup on an individual basis or transaction by transaction and can certainly be aggregated in any manner Plaintiff wants. Plaintiff also appears to be asking for what the Court has already denied: that Safeway undertake the time and expense of imaging, reviewing, and producing documents for a fifth custodian, when the Court only ordered discovery as to four custodians. Add to this the fact that these discovery

requests come in the midst of Safeway's preparation of its opposition to class certification, and we think these requests – both in scope and content – are improper.

**(1) Transaction Documents**

Safeway has already provided the transaction data that can be used to determine on an individual basis what was purchased, when and for how much as well as the difference in those charges between the physical and online stores.  Thus, Safeway has provided Plaintiff with the data that can be used to calculate the alleged damages on an individual basis.   This data is certainly capable of being aggregated in any manner Plaintiff desires.

The Price Zone Impact spreadsheet have nothing to do with individual damages.  Plaintiff continues to try to build these spreadsheets into something they are not. ████████████████████████████████████████████████ ████████████████████████████████████████████  The transaction database Safeway already produced contains the information necessary for Plaintiff to calculate damages, if any, on an individual basis.

Plaintiff has the data sufficient to make its individual or aggregate damage calculations.  If Plaintiff believes that there is some additional element within the query used to generate the Price Zone Impact spreadsheets, which he does not already have, and needs that item to calculate the markup on an individual basis, then please identify what data codes those are and why Plaintiff needs them.

**(2) Pattison Documents**

As you recall, after a significant amount of time spent meeting and conferring over these issues, Judge Spero ordered Safeway to conduct extensive electronic searches on four carefully chosen custodians: "Guthrie, Fleming, Marvin and McCready" [Dkt. No. 78].  At great expense, Safeway conducted these electronic searches on the four court-ordered custodians.  Now, Plaintiff is demanding that Safeway restart the search term process by imaging, decrypting and processing a fifth custodian's documents and files (Tamara Pattison) and then running the full set of 77 different search terms (it is not clear to us if you are demanding the original 77 search terms or the more than 105 search terms that were ultimately run) for a roughly 2-year period against that image.  This is improper for a number of reasons, but, most notably, it runs contrary to the express terms of discovery already set forth in Judge Spero's order.

First, the notion that Ms. Pattison's involvement is somehow a "surprise" to Plaintiff is simply not born out in the facts.  Information relating to Ms. Pattison's involvement was available – and, indeed, produced – to Plaintiff more than a year ago.  Safeway's initial production ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████████████████ ████████████████  Plaintiff had this and other communications involving Ms. Pattison well before the meet and confer that ultimately resulted in the custodian searches and production.  Furthermore, we discussed Ms. Pattison's involvement during our meet and confer discussions leading up to Judge Spero's December Order.  Her involvement was also evident from the custodian document productions themselves (that included numerous communications with Ms. Pattison and would certainly prove duplicative of the information Plaintiff is currently demanding Safeway retrieve, process and produce).  In addition, the fact that Plaintiff previously requested tailored searches of her email and document files (which we performed and have produced) and that we produce her for deposition (which we agreed to do) also proves Plaintiff was well aware of and understood Ms. Pattison's involvement in this process.

Second, the search terms were developed on two issues:  1) adequacy of existing disclosures and 2) the decision to eliminate price parity and its impact.  It is unclear why Plaintiff believes Ms. Pattison has documents that would bear at all on Safeway's decision to eliminate price parity and its impact.  Ms. Pattison was not involved in that decision-making process and there is no basis for running any terms related to that issue.  As for the second issue, we have already run all of these term searches against the electronic files of the marketing people that were responsible for drafting and revising the marketing materials and statements.  Their non-privileged communications involving Ms. Pattison have

already been produced.  Thus, the responsive document that may exist on the second issue have been largely, if not entirely, produced.

Third, as both Mr. McCready and Mr. Guthrie testified, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  You have already confirmed to us that communications with Safeway's IT architects and programmer on how to implement this project on the website are not relevant.  Thus, a large number of the documents that might be returned on these additional and redundant searches would not be responsive to the issues you are seeking to address.

