UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RODMAN,<br><br>    Plaintiff,<br><br>v.<br><br>SAFEWAY INC.,<br><br>    Defendant. | Case No. 11-cv-03003-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DISCOVERY SANCTIONS**<br><br>Re: ECF No. 434 |

Before the Court is Plaintiff's Motion for Discovery Sanctions. ECF No. 434. The motion is granted in part and denied in part.

## I.  BACKGROUND

In this certified class action for breach of contract, the Court previously granted Plaintiff's motion for partial summary judgment that Defendant Safeway, Inc. ("Safeway") breached its contract with class members who registered to shop online after 2006 "by charging higher prices for groceries on its online Safeway.com delivery service than it charged in the stores where the groceries were selected." ECF No. 237 at 1. The Court found that the terms and conditions of Safeway's online contract with customers had promised, with certain exceptions, that the prices charged on Safeway.com would be the same as the prices charged in the physical store from which the groceries were selected and delivered. Id. at 13. However, the Court denied Plaintiff's subsequent motion for partial summary judgment regarding Safeway's liability to class members who registered to shop in the online store prior to 2006 because "Plaintiff ha[d] not met its burden of demonstrating that class members who registered prior to 2006 ever assented to [the same] Special Terms" as class members who registered after 2006. ECF No. 331 at 28–29.

After the Court denied Plaintiff's motion for partial summary judgment regarding pre-2006 liability, only one issue remained to be tried: whether class members who registered for the

delivery service prior to 2006 had agreed to the same contract as class members who registered after 2006. As a result, on February 3, 2015, Plaintiff requested documents showing the Special Terms and registration process in effect from 2001 to 2005. ECF No. 446 at 11 (citing interrogatories 52 and 53). On March 9, 2015, Safeway responded to Plaintiff's document requests, noting that "Safeway [did] not have access to the Special Terms that were in effect between 2001 and 2005." ECF No. 446 at 12. On April 7, 2015, Safeway reported to Plaintiff that "[a]s for the pre-2006 Special Term and Registration documents, Safeway has not located any responsive documents." ECF No. 446 at 13.

Trial was scheduled to begin on October 6, 2015. Approximately seven days before that date, Safeway produced ten highly relevant documents related to Safeway's pre-2006 terms and conditions. ECF No. 371 at 2. These ten documents were responsive to Plaintiff's discovery requests for "all documents that reference, discuss, or reflect the procedure for registering for grocery delivery through Safeway.com from 2001 to 2005," as well as Plaintiff's request for "all documents that reference, discuss, or reflect the Special Terms that were in effect from 2001 to 2005." Id. The documents were found on a "legacy" computer drive by Safeway's Director of Marketing, Mr. Steve Guthrie, who was reviewing that drive in anticipation for trial. Id. Mr. Guthrie had previously been designated to testify on Safeway's behalf concerning "[a]ll steps taken by Safeway to locate documents and persons knowledgeable about the [pre-2006 registration issues]" and testified that he had searched the legacy computer drive using a key word search.[1] Id. Nonetheless, Mr. Guthrie did not find the ten documents-in-question until approximately ten days before trial – over five months after fact discovery closed on April 24, 2015.[2] Id.

---

[1] According to Safeway, "Mr. Guthrie used Microsoft's built-in search function to search [the legacy drive] in early 2015." ECF No. 446 at 11. "He started at the top level of the shared drive and searched for every folder and subfolder with any of the following words in the folder name: 'registration,' 'registration page,' 'terms and conditions,' 'special terms,' 'register,' or 'terms.'" Id. He then reviewed the contents of 75–100 folders "manually," but did not find any responsive documents. Id. at 11–12.

[2] Apparently, Mr. Guthrie's initial search of the legacy drive did not involve a search within the contents of the files, but rather merely searched for file names within the legacy drive. ECF No. 446 at 15. In his preparation for trial, Mr. Guthrie "access[ed] the help functionality" and "found a way to search within the contents of files, and after setting that as a search parameter" he was able to conduct additional searches, which located the ten responsive documents-in-question. Id. at 16.

