1  CHIMICLES & TIKELLIS LLP
   Steven A. Schwartz
2  Timothy N. Mathews
   361 W. Lancaster Avenue
3  Haverford, PA 19041
   Telephone: (610) 642-8500
4
   James C. Shah (SBN 260435)
5  SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
   401 West A Street, Suite 2350
6  San Diego, CA 92101
   Telephone: (619) 235-2416
7  Facsimile: (619) 235-7334
   jshah@sfmslaw.com
8
9  *Attorneys for Plaintiff and on Behalf*
   *of All Others Similarly Situated*
10
11            UNITED STATES DISTRICT COURT
12           NORTHERN DISTRICT OF CALIFORNIA
13

| | |
|---|---|
| 14  MICHAEL RODMAN, on behalf of himself and all others similarly situated, | Case No. 3:11-CV-03003 JST (JCS) |
| 15 | **PLAINTIFFS' NOTICE OF** |
| 16       Plaintiff, | **MOTION AND MOTION FOR** |
| | **ATTORNEYS' FEES AND** |
| 17    v. | **EXPENSE REIMBURSEMENT,** |
| | **SERVICE AWARD, AND** |
| 18  SAFEWAY INC., | **APPROVAL OF JUDGMENT** |
| | **DISTRIBUTION PLAN** |
| 19       Defendant. | |
| 20 | **Date:        March 29, 2018** |
| 21 | **Time:        2:00 p.m.** |
| | **Courtroom:  9 – 19th Floor** |
| 22 | |
| 23 | The Honorable Jon S. Tigar |
| 24 | |

25
26
27
28

1

### NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE THAT, pursuant to this Court's Order Regarding

3  Judgment Distribution (ECF #475), on March 29, 2018 at 2:00 p.m., or as soon as

4  thereafter as counsel may be heard in Courtroom 9 of the above-entitled Court,

5  located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California, 94102,

6  the Honorable Jon S. Tigar presiding, Plaintiff, Michael Rodman ("Plaintiff" or

7  Rodman"), and Class Counsel will move for an award of 35% of Judgment for

8  attorneys' fees and unreimbursed expenses, a $10,000 Service Award for

9  Representative Plaintiff, and approval of the proposed Plan of Judgment

10  Distribution.

11      This motion is based upon this Notice of Motion and Motion and the

12  Memorandum of Points and Authorities filed concurrently herewith, the declarations

13  of Steven A. Schwartz, James C. Shah, Mathew Wessler, Michael Rodman, and

14  Brian Devery filed concurrently herewith, all other pleadings, papers, records and

15  documentary materials and file were deemed to be on file in this action, those

16  matters of which the court may take judicial notice, and upon the oral arguments of

17  counsel made at the hearing on this motion.

18

19                                          Respectfully Submitted,

20  Date: January 4, 2018
                                            CHIMICLES & TIKELLIS LLP
21

22                                          By: /s/ Steven A. Schwartz

23                                              Steven A. Schwartz (pro hac vice)
                                                Timothy N. Mathews (pro hac vice)
24                                              361 W. Lancaster Avenue
                                                Haverford, PA 19041
25                                              Telephone:    (610) 642-8500
                                                Facsimile:    (610) 649-3633
26
                                                James C. Shah (SBN 260435)
27                                              SHEPHERD, FINKELMAN,
                                                   MILLER & SHAH
28                                              401 West A Street, Suite 2350

- 1 -

San Diego, CA 92101
Telephone:      (619) 235-2416
Facsimile:      (866) 300-7367

*Attorneys for Plaintiff*
*MICHAEL RODMAN and the Class*

MEMORANDUM IN SUPPORT OF  MOTION FOR ATTORNEYS' FEES
Case No. 3:11-cv-03003 JST (JCS)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................................... 1

II.   BACKGROUND ............................................................................................ 4

III.  ARGUMENT................................................................................................... 7

    A.   Governing Standards For Fees ............................................................. 7

    B.   The Court Should Approve 35% Fee/Expense ................................... 9

        1. The Results Achieved for the Class ........................................... 9

        2. The Complexity of the Case and the Risk
          and Expense to Counsel of Litigating it.................................. 10

        3. The Skill, Experience, and Performance
          of Counsel (both sides) .............................................................. 11

        4. The Contingent Nature of the Fee ........................................... 13

        5. Fees Awarded in Comparable Cases ....................................... 13

        6. Lodestar Cross Check................................................................. 15

        7. Other Considerations ................................................................. 17

    C.   Service Award for Class Representative
       Michael Rodman ................................................................................. 18

    D.   The Plan of Distribution, Including the
       *Cy Pres* Residual, Should be Approved ....................................... 18

IV.   CONCLUSION............................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

*Cases*

*Apple Computer, Inc. v. Superior Court*
 126 Cal. App. 4th 1253 (2005)................................................................................7

*Ardon v. City of Los Angeles*
 Case No. BS363959 (Superior Court, County of Los Angeles)....................................15

*Betancourt v. Advantage Human Resourcing, Inc.*,
 No. 14-cv-01788-JST, 2016 LEXIS 10361 (N.D. Cal. Jan. 28, 2016) ......................2, 10

*Chambers v. Whirlpool*
 214 F. Supp. 3d 877 (C.D. Cal. 2016)...............................................................11, 15

*Chaudhry v. City of L.A.*
 751 F.3d 1096 (9th Cir. 2014)................................................................................9

*City of Burlington v. Dague*
 505 U.S. 557 (1992) .............................................................................................9

*Dennis v. Kellogg Co.*
 697 F.3d 858 (9th Cir. 2012)............................................................................20, 21

*Fernandez v. Victoria's Secret Stores, LLC*
 2008 WL 8150856 (C.D. Cal, 2008)........................................................................3

*Fischer v. SJB-P.D. Inc.*
 214 F.3d 1115 (9th Cir. 2000)................................................................................9

*Garcia v. Resurgent Capital Servs*.
 2012 U.S. Dist. LEXIS 123889 (N.D. Cal. Aug. 30, 2012)............................................9

*Gutierrez v. Wells Fargo*
 No. 07-05923 WHA, 2015 LEXIS 67298 (N.D Cal. 2015).......................................3, 6