Finally, both Mr. McCready and Mr. Guthrie testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Both witnesses also testified that these tasks primarily required interfacing with Safeway's legal department.  Any communications she had with counsel on those issues are privileged and will not be produced.  Moreover, Safeway has already searched for and produced Ms. Pattison's non-privileged electronic documents relating to the October 2009 meetings and her follow-up on the ▮▮▮▮▮ ▮▮▮▮.

In short, the demand for imagining and searching through Ms. Pattison's files is wholly unjustified and unnecessary.  We are happy to consider a more narrowed and focused search that can be run through Ms. Pattison's Outlook, Excel, PowerPoint and WORD files (similar to what was previously done for her work in connection with the October 2009 IT meetings) on specific issues that were not previously covered by our earlier search and production of Ms. Pattison files.  However, we do not believe the more "fulsome" search you are currently demanding is justified when the potential for responsive and relevant material is balanced against the burden and expense of undertaking the request.

Brian

Brian Blackman
415.774.2981 | direct
415.403.6036 | direct fax
BBlackman@sheppardmullin.com | Bio

**SheppardMullin**
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
415.434.9100 | main
www.sheppardmullin.com

---

**From:** Timothy N. Mathews [mailto:TimothyMathews@chimicles.com]
**Sent:** Thursday, October 17, 2013 8:25 AM
**To:** Brian Blackman
**Cc:** Steven A. Schwartz; 'Scott Shepherd'; Jim Shah (jshah@sfmslaw.com); Craig Cardon
**Subject:** Safeway - discovery-related issues

Brian:

We write to initiate meet and confer discussions about a few discovery issues that arose in connection with the recent depositions.

**1)      Transaction Database**

In November 2012, prior to Safeway's second production of the Safeway transaction database, you asked us to indicate the data fields that we wanted Safeway to produce. We responded that we wanted, inter alia, "any and all data fields that, alone or in conjunction with any other field, can be used to derive the markup, including 'reg_rtl_prc' and any other fields which could be used to determine the difference between what was charged for products ordered online and what would have been charged in the local store from which those products were delivered."

During Matt Campbell's deposition it became apparent that we had not received all of the data fields Safeway regularly uses in conducting the "query." (That is also confirmed by the query itself, which Safeway recently produced.)
We request that Safeway re-produce the transaction database to include all data fields referenced in the query, as well as the fields previously produced.

**2)     Pattison Documents**

Messrs. Guthrie and McCready testified that, in conjunction with eliminating price parity, Tamara Pattison was responsible for reviewing and approving Safeway's FAQs, Special Terms, and other public statements concerning product pricing. Prior to this time, we were unaware that Ms. Pattison had any significant involvement with, or responsibility, for reviewing or updating disclosures. To date, the production of documents from Ms. Pattison's files has been extremely limited.

Given the testimony of Messrs. Guthrie and McCready, we believe that a more fulsome search and productions of documents from Ms. Pattison's files is necessary. We believe the full set of search terms (i.e., the list on we reached in February 2013) should be run against Ms. Pattison's files for the time period from August 1, 2009 through June 1, 2011. We also ask that you run "price w/10 store" and let us know how many documents are returned.

**3)     Data Codes M, G, and L**

At the depositions, the witnesses were unsure what the database promotion codes "M," "G", and "L" meant. Please let us know what those codes mean.

**4)     Timestamps**

Finally, please let us know if you learned anything more about the email time stamp issue we discussed at the deposition, such as which emails were affected.


We are available to discuss these issues if you wish.

Thanks.

Tim


Timothy N. Mathews
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
610-642-8500 x331
610-649-3633 (Fax)
TNM@chimicles.com
www.chimicles.com
***ADMITTED TO PRACTICE IN PA, NJ***

4

**PRIVILEGED INFORMATION/CONFIDENTIALITY NOTICE**
The information hereby transmitted, including any attachments, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, copying, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is strictly prohibited, and all liability arising therefrom is disclaimed. If you received this communication in error, please contact the sender and delete the material from any computer and appropriately dispose of any copies. Unless expressly stated, the contents of this communication, including attachments, were not intended or written to be used as legal, financial or tax advice.

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.