Given the highly relevant nature of the newly-disclosed documents, the Court continued the trial until December 7, 2015 and permitted Plaintiff to take additional discovery. ECF No. 373 at 2. After Plaintiff conducted additional discovery, on November 19, 2016, the parties stipulated to the pre-2006 terms and conditions appearing on Safeway.com. ECF No. 397 at 2. The parties further stipulated that "this Court's prior summary judgment orders (ECF Nos. 237 and 331) are equally applicable to Class members who registered before January 1, 2006, as they are to Class members who registered between January 1, 2006 and November 14, 2011." Id. The parties therefore requested that the Court vacate the December 7, 2015 trial date, which request the Court granted. Id. On November 30, 2015, the Court issued a Judgment in favor of the certified class in the amount of $30,979,262 in damages and $10,905,505 in prejudgment interest, for a total of $41,884,767. ECF No. 406.

On December 4, 2015, Safeway filed a Notice of Appeal from the Court's November 30 Judgment. ECF No. 408. That appeal is now pending before the Court of Appeals for the Ninth Circuit.

On April 6, 2016, Plaintiff filed a motion for discovery sanctions. ECF No. 434. The Court held a hearing on the motion on August 25, 2016 and is now prepared to rule on the motion.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26(g) "requires a signing attorney to certify that a reasonable inquiry has been made with respect to the factual and legal basis for any discovery request or response." Nat'l Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 555 (N.D. Cal. 1987); Nat'l Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP, 256 F.R.D. 678, 680 (C.D. Cal. 2009) ("A party has an obligation to conduct a reasonable inquiry into the factual basis of its discovery responses."); Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 785 (9th Cir. 2003) ("Rule 26 explicitly imposes an affirmative duty 'to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26

---

Notwithstanding this search for file names, Mr. Guthrie did not look in file folders named "Special Terms," "OldSiteDesign," "OldSiteDesign\sitedesign\Registration," "Screen Grabs for Site Tutorial," and other folders with clearly relevant titles.

through 37'") (quoting Fed. R. Civ. P. 26, Advisory Committee Notes, 1983 Amendment, Subdivision (g)). "The reasonableness of the inquiry is measured by an objective standard; there is no required showing of bad faith." Turnage, 115 F.R.D. at 555. Rule 26(g)(3) "provides further that when an attorney makes a certification that violates the Rule 'without substantial justification' the court, on its own or on motion, "*must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.'" Deuss v. Siso, No. 14-cv-00710-YGR(JSC), 2014 WL 4275715, at *5 (N.D. Cal. Aug. 29, 2014) (quoting Fed. R. Civ. P. 26(g)(3)).

## III.  ANALYSIS

### A.  Rule 26(g)

Plaintiff moves for sanctions under Rule 26(g) based primarily on Safeway's "false and inaccurate statements in response to Interrogatories 13-15 and Document Requests 50, 52, and 53 . . . concerning the non-existences of documents reflecting historic copies of" Safeway's pre-2006 terms and conditions. ECF No. 434 at 23–24. According to Plaintiff, "[h]ad Safeway properly searched the Legacy Drive . . . , it would have been required to concede the pre-2006 issues in its March 2015 interrogatory responses." ECF No. 453 at 10.

Safeway responds that "no sanctions are warranted under Rule 26(g) because Safeway made a reasonable inquiry into the factual basis for its discovery responses."[3] Id. Safeway notes that its "search included interviews of numerous individuals who confirmed that Safeway did not maintain a systematic repository of pre-2006 documents;" that it "gathered the names of additional individuals who might have stored documents on their computers in 2001-2005, but found it did not have a copy of those individuals' computer files from that period;" and that Mr. Guthrie and another Safeway employee "searched the shared drive for additional documents, but did not find any." ECF No. 446 at 21–22. Because "Safeway believed [these efforts] were comprehensive at

---

[3] While Safeway asserts that "the documents at issue were in no way outcome determinative as to the pre-2006 registration procedures . . . and operative terms and conditions," ECF No. 446 at 6, Safeway does not contest that the ten documents-in-question were responsive, and transparently relevant to, to Plaintiff's document requests, id. at 21.

the time," Safeway contends its inquiry was reasonable. Id. at 22.

The Court disagrees. Although there is no indication of bad faith in Safeway's inability to find the ten responsive documents during fact discovery, the Court concludes that Safeway's initial search of the legacy drive was unreasonable. Neither party cites any authority for or against the proposition that a party's failure to search within the contents of electronic documents, as opposed to searching merely within the documents' file names, constitutes an unreasonable inquiry under Rule 26(g). Nonetheless, the Court finds that Safeway's failure to search within the contents of the legacy drive here constitutes an unreasonable inquiry for at least three reasons.