*Hunt v. Imperial Merchant Services, Inc.*
 560 F.3d 1137 (9th Cir. 2009)................................................................................6

*In re Bluetooth Headset Prods. Liab. Litig.*
 654 F.3d 935 (9th Cir. 2011)...........................................................................8, 9, 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
 No. C-07-5944 JST, 2016 LEXIS 102408 (N.D. Cal. Aug. 3, 2016) .................... *passim*

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*
 No. C-07-5944 JST, 2016 LEXIS 5383 (N.D. Cal. Jan. 14, 2016)..................................2

*In re LG Front-Loading Washing Machine Litigation*
  Case No. 08-51 (D.N.J.) at Dkt. No. 421 ....................................................................15

*In re Omnivision Techs., Inc.*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................................9

*In re Online DVD-Rental Antitrust Litig.*
  779 F.3d 934 (9th Cir. 2015)........................................................................................10

*In re Philips/Magnavox TV Litig.*
  2012 U.S. Dist. LEXIS 67287 (D.N.J. May 14, 2012) ................................................15

*In re Real Estate Associates Limited Partnerships Litigation*
  No. 98-7035 DDP (C.D. Cal. Nov. 24, 2003) ...............................................................3

*In re Sutter Health Uninsured Pricing Cases*
  171 Cal. App. 4th 495 (2009) .......................................................................................8

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
*Sales Practices, & Prods. Liab. Litig.*
  No. 8:10ML02151 JVS, 2013 LEXIS 123298 (C.D. Cal. July 24, 2013) ....................14

*In re Vitamins Antitrust Litig.*
  MDL No. 1285, 2001 LEXIS 25067 (D.D.C. July 16, 2001) .......................................14

*Kerr v. Screen Extras Guild, Inc.*
  526 F.2d 67 (9th Cir.1975).............................................................................................9

*Ketchum v. Moses*
  17 P.3d 735 (Cal. 2001) ................................................................................................9

*Klein v. City of Laguna Beach*
  810 F.3d 693 (9th Cir. 2016)..........................................................................................7

*Laffitte v. Robert Half Internat. Inc.*
  1 Cal. 5th 480 (2016) ..........................................................................................2, 9, 14

*Laffitte v. Robert Half Internat. Inc.*
  231 Cal. App. 4th 860 (Cal. App. 2nd 2014).................................................................2

*Lealao v. Beneficial California, Inc.*
  82 Cal. App. 4th 19 (2000)........................................................................................8, 9

*Nachshin v. AOL, LLC*
  663 F.3d 1034 (9th Cir. 2011)..................................................................................20, 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Radcliffe v. Experian Info. Solutions Inc.*
 715 F.3d 1157 (9th Cir. 2013) ..................................................................................18

*Rodriguez v. West Publ'g Corp.*
 563 F.3d 948 (9th Cir. 2009) ....................................................................................13

*Ruiz v. XPO Last Mile, Inc.*
 2017 WL 6513962 (S.D. Cal. Dec. 20, 2017) ............................................................3

*Six Mexican Workers v. Arizona Citrus Growers*
 904 F.2d 1301 (9th Cir. 1990) ..................................................................................20

*Staton v. Boeing Co.*
 327 F.3d 938 (9th Cir. 2003) ...................................................................................10

*Stetson v. Grissom*
 821 F.3d 1157 (9th Cir. 2016) ....................................................................................9

*Vizcaino v. Microsoft Corp.*
 290 F.3d 1043 (9th Cir. 2002) ........................................................................ *passim*

*Wershba v. Apple Computer, Inc.*
 91 Cal. App. 4th 224 (Cal. Ct. App. 2001) ..............................................................17

*Willner v. Manpower, Inc.*
 No. 11-cv-02946 – JST, 2015 LEXIS 80697 (N.D. Cal. June 22, 2015)...........3, 7, 8, 18

***Rules***
Coordination Proceeding Special Title Rule 1550b ........................................................13

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.     INTRODUCTION**

3          Plaintiff, Michael Rodman ("Rodman"), and Class Counsel litigated this matter

4   for more than six years against an unyielding defendant vigorously represented by

5   skilled counsel.[1]   Every single step of this litigation was hard-fought -- from the

6   motion to dismiss, through numerous discovery disputes, class certification,

7   decertification, two rounds of cross motions for summary judgment, and then

8   through the eve of trial, a new round of discovery, the eve of a second scheduled

9   trial, and appeal.   At the end of the day, Class Counsel met the challenge and

10  obtained a judgment of more than $42 million, representing 100% of damages plus

11  pre- and post-judgment interest.   Moreover, Safeway will soon pay over $100,000 in

12  taxable costs and has also agreed to pay the administration costs (estimated at over

13  $350,000) to provide notice and distribute the Judgment.[2]

14         By this Motion, Plaintiff and Class Counsel request that the Court:

15         • Award 35% of the Judgment for attorneys' fees and unreimbursed (*i.e.*,

16            non-taxable) expenses;[3] and

17         • Approve a $10,000 Service Award for Rodman for his efforts in

18            achieving the Judgment; and

19         • Approve the Plan of Judgment Distribution, including the proposed *cy*

20            *pres* payment of any residual funds to Meals on Wheels.

21

22

23  [1] Safeway's counsel through the majority of this case, Craig Cardon, was recently
    recognized by Law360 as a "2017 MVP" for his work on retail and ecommerce
24  matters. https://www.law360.com/articles/989749/mvp-sheppard-mullin-s-craig-
    cardon
25  [2] The parties agreed to defer discussion of the responsibility for administration costs
26  of any secondary distribution.

27  [3] Class Counsel have incurred approximately $267,212.28 in unreimbursed expenses,
    net of taxable costs to be paid by Safeway.   Class counsel do  not seek a separate
28  award for these expenses.  Rather, they are included in the requested 35% award.

1      If approved, the 35% Fee and Expense award will result in Class Counsel

2  receiving a 2.1 multiple on their lodestar for their dogged work.  At the same time,

3  class members will receive in the first distribution an average net recovery of 89% of

4  the markup they paid.  Moreover, given the likelihood of a secondary distribution

5  due to uncashed checks, it is likely that class members who cash their checks will

6  ultimately receive the full amount of their markup plus most, if not all, of the

7  associated interest.