First, there is no indication that Safeway's counsel guided or monitored Mr. Guthrie's search of the legacy drive in any significant way. Rather, it appears that Safeway's counsel relied on Mr. Guthrie's determination that no relevant documents were found on the legacy drive, but it is unclear if Safeway's counsel ever questioned the thoroughness of Mr. Guthrie's search. In particular, it is not clear whether Safeway's counsel ever determined whether Mr. Guthrie searched within the contents of the files on the legacy drive, as opposed to merely within the documents' file names. Such lack of guidance and oversight supports a finding of unreasonableness. See Abadia-Peixoto v. U.S. Dep't of Homeland Sec., No. 11-cv-04001 RS (KAW), 2013 WL 4511925, at *2 (N.D. Cal. Aug. 23, 2013) ("In the era of e-discovery, attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search.") (internal quotation marks omitted).

Second, Safeway's counsel's reliance on Mr. Guthrie's search was further unreasonable because there is no evidence that Mr. Guthrie, Safeway's Director of Marketing, had any experience conducting searches of large document repositories, such as the approximately 300 GB legacy drive, for responsive documents. Indeed, as Plaintiff notes, Mr. Guthrie admitted that "he received no meaningful assistance from Safeway's in-house or outside counsel or IT personnel for his [initial search of the legacy drive]; had no experience conducting such searches; and kept no record of the searches he made." ECF No. 434 at 14. Safeway's counsel could have, but did not, request a member of Safeway's IT department (or anyone else familiar with modern e-discovery

techniques) conduct the search.[4]  See Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 435 (S.D.N.Y. 2004) ("[C]ounsel is responsible for coordinating her client's discovery efforts.").  Had such a request been made, it is indisputable that the documents-in-question would have been located, especially given the ease with which Mr. Guthrie eventually discovered the documents once he "access[ed] the help functionality" and "found a way to search within the contents of files." ECF No. 446 at 16.  See Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 503 (D. Md. 2000) (concluding that "counsel did not make a reasonable effort under [Rule 26(g)] to assure that its client had complied fully with plaintiff's discovery requests" because certain "documents were in the control of [the client] and . . . a reasonable search would have located them").[5]

Finally, the evidence indicates that the search was objectively unreasonable.  This is not a

---

[4] While Safeway's counsel had a member of Safeway's IT department, Mr. Hensley, "search[] *his* files" for responsive documents, and while Mr. Hensley "also did not find any responsive documents," ECF No. 446 at 13, it does not appear that Safeway's counsel requested that Mr. Hensley or any other member of Safeway's IT department search the legacy drive in particular.

[5] Plaintiff raises two additional discovery misconduct theories.  First, Plaintiff argues that during discovery Safeway failed to disclose the existence of "another shared drive – the Website Developer's Archive – and critical new documents therein . . . [which] independently would have resolved all Pre-2006 issues had they been produced prior to the discovery cutoff." ECF No. 434 at 15.  However, Plaintiff has failed to convince the Court that Safeway acted unreasonably in failing to produce documents from this shared drive.  While Safeway admits that one file on the shared drive was responsive to Plaintiff's document request because the "modification history indicates that the file was in use in 2003," the Court concludes that Safeway's failure to discover this file was not unreasonable because "[t]he archived files [on the shared drive] represent[ed] a historical record of Safeway's code as it existed between June 2006 and July 2011, *not* during the 2001 to 2005 timeframe." ECF No. 446 at 18 (emphasis in original).

Second, Plaintiff argues that Safeway failed to reasonably disclose certain "Query Run" calculations.  See ECF No. 434 at 19–21, 28–29.  As Safeway points out, however, Plaintiff's sanctions requests in this respect is untimely under Local Rule 7-8(c), which provides that sanction motions "must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate." Here, the "Query Run" issue was initially raised in January 2015. ECF No. 446 at 25.  The mere fact that "Plaintiff would not have sought sanctions for this issue absent the more significant sanctionable conduct regarding the Pre-2006 issues," ECF No. 453 at 20, does not render Plaintiff's sanctions motion regarding this issue timely.  See Siebert v. Gene Sec. Network, Inc, No. 11-cv-01987-JST, 2014 WL 5808755, at *2 (N.D. Cal. Nov. 6, 2014) (finding that Plaintiff did not "move[] for sanctions 'as soon as practicable' under Civil Local Rule 7–8(c)" where Plaintiff filed sanctions motion "eight months after the allegedly offending conduct").

case in which Safeway is being faulted for failing to "incur the time and expense of looking for what amounts to a needle in a haystack." In re Fresh & Process Potatoes Antitrust Litig., No. 2:13-CV-2182-LAH, 2015 WL 1222278, at *7 (D. Idaho Mar. 17, 2015). Many of the electronic file folders now known to contain relevant documents had names like "Special Terms," "OldSiteDesign," "OldSiteDesign\sitedesign\Registration," and "Screen Grabs for Site Tutorial." Anyone conducting an adequate search would have looked in those folders.