8      Given the exceptional result here -- a full recovery of damages plus pre- and

9  post-judgment interest, taxable costs, and administration costs -- as well as the effort

10  required to achieve it, the requested fee/expense award is appropriate under the

11  governing standards using either a percentage-of-the-fund or lodestar-plus-multiplier

12  methodology.  For example, the Supreme Court of California recently affirmed a fee

13  award representing 33.33% of a $19 million common fund, plus expenses, where the

14  amount recovered was only 16% of the total amount in controversy in the case.

15  *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, (2016) and 231 Cal. App. 4th

16  860, 869 (Cal. App. 2nd 2014).

17      As this Court and the Ninth Circuit have held, the "most important factor is the

18  results achieved for the class" and "[o]utstanding results merit a higher fee."  *See In*

19  *re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 U.S. Dist.

20  Lexis 102408 at *62-64, 68-69, 71 (N.D. Cal. Aug. 3, 2016) (citing cases and

21  awarding 27.5% fee, representing 1.94 lodestar multiple, based on 20 percent

22  recovery of damages, and discussing cases with awards of up to 30%); *In re:*

23  *Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 U.S. Dist.

24  LEXIS 5383 at *171 (N.D. Cal. Jan. 14, 2016) (awarding 30% fee, plus expenses);

25  *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-cv-01788-JST, 2016 U.S.

26  Dist. LEXIS 10361 at *13-14, 24 (N.D. Cal. Jan. 28, 2016) (awarding 34.3% of

27  recovery that represented only 9.7% of maximum potential recovery and noting that

28

1   "the majority of class action settlements approved" have "fee multipliers that" fall

2   "between 1.5 and 3," *citing Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th

3   Cir. 2002) (affirming 3.63 multiple); *Willner v. Manpower, Inc.,* No. 11-cv-02946 –

4   JST, 2015 U.S. Dist. LEXIS 80697 at *11, 17-18, 22 (N.D. Cal. June 22, 2015)

5   (awarding 30% or recovery that was only "between 30 and 35%" of potential

6   recovery had the plaintiff "prevailed at trial," and finding that "Multipliers can range

7   from 2 to 4 or even higher."); *see also Ruiz v. XPO Last Mile, Inc*., 2017 WL

8   6513962 at *5-7 (S.D. Cal. Dec. 20, 2017) (awarding 35% of $13.9 million

9   settlement fund (representing a 1.78 multiplier), plus almost $250,00 in expenses,

10  even though plaintiffs "may of course have won more at trial."); *Fernandez v.*

11  *Victoria's Secret Stores*, *LLC*, 2008 WL 8150856 at *14-16 (C.D. Cal, 2008)

12  (awarding 34% of gift cards valued at $8.5 million (representing a 1.8 multiplier),

13  plus almost $250,000 in expenses, after only 2 years of litigation and before expert

14  discovery or summary judgment proceedings).

15      Further, the 35% award will represent only a 2.1 multiplier of Class Counsel's

16  lodestar, which is also easily within the range commonly awarded.  In another recent

17  case where, as here, counsel achieved a fully-litigated judgment representing a full

18  recovery ($203 million judgment), Judge Alsup awarded fees representing a

19  multiplier of more than 5 times class counsel's lodestar.  *Gutierrez v. Wells Fargo*,

20  No. 07-05923-WHA, 2015 US Dist. LEXIS 67298 at *23 (N. D Cal. 2015).  *See*

21  *also* Final Order and Judgment in *In re Real Estate Associates Limited Partnerships*

22  *Litigation, No.* 98-7035 DDP (C.D. Cal. Nov. 24, 2003) (Schwartz Decl., Exhibit

23  14) at ¶24) (Judge Dean Pregerson awarded class counsel 35% of an $83 million

24  settlement,[4] plus over $5.7 million in expenses,[5] representing a 1.57 multiplier. *See*

25  Schwartz Decl., ¶ 22.

26  [4] In that case, lead trial counsel Chimicles & Tikellis LLP obtained an approximate
    $120 million judgment of damages plus pre-judgment interest before the trial court,
27  and settled the case for $83 million prior to substantive appellate proceedings.
    Schwartz Decl., ¶22.
28

Finally, the proposed $10,000 service award for Plaintiff is consistent with governing standards, as is the parties' Plan of Judgment Distribution, including the proposed *cy pres* payment of any residual funds to Meals on Wheels.

## II.   BACKGROUND

As reflected by the nearly 500 docket entries, securing this recovery required almost seven years of hard-fought litigation.  As reflected at paragraph 12 of the Schwartz Declaration, the efforts of Class Counsel and Plaintiff included, but by no means were limited to, the following:

**Pleadings:** Drafting the Complaint and Amended Complaint and defeating Safeway's Motion to Dismiss.

**Document Discovery**: Serving nine sets of document requests, nine sets of interrogatories, two sets of requests to admit; reviewing tens of thousands of pages of documents; analyzing numerous, large transaction databases; responding to three sets of interrogatories, and document requests; and conducting substantial investigative work.

**Discovery Motions**: Participating in dozens of meet and confer sessions concerning discovery disputes; briefing multiple discovery disputes before Magistrate Judge Spero (ECF # 37, 62, 67, 76, 80, 82); attending three hearings before Judge Spero (ECF # 64, 77, 93), and handling emergency pre-trial motions and conferences with the Court related to Safeway's late production of documents from its Legacy Shared Computer Drive Archive (ECF # 378, 379, 380).

**Depositions:**   Conducting 12 depositions of Safeway personnel, former Safeway officers, employees and contractors, and the designee for the Internet Archive; deposing Safeway's damages expert Joseph Anastasi and its Survey expert

---

[5] Thus, class counsel received almost 42 % of the settlement fund for fees and expenses. Schwartz Decl., ¶22.

David Lewin, and defending the deposition of Plaintiff's damages and database expert Paul Manning, as well as Plaintiff's deposition.