Ultimately, the Court concludes that Safeway's failure to search within the contents of the legacy drive constituted an unreasonable inquiry and that Safeway has offered no substantial justification for its violation of Rule 26(g). As a result, the Court "must impose an appropriate sanction." Deuss, 2014 WL 4275715, at *5 (quoting Fed. R. Civ. P. 26(g)).

### B. Appropriate Sanctions

Sanctions for violation of Rule 26(g) "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.'" Deuss, 2014 WL 4275715, at *5. Plaintiff seeks attorneys' fees covering three periods of time. First, Plaintiff seeks attorneys' fees totaling $347,628.75 for work conducted between March 9, 2015 (the date of Safeway's initial response to the relevant document requests) and August 31, 2015 (the date of the Court's order denying Plaintiff's motion for summary judgment regarding Safeway's liability to pre-2006 class members). ECF No. 434 at 29. Second, Plaintiff seeks attorneys' fees totaling $266,250 for trial preparation work completed between September 1, 2015 (the day after the Court's summary judgment order) and September 29, 215 (the date Safeway produced the ten documents-in-question). Id. Finally, Plaintiff seeks attorneys' fees totaling $419,090 for trial preparation and additional discovery work completed between September 30, 2015 (the day after Safeway produced the ten documents-in-question) and November 12, 2015 (the date of Safeway's concession of the pre-2006 issue). Id. at 29–30. While the Court cannot determine with a high degree of precision which work would have been obviated had Safeway properly complied with Rule 26(g), the Court is convinced that a substantial portion of the work identified by Plaintiff would not have been incurred had Safeway conducted a reasonable search of the legacy drive. However, the Court will reduce the fee award by one-third to account for two factors.

First, even if Safeway had disclosed the ten documents-in-question on March 9, 2015, Plaintiff would have likely still been required to expend resources to (1) conduct further discovery into the pre-2006 issue to follow up on those documents and/or (2) draft a motion for summary judgment. See ECF No. 446 at 25–27. Second, Plaintiff is not immune from blame for the failure to discover the ten documents-in-question. At Mr. Guthrie's April 16, 2015 deposition, he was asked: "And you don't know whether your search terms searched only file names or whether they searched within files as well?" ECF No. 446-5 at 10. Mr. Guthrie responded, "I don't know." Id. Despite this fact, Plaintiff does not appear to have followed up with Safeway regarding the adequacy of Mr. Guthrie's search of the legacy drive. In particular, Plaintiff did not propound supplementary document requests, specifically asking that a search be conducted of the legacy drive within the contents of files. While Plaintiff's failure to follow up in no way relieves Safeway of its discovery obligations to produce responsive documents, had such a follow-up request been made, a large portion of the subsequent work completed by Plaintiff's attorneys may have been avoided.

Accordingly, the Court concludes that the attorneys' fees requested by Plaintiff should be reduced by one-third, resulting in a fee award of $688,646.

## CONCLUSION

The Court grants in part and denies in part Plaintiff's motion for sanctions. The Court orders Safeway to pay Class Counsel[6] $688,646 as a discovery sanction under Rule 26(g). The

///
///
///
///
///

---

[6] Plaintiff argues that "[because] Class Counsel have litigated this case on [a] contingent fee basis, and [because] the result of Safeway's misconduct was to increase counsel's costs and prevent counsel from working on other cases, Class Counsel believe it would be appropriate to award these attorneys' fees directly to them." ECF No. 434 at 30. The Court agrees with Plaintiff in this respect and will therefore order Safeway to pay the fee award directly to Class Counsel.

1  Court denies without prejudice Plaintiff's request for a negative jury instruction.  Should the Ninth
2  Circuit remand this case for trial, Plaintiff may renew the request for a negative jury instruction at
3  that time.
4        IT IS SO ORDERED.
5  Dated:  October 6, 2016



                                   JON S. TIGAR
                               United States District Judge