**Expert Discovery**: Working with Plaintiff's consulting and testifying database experts in evaluating Safeway's database productions (which had to be repeatedly be reproduced due to missing data fields and compilation mistakes identified by Class Counsel and their experts) and in connection with testifying-expert Paul Manning's report and supplemental report regarding damages; consulting with non-testifying survey experts and working with those experts to address the expert reports proffered by Safeway.

**Contested Motion Practice**: Briefing and arguing myriad motions, including motions for class certification, decertification, permission for interlocutory appeal, two rounds of cross motions for summary judgment with supplemental briefing and sur-replies regarding liability, contract modification, damages, affirmative defenses, and the limitation of liability clause in Safeway's online grocery contract, reconsideration, motions to strike, evidentiary objections, and *Daubert* motions.

**Trial Preparation**: Fully preparing for two distinct trials related to pre-2006 damages issues, including filing the required Joint Pretrial Statement, briefing numerous motions *in limine*, participating in the final pretrial conference, interviewing and preparing witnesses, assembling and exchanging all trial exhibits and compiling impeachment exhibits and related work with vendors to load exhibits with appropriate highlights and call-outs for trial-presentation purposes, and preparing outlines for opening and closing arguments, direct examination and cross examination of witnesses, and preparing for anticipated legal issues in connection with trial.

**Settlement Negotiations**: Briefing and participating in a court-ordered Early Neutral Evaluation before Stephen Taylor; briefing and preparing for a mediation before retired Judge William Cahill of JAMS including various pre-mediation phone

calls/meeting with Judge Cahill; fully briefing and participating in a mediation before retired Judge Edward Infante of JAMS; and participating in the Ninth Circuit's mediation process.

**Appellate Proceedings**: Fully briefing and arguing Safeway's appeal to the Ninth Circuit and related preparation, including various moot courts and consultations with appellate specialists Gupta Wessler PLLC, whom Class Counsel retained to assist in defeating Safeway's appeal. *See* Wessler Declaration

**Judgment Distribution Related Work**: Consulting with various administrators, conducting legal and other independent research and evaluating and crafting plans for an effective notice program, judgment distribution program, and to minimize uncashed checks; successfully negotiating with Safeway to pay class counsel's taxable costs of $118,610.80, plus the costs of Judgement Administrator, Angeion Group, (estimated at over $350,000) for notice and judgment distribution services.[6]

**Update regarding Notice**: Consistent with this Court's Order Regarding Judgment distribution (ECF#475), Judgment Administrator, Angeion Group, has updated the class member address lists and distributed Notice to class members. *See* Devery Declaration. Notice was disseminated on December 15, 2017. The deadline for any objections from class members is March 2, 2018. To date, no class member has filed any objection or reached out to Class Counsel or the Judgment Administrator to raise any objections. Schwartz Decl., ¶15; Devery Decl., ¶17. Class Counsel and the Judgment Administrator have collected updated contact information to further update the Class List and also responded to all substantive

---

[6] While Class Counsel believe Safeway is responsible for such costs, *see Hunt v. Imperial Merchant Services, Inc.*, 560 F.3d 1137, 1144 (9th Cir. 2009), the authority is not singular on the issue. Indeed, Judge Alsup recently refused to order Wells Fargo to pay such costs. *See Gutierrez*, 2015 US Dist. LEXIS 67298 at *29. Securing Safeway's agreement, therefore, ensured that class members' net recovery would not be diluted by administrative expenses.

inquiries from class members.   Schwartz Decl., ¶15; Devery Decl., ¶3, 8-15, 17. Class Counsel will address class members' reaction to the Fee/Expense request, service award, and plan of distribution in their reply due on March 16, 2018. As reflected at paragraph 11 of the Rodman declaration, he supports Class Counsel's fee request.

## III.   ARGUMENT

### A.   Governing Standards For Fees

**Rule 23(h):** Even though Class Counsel seek fees from a judgment fund, and not a settlement fund, their fee request is still subject to Court review and approval pursuant to Fed. R. Civ. P. 23(h).

**California Law**: All of Class members' claims were based on California contract law pursuant to a California choice-of-law provision in Safeway's online grocery delivery contract.   Moreover, this Court's jurisdiction was based on diversity. Accordingly, as this Court held in *Willner*, 2015 U.S. Dist. LEXIS 80697 at *15-16:

> The law governing the settled claims, here California law, also governs the award of fees. *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees."). Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees. *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264 n. 4, 24 Cal. Rptr. 3d 818 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").

*Accord Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016) ("federal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine").

**Percentage Method with Lodestar Crosscheck:** In determining the appropriate fee in connection with a common fund settlement, "courts have

7

discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. Lexis 102408 at *61, quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *accord Willner*, 2015 U.S. Dist. LEXIS 80697 at *15-16; *Betancourt*, 2016 U.S. Dist. LEXIS 10361 at *20, citing *In re Bluetooth* and *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 27, 97 Cal. Rptr. 2d 797 (2000) ("Despite its primacy, the lodestar method is not necessarily utilized in common fund cases.").[7]   Courts typically exercise their discretion to use the percentage method, where, as here, there is an easily-quantified common fund, in lieu of engaging in the more time-consuming task of calculating the lodestar. *Id.*  In such cases, courts typically perform a "lodestar cross-check to ensure the reasonableness of its selected percent-of-the-fund award." *In re Cathode Ray Tube (CRT)*, 2016 U.S. Dist. Lexis 102408 at *71; *Willner*, 2015 U.S. Dist. LEXIS 80697 at *17, citing *In re Bluetooth* and *In re Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512, 89 Cal. Rptr. 3d 615 (2009).

In the Ninth Circuit, the "benchmark" percentage for an award of attorneys' fees in a class action is 25 percent. *In re Cathode Ray Tube (CRT)*, 2016 U.S. Dist. Lexis 102408 at *61-62, citing *In re Bluetooth*, 654 F.3d at 942.  This benchmark is just a starting place, however, and the Court must determine the appropriate percentage by "tak[ing] into account all of the circumstances of the case." *Id*. at 62, citing *Vizcaino*, 290 F.3d at 1048.

***Ketchum/Kerr* Factors**:

Under both California and Ninth Circuit law, courts consider various factors to determine whether an upward adjustment to the 25% benchmark or a multiplier on counsel's lodestar is warranted.  Under California law, courts typically consider the

---

[7] Like this case, *Betancourt* involved California state-law claims litigated in this Court pursuant to diversity jurisdiction. *Id.* at *2-3, 7.

following adjustment factors in deciding an appropriate fee award: (1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel (both sides); (4) the contingent nature of the fee; and (5) fees awarded in comparable cases. *See Ketchum v. Moses*, 17 P.3d 735, 741, 744-45 & n.2 (Cal. 2001); *accord Chaudhry v. City of L.A.*, 751 F.3d 1096, 1106 (9th Cir. 2014) (contingency risk is a relevant factor under California state law); *Garcia v. Resurgent Capital Servs.*, 2012 U.S. Dist. LEXIS 123889, at *33 (N.D. Cal. Aug. 30, 2012) (same); *see also Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th 480, 489, (2016) (citing *Lealao*).

Court applying federal law consider similar factors. *CRT,* 2016 U.S. Dist. Lexis 102408 at *61-62 at 62, citing *Vizcaino*, 290 F.3d at 1048-1049 and *In re Bluetooth*, 654 F.3d at 941-42.[8]  These factors are referred to  as the "*Kerr* factors."  *Id.* at *62, citing *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1119 (9th Cir. 2000) and *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), abrogated on other grounds by *City of Burlington v. Dague,* 505 U.S. 557(1992); *see also Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016).   Generally, however, under California law, "trial courts have considerably wider latitude … in the selection of factors that may be used …."  *Lealao*, 97 Cal. Rptr. 2d at 815 (citation omitted).

### B.   The Court Should Approve 35% Fee/Expense Request

All of the *Ketchum/Kerr* factors support the requested fee.

#### 1.   The Results Achieved for the Class

"The most important factor is the results achieved for the class.  Outstanding results merit a higher fee."  *In re Cathode Ray Tube (CRT)*, 2016 U.S. Dist. Lexis 102408 at *62-63, citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) and *In re Bluetooth, 654 F.3d at 942*.  Class Counsel here obtained a 100% recovery of breach of contract damages, pre- and post-judgment interest,

taxable costs, plus the costs of notice and judgment administration expenses.[8]  Very few class action settlements in the Ninth Circuit or elsewhere have resulted in full recoveries of damages plus interest, and even fewer litigated judgments in class actions have resulted in the full recovery achieved here.  In the *CRT* cases, this Court awarded 30% and 27% of the common fund even though the recoveries, while impressive, fell far short of the complete recovery here.  In the *Gutierrez* and *Real Estate Associates* cases, cited above, class counsel's results amply justified the 35% percentage award and a 5-times multiplier award (about 2.5 times the requested multiplier here).  In *Betancourt*, this Court awarded 34.3% of the common fund recovery because "the average individual recovery for attending an interview exceeds the average hourly rate" that class members should have been paid (even though that recovery represented only 9.7% of maximum potential recovery when including potential statutory damages).  2016 U.S. Dist. LEXIS 10361 at *2-3, 13-14, 24.

Given the outstanding recovery here, and the effort that was required to achieve it, a 35% fee is well-deserved.  This is particularly true since, even after payment of 35% in fees and expenses, the class will still receive a net recovery of 89% of the markup, and those class members who cash their checks could easily receive their full share of markup plus interest after a second round distribution due to uncashed checks.

### 2.    The complexity of the case and the risk of and expense to counsel of litigating it

As set forth above and as reflected by nearly 500 docket entries, this case involved complex legal and factual issues, including the issue of first impression that

---

[8] It is appropriate to include the costs of notice in the valuation of the common fund for percentage-fee purposes.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015); *Staton v. Boeing Co.*, 327 F.3d 938,  974-975 (9th Cir. 2003).  Class Counsel's 35% request does not, however, seek fees based on the approximately $350,000 of such costs being paid by Safeway.

10

went up to the Ninth Circuit, concerning whether online terms conditions can bind consumers to future amendments without actual notice of amendments. Additional complex issues included: class certification issues; the facts surrounding Safeway's online grocery delivery business and its historical contracts; changes to those contracts; FAQs, advertising, and course of conduct over a decade; legal contract liability issues including contract formation issues, expert survey evidence, and difficult damages issues; Safeway's affirmative defenses; and appellate issues. The Court once described this case as "one of the most interesting cases I have." ECF #400, at 7.

In prosecuting the case, Class Counsel incurred a substantial lodestar – almost $7 million – and almost $400,000 in expenses, all contingent on success. Given Safeway's hard-nosed litigation strategy and unwillingness to settle the case at any stage of the litigation, Class Counsel faced substantial risks in prosecuting class members' claims.

### 3. The skill, experience, and performance of counsel (both sides)

This factor strongly supports an upward adjustment, not just due to the skillful and efficient performance of Class Counsel, but also due to the caliber of Safeway's attorneys and the vigorous defense put forth by Safeway. As the Court is aware, nearly every issue in the case was contested, resulting in protracted litigation with risk at every step.

Safeway is a billion dollar company with formidable in-house attorneys that made a decision to vigorously contest the litigation. Schwartz Decl., ¶12. Judge White repeatedly recommended that the parties explore early settlement (*See* ECF# 55, at 8:18-24; ECF# 69). Safeway, however, refused to participate in an early mediation before retried Judger Cahill of JAMS, and a subsequent mediation with Judge Infante was unproductive.. Schwartz Decl., ¶12.

Safeway's lead outside counsel Craig Cardon is an Executive Committee member of Global 100 law firm Sheppard Mullin and widely recognized as a formidable adversary.  Mr. Cardon was assisted by his partner Anna McLean among others at Sheppard Mullin and, during the course of the litigation, by highly-distinguished Reed Smith Appellate specialists Paul Fogel and Brian Sutherland. Safeway also employed two renowned experts form Berkley Research Group.  *Id*. at ¶13.  After Sheppard Mullin's withdrawal from the case, a four-partner team of litigators from Reed Smith joined Messrs. Fogel and Sutherland in defending Safeway.  *Id*. In short, Safeway hired the best, most aggressive lawyers with instructions to concede nothing and litigate everything.[9]

In the face of this formidable team of adversaries, Class Counsel skillfully and doggedly prosecuted class members' claims to judgment and defeated Safeway's appeal.  Class Counsel Messrs. Schwartz and Mathews of Chimicles &Tikellis LLP have a track record of success in prosecuting complex, cutting edge national class actions, including other full recovery outcomes in this court, such as a $53 million settlement with Apple in which class members received on average a net recovery of about 117%. *Id*. at ¶¶6-8.[10]   Judge Olguin of the Central District of California recently described Messrs. Schwartz of Matthews as "among the most capable and experienced lawyers in the country in [consumer class actions]."  *Chambers v. Whirlpool,* 214 F. Supp. 3d 877, 902 (C.D. Cal. 2016).  Likewise, Mr. Shah and his firm, Shepherd, Finkelman Miller and Shah LLP, have a long history of obtaining excellent results on behalf of classes they represent. *See* Shah Declaration at ¶¶9-10. The qualifications of Class Counsel are set forth in more detail in the Schwartz and

---

[9] The "concede nothing" attitude changed somewhat shortly before the second-scheduled trial, after the Reed Smith litigators took over the representation.  *Id*. But Reed Smith vigorously prosecuted Safeway's appeal.

[10] They have also achieved other full or near-full class recoveries in cases against Siemens, T-Mobile, Whirlpool, Bayer Corp., American Airlines, Merrill Lynch, 24 Hour Fitness, and Nationwide Insurance.  *Id*.

Shah declarations.   The Wessler declaration sets forth the experience of Gupta Wessler PLLC, one of the most highly-regarded appellate firms that Class Counsel hired to assist in defense of Safeway's appeal.

Absent Class Counsel's skill and tireless efforts, class members' recovery would have, at best, been far less than the full recovery achieved here.

### 4.   The contingent nature of the fee

Class Counsel's fee was entirely contingent.   They litigated the case for more than six years, foregoing work on other matters, with the risk that all could have been for naught.   Moreover, Class Counsel were not assisted by any governmental investigation or newspaper expose.[11]   They  prosecuted the case themselves (with the assistance of Rodman) and faced an intransigent adversary.   Moreover, the fact that there were no copycat cases filed by other class action firms – in a practice area where copycats are frequent – suggests that this proceeding was perceived as a difficult case. Accordingly, "this factor weighs strongly in favor of an increase from the Ninth Circuit 25% benchmark for attorney's fees."   *In re (CRT)*, 2016 U.S. Dist. Lexis 102408 at *67-68.

### 5.   Fees awarded in comparable cases

Because this case was fully-litigated to judgment for the entire amount of potential damages, plus interest, which was successfully defended on appeal, there are very few truly "comparable" class action cases.   In the *CRT* cases, where far less than 100% of damages were recovered, this Court awarded 30% and 27.5% to class

---

[11] *See Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 967 (9th Cir. 2009) (awarding multiplier in part based upon finding "that counsel faced substantial risk in prosecuting this action [in that it] did not have the benefit of fruits from underlying government actions"), remanded on other grounds, 2010 U.S. Dist. LEXIS 24155 (C.D. Cal. Feb. 3, 2010); *cf. Coordination Proceeding Special Title Rule 1550b*, 2004 Cal. Super. LEXIS 257, *25 (2004) (multiplier should be reduced because "[c]lass counsel fail to reconcile their risk assessment with the benefits they obtained . . . other earlier government and private . . . proceedings . . ." and observing that "[t]he ability to rely upon a prior government enforcement action is widely understood by courts and commentators to materially reduce contingent risk.").

counsel representing the direct and indirect purchaser classes, respectively, and discussed other cases involving awards between 25% and 30%.  Other decisions reflect awards of similar and even higher percentages for lesser results than achieved here. *See In re Toyota Motor Corp. Unintended Acceleration Mktg.,Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298 at *307-309 (C.D. Cal. July 24, 2013) (awarding 2.87 lodestar multiplier and citing "empirical study" that "in 2006 and 2007" the most frequently awarded percentages for attorneys' fees in the Ninth Circuit were "25 percent, 30 percent and 33 percent" and that across all federal courts, "[n]early two-thirds of the awards were between 25 percent and 35 percent."), citing, among other cases, *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25067, (D.D.C. July 16, 2001) (awarding 34 percent of $365 million settlement fund).

None of those cases involved anything remotely approaching a full recovery. This Court's decision to award 34.3% in *Betancourt* is much closer on point  as is Judge Pregerson's 35% award in *Real Estate Associates*. Likewise, in *Laffitte*, the Supreme Court of California affirmed a fee award representing 33.33% of a $19 million common fund, plus expenses, where the amount recovered was only 16% of the total amount controversy in the case.  *See* 1 Cal. 5th 480, and 231 Cal. App. 4th 860, 869.  The decisions in *Ruiz* and *Fernandez* awarding 35% and 34% percent plus expenses also support the percentage requested here.

Moreover, this is not a case "where awarding 25% [or more] of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case. *See In re CRT*, 2016 U.S. Dist. Lexis 102408 at *69-70.  Unlike the *CRT* cases and others discussed in this Court's fee decisions where the potential damages were enormous, thereby resulting in large common fund recoveries despite recovering only a fraction of potential damages, here the maximum potential damages were in the low tens of millions, and the Judgment Fund is slightly more than $42 million

due to Class Counsel's diligence and efforts in recovering the totality of the damages, plus interest and taxable costs.  In megafund cases, this Court has relied upon a lodestar cross-check to evaluate the propriety of a fee award.  *Id*.  As reflected below, a crosscheck of Class Counsel's lodestar reveals that the 35% request results in a lodestar multiplier of about 2.1, which is well within range of fees awarded in less successful cases.

### 6.    Lodestar cross check

Class Counsel's lodestar through December 2017 is $6,882,750.93 as follows:

| Firm | Hours | Lodestar |
|---|---|---|
| Chimicles & Tikellis LLP | 7,698.14 | $4,754,492.33 |
| Shepherd Finkelman Miller & Shah LLP | 3,175.40 | $1,923,363.00 |
| Gupta Wessler PLLC | 323.22 | $204,895.60 |
| **TOTALS** | **11,196.76** | **$6,882,750.93** |

*See* Schwartz, Shah and Wessler Declarations at ¶ 18 & Exhibit 2, ¶ 5 & Exhibit 1, and ¶ 9 respectively.[12]  That lodestar will increase as Class Counsel continue to perform their duties managing the distribution of the Judgement.  Thus, if the Court grants the requested 35% fee/expense request, the multiple on Class Counsel's

---

[12] Class Counsel maintain contemporaneous detailed time records (*id*. at ¶¶ 17, 4, and 3 respectively) and their rates are consistent with those upheld by this Court in *In re CRT*, 2016 U.S. Dist. LEXIS 24951 at *303-305.  Moreover, undersigned Class Counsel's rates have been repeatedly been approved by Courts, including in connection with adversarial fee petitions. *Chambers v. Whirlpool*, 214 F. Supp. at 899 (approving rates of Messrs. Schwartz and Mathews in contested fee proceeding); *In re LG Front-Loading Washing Machine Litigation*, Case No. 08-51 (D.N.J.) at Dkt. No. 421 at page 1 (copy at Schwartz Decl., Exhibit 5 ("the hourly rates of each Lead Counsel firm are likewise reasonable and appropriate in a case of this complexity"); *In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, 44-48 (D.N.J. May 14, 2012) (copy at Schwartz Decl.,  Exhibit 12) ("The Court finds the billing rates to be appropriate and the billable time to have been reasonably expended."); *Ardon v. City of Los Angeles*, Case No. BS363959 (Superior Court, County of Los Angeles), Final approval Order at 19-20 (copy at Schwartz Decl., Exhibit 10-11 (approving C&T's rates, including Co-Lead Counsel Mr. Mathews' rate).  *See generally* Schwartz Decl., ¶ 19 & related exhibits; *see also* Shah Decl., ¶ 6 (listing cases approving rates) and Wessler Decl., ¶ 3.

lodestar will be about 2.1, and that multiplier will continue to decrease as Class Counsel spend more time on behalf of the class.[13]

In addition, Class Counsel have collectively incurred almost $400,000 in expenses, only $118,610.80 of which will be reimbursed by Safeway as a taxable expense,[14] as reflected in the following chart:

| Firm | Expenses |
|---|---|
| Chimicles & Tikellis LLP | 305,158.09 |
| Shepherd Finkelman Miller & Shah LLP | $80,664.99 |
| **Total** | **$385,823.08** |
| **Amount Reimbursed by Safeway** | $118,610.80 |
| **Unreimbursed Expenses** | **$267,212.28** |

See Schwartz Decl., ¶ 21 & Exhibit 13; Shah Decl., ¶ 7 & Exhibit 2.  Class Counsel do <u>not</u> seek a separate award for unreimbursed expenses. Taking into consideration these expenses and Class Counsel's future expenses and additional legal work reduces the multiplier even more.[15]

As set forth in *In re CRT* (*id*. at 69-70) and discussed above, the Ninth Circuit awarded a 3.63 multiplier in *Vizcaino* and noted that a survey of attorneys' fees found that even in "megafund" cases 83 percent of such cases awarded a multiplier from 1 - 4 and cited other cases awarding multipliers of between 2.5 - 3.5.  Like this Court in *Willner*, 2015 U.S. Dist. LEXIS 80697 at *22, Judge Alsup has recognized that "Multipliers can range from 2 to 4 or even higher."  *Gutierrez*, 2015 US Dist.

---

[13] Class Counsel take seriously their obligations to monitor, and prosecute as necessary, notice and settlement/judgment distribution processes, and intend to do so here.  Schwartz Decl., ¶14.

[14] Consistent with the parties' Joint Report (ECF#473 at 8), Safeway will soon pay Class Counsel $118,610.80 in taxable costs.

[15] In contrast, all of the cases cited above awarded expenses separate from and in addition to the percentage fee award.

1    LEXIS 67298  at *22, quoting *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th

2    224, 255, 110 Cal. Rptr. 2d 145 (Cal. Ct. App. 2001).

3           In *Gutierrez*, Judge Alsup awarded a multiplier of 5 to Lead Class Counsel

4    Lieff Cabraser, and even awarded a multiple of 2 to a non-lead firm that was

5    replaced after "many blunders" that "nearly wrecked" the case, including performing

6    a "slapdash job on the original damages study" that resulted in their offering to settle

7    the case for $20 million (less than 10% of the ultimate recovery).  2015 US Dist.

8    LEXIS 67298 at *23-24.  Class Counsel's efforts here are comparable to those of

9    Lieff Cabraser in *Gutierrez* and compare favorably to the other firm in that case

10   which still received a 2x multiplier.

11          In short, a lodestar cross check confirms that Class Counsel's 35% request is

12   more than reasonable.[16]

13                        **7.        Other Considerations**

14          Most of the criticisms of class actions focus on whether class counsel

15   vigorously represent the interests of class members with undivided loyalty, or

16   whether in too many instances class counsel recover only illusory benefits for class

17   members that are disproportionate with requested fees.  In recognition of those

18   concerns, the fee decisions of this Court's and Ninth Circuit seek to properly align

19   the pecuniary incentives of class counsel with the interests of class members by

20   _____

21   [16] Class Counsel do not believe that the amount Safeway previously paid Class
     Counsel for discovery sanctions is relevant to the percentage or lodestar crosscheck
22   analysis.  However, it has no material effect even if included.  Reducing Class
     Counsel's lodestar by the sanctions payment for purposes of the lodestar cross check
23   would result in only a roughly 2.33 fee multiple net of expenses (*see* footnotes 3 and
     15 above), which is still well-within the common range.  Moreover, the total fees
24
     (net of expenses) that would be paid to Class Counsel -- even including the
25   sanctions payment -- will be slightly less than 35% of the total benefits they
     generated when the judgment amount, taxable costs, judgment administration costs,
26   and the sanctions award are factored in (see footnote 8 above).
27

28

awarding either higher *or lower* fees based on holdings that: "The most important factor is the results achieved for the class. Outstanding results merit a higher fee" but, in contrast, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *In re* CRT, 2016 U.S. Dist. Lexis 102408 at *62-63. Approving the 35% request here is consistent with the goal of establish proper incentives for class counsel to maximize recoveries for the classes thy represent.

### C.     Service Award for Class Representative Michael Rodman

Class Counsel also request that the Court approve a $10,000 service award for Rodman. As class representative, Rodman's efforts included producing hundreds of pages of his personal records (such as bank and credit card statements), responding to several sets of written questions by Safeway, traveling from Philadelphia to San Francisco to appear for a court-ordered Early Neutral Evaluation and then again for a full-day deposition, preparing to appear at trial and working with Class Counsel over the course of more than six years to obtain the Judgment and defend it against Safeway's appeal. Rodman Decl., ¶¶ 2-10; Shah Decl., ¶ 11. Class Counsel submit that the proposed award is consistent with the standards set forth in *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) and *Willner v. Manpower, Inc.*, No. 11-cv-02946-JST, 2015 U.S. Dist. LEXIS 80697 at *25-30 (N.D. Cal. June 22, 2015).

### D.     The Plan of Distribution, Including the *Cy Pres* Residual, Should be Approved

Since the Judgment was affirmed, the Parties, with the assistance of two experienced class action settlement administrators, have engaged in significant discussions and analyses to evaluate how to distribute the Judgment (net of any fees awarded to Class Counsel) to Class members. Schwartz Decl., ¶16. Based on their evaluation, the Parties reached the following agreement:

- Checks will be mailed via first-class US mail.

- The amount of each Class members' check will be each Class members' *pro rata* share of the Judgment available for distribution (*i.e.* the Judgment plus pre- and post-judgment interest minus any attorneys' fees/expenses and service award approved by the Court).  Each Class members' *pro rata* share will be based on the amount of the markup that Class member was charged by Safeway, with adjustments for refunds/returns, plus the pre-judgment interest associated with the specific dates of that Class member's grocery transactions;

- Checks will be issued after this Court's decision on Class Counsel's Motion for attorneys' fees/expenses and the proposed service award for Mr. Rodman becomes final.  Before mailing out checks, the Judgment Administrator will send an email to Class members with valid email addresses to advise them that their checks will be mailed soon and confirm their mailing address.[17]  After checks are mailed, the Judgment Administrator will send at least three reminder emails to Class members who have not cashed their checks. Class members will have 90 days to cash the checks from the date of mailing.  To the extent any of the checks come back as undeliverable, the Judgment Administrator will take reasonable steps to identify the correct mailing address for that particular Class member.

- After reasonable efforts by the Parties and Judgment Administrator to encourage Class members to cash checks are exhausted, it is likely that there will be money remaining due to uncashed checks.  Depending on

---

[17] The Parties have also instructed the Judgment Administrator to send an additional mailing to Class members who paid more than $1,000 in total markups reiterating the request in the Notice to ensure that checks are written to the appropriate person or entity.

19

that amount, Class Counsel anticipate that they will request that, if practicable, the Court approve sending a second check to those Class members *who cashed their first checks* in proportion to their share of the Judgment. *See Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 U.S. Dist. Lexis 102408 at *30-31 (N.D. Cal. Aug. 3, 2016).  As noted above, Safeway reserves its position with respect to whether any distribution of checks after the first distribution is warranted and how the costs should be allocated for any further check distributions that Class Counsel may advocate.

- To the extent there is any money remaining (whether after a first distribution or a second distribution if one occurs), Class Counsel request, with Safeway's consent, that such remaining money be distributed *cy pres*.  Class Counsel propose, and Safeway has agreed, that such remaining money be distributed to Meals on Wheels, a national senior nutrition program, that, among other things, delivers nutritious meals to senior citizens.  The *cy pres* of any residual funds to this organization meets the standards set forth in *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) and *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (requiring "a driving nexus between the plaintiff class and the *cy pres* beneficiaries.").

The Court should approve this plan.  Mailing checks will result in higher expected cashing rates compared to other methods to get money to class members.  Schwartz Decl., ¶16.  Calculating each class member's *pro rata* share by taking account of each member's markup and associated interest is the allocation most

consistent with the Judgment, which was an aggregation of the markup and interest for each individual transaction. The plan for multiple email check cashing reminders represents best practice and has been effective in maximizing cashing rates in other cases.  *Id*.  Redistributing funds from uncashed checks to class members who cashed their checks in the initial round of distribution makes sense.  Finally, the proposed *cy pres* distribution to Meals on wheels of any residual after meets the standards set forth in *Nachshin* and *Dennis, supra*. Assuming there is a second distribution, such a residual will likely be small.  Moreover, before making such a *cy pres* distribution, once the exact amount is known, Class Counsel will request Court approval.

## IV.   CONCLUSION

Representative Plaintiff Michael Rodman and Class Counsel respectfully request that the Court approve Class Counsel's request for attorneys' fees and expenses, approve the $10,000 service award, and approve the proposed plan of judgment distribution.  Plaintiff and Class Counsel will provide an update to the Court and address any objections or other comments by class members in their Reply currently due on March 15, 2018.

Respectfully Submitted,

Date: January 4, 2018

CHIMICLES & TIKELLIS LLP

By:  */s/ Steven A. Schwartz*
        Steven A. Schwartz (pro hac vice)
        Timothy N. Mathews (pro hac vice)
        361 W. Lancaster Avenue
        Haverford, PA 19041
        Telephone:      (610) 642-8500
        Facsimile:      (610) 649-3633

        James C. Shah (SBN 260435)
        SHEPHERD, FINKELMAN,
            MILLER & SHAH
        401 West A Street, Suite 2350
        San Diego, CA 92101
        Telephone:      (619) 235-2416

21

Facsimile:        (866) 300-7367

*Attorneys for Plaintiff*
*MICHAEL RODMAN and the Class*

MEMORANDUM IN SUPPORT OF  MOTION FOR ATTORNEYS' FEES
Case No. 3:11-cv-03003 JST (JCS)

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2018, I electronically filed the Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees and Expense Reimbursement, Service Award, and Approval of Judgment Distribution Plan using this Court's CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.


Dated: January 4, 2018                    */s/ Steven A. Schwartz*
                                                    Steven A. Schwartz