UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RODMAN,<br><br>           Plaintiff,<br><br>   v.<br><br>SAFEWAY INC.,<br><br>           Defendant. | Case No. 11-cv-03003-JST<br><br>**ORDER APPROVING JUDGMENT DISTRIBUTION PLAN AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**<br><br>Re: ECF No. 478 |

Before the Court is Plaintiffs' motion for approval of the judgment distribution plan and for attorneys' fees, expenses, and an incentive award. ECF No. 478. The Court approved the notice plan on November 28, 2017. ECF No. 475. Safeway does not oppose the motion. ECF No. 486. The Court will approve the distribution plan and will grant in part and deny in part Plaintiffs' motion for attorneys' fees, expenses, and an incentive award.

**I.  BACKGROUND**

Plaintiff Michael Rodman brought this breach of contract case against Defendant Safeway, Inc., on behalf of himself and all other individuals similarly situated. ECF No. 29 at 1. Plaintiffs' claims arise from their purchase of groceries from Safeway's website for home delivery. Id. ¶ 1. Safeway promised its online customers that the prices charged for Safeway.com products would be those charged in the physical store proximate to where the groceries were delivered. In fact, Safeway charged more for online purchases than it did for purchases from its brick-and-mortar stores.

The Court certified the following class: "All persons in the United States who registered to purchase groceries through Safeway.com at any time prior to November 15, 2011, and made one or more purchases subject to the price markup implemented on or about April 12, 2010." ECF

No. 163 at 32. There are 297,822 class members. ECF No. 486 at 5. On November 30, 2015, the Court entered judgment in favor of the certified class. ECF No. 406 at 1. After pre- and post-judgment interest, the total judgment amounts to $42,321,355.45. ECF No. 477 at 2.

After more than six years of pre-trial, appellate, and post-judgment litigation, Plaintiffs and Safeway filed a joint case management report regarding notice and judgment distribution. ECF No. 473. The Court approved the notice plan, appointed Angeion Group as Judgment Administrator, ordered Safeway to transfer the judgment into a Judgment Distribution Fund account, and adjusted the notice, briefing, and hearing schedule. ECF No. 475 at 1. Safeway deposited $42,321,355.45 into a Judgment Distribution Fund with Huntington National Bank on December 15, 2017. ECF No. 477 at 2.

Plaintiffs then filed a motion for approval of the judgment distribution plan and for attorneys' fees, expenses, and an incentive award. ECF No. 478. In response to the attorneys' fees and costs request, the Court ordered class counsel to file with the Court (1) an Excel spreadsheet detailing each timekeeper's hours per month, (2) a document explaining, *inter alia*, why different timekeepers with the same position charged different rates, and (3) receipts for certain expenses. ECF No. 487 at 1-2.

## II. APPROVAL OF JUDGMENT DISTRIBUTION PLAN

Pursuant to the judgment distribution plan, class members will receive checks based on their *pro rata* share of the judgment available for distribution[1] and at least three reminders to cash their checks within ninety days of the mailing date. ECF No. 478 at 26. Safeway agrees to pay the judgment administration costs for this initial distribution. Id. at 8. If there are unclaimed funds, Angeion Group will make a second distribution to the class members who cashed their first checks. Id. at 27. If there are unclaimed funds after that, Angeion will make a third distribution *cy pres* to Meals on Wheels, a national senior nutrition program. Id.

---

[1] The *pro rata* share is "based on the amount of the markup that Class member was charged by Safeway, with adjustments for refunds/returns, plus the pre-judgment interest associated with the specific dates of that Class member's grocery transactions." ECF No. 478 at 26. The plan defines the amount of judgment available for distribution as "the Judgment plus pre- and post-judgment interest minus any attorneys' fees/ expenses and [incentive] award approved by the Court." Id.

2

Although the parties do not brief the issue, the Court concludes that the plan of distribution in this adjudicated class action is subject to the same standards that apply to the allocation of a class settlement fund, i.e., "the distribution plan must be 'fair, reasonable and adequate.'" In re Citric Acid Antitrust Litig., 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (quoting Fed. R. Civ. P. 23(e)(2)). A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable. Id. (citations omitted). The proposed plan of distribution meets this goal.

The plan of distribution calls for unclaimed funds to be distributed to Meals on Wheels. The Ninth Circuit requires "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) (internal quotation marks and citation omitted). The "*cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must not benefit a group too remote from the plaintiff class." Id. (internal quotation marks and internal citations omitted). Meals on Wheels meets these standards because it is a national senior nutrition program that delivers food to people in need.

Class member Steven Helfand objects to several aspects of the judgment distribution plan. Plaintiffs argue that Helfand is a serial objector and that his objection is late, ECF No. 486 at 9-10, but the Court will consider the objections. First, Helfand questions the accuracy of Safeway's records. ECF No. 485 at 1. As Plaintiffs explain, Safeway regularly tracked the markup of its online prices relative to those charged at its brick-and-mortar locations, and both parties hired experts to perform markup calculations based on Safeway's records. ECF No. 486 at 17. The Court overrules this objection. Second, Helfand raises concerns about the administration costs cutting into the common fund, ECF No. 485 at 2-3, but Plaintiffs point out that Safeway is bearing the full cost of the initial distribution, ECF No. 486 at 17-18. Last, Helfand questions whether the mailed checks or email reminders will look like "junk mail" and whether there are "[a]ny steps to mitigate these issues." ECF No. 485 at 4. However, the parties have taken adequate steps to avoid this risk by sending checks "via first class mail in a standard white number 10 window envelope." ECF No. 486-2 ¶ 19. In short, the Court overrules these objections and approves of

1 the judgment distribution plan.

## III. ATTORNEYS' FEES AND EXPENSES

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, California law governs the claims, therefore it also governs the award of fees. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted) ("Because Washington law governed the claim, it also governs the award of fees."). "Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees." Willner v. Manpower Inc., No. 11-CV-02846-JST, 2015 WL 3863625, at *5 (N.D. Cal. June 22, 2015) (citing Apple Computer, Inc. v. Superior Court, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.")).

Class counsel seek 35 percent of the common fund, or $14,812,474.41, for all attorneys' fees and unreimbursed expenses. ECF No. 478 at 8. However, the Court will calculate trial attorneys' fees, appellate attorneys' fees, and expenses separately as different legal considerations govern each award.

### A. Trial Attorneys' Fees

Setting aside fees incurred on appeal and unreimbursed expenses, class counsel request approximately 34 percent of the common fund, or $14,311,137.28, for trial attorneys' fees.[2] Courts have discretion to "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011); see also Laffitte v. Robert Half Int'l Inc., 1 Cal. 5th 480, 503 (2016) (holding that "the trial court in its equitable powers . . . may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created").

For more than two decades, the Ninth Circuit has set the "benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund." Williams

---

[2] The Court calculated this dollar amount by subtracting the appellate attorneys' lodestar and the unreimbursed expenses from 35 percent of the judgment. These numbers were compiled from several ECF documents. For citations to the relevant ECF documents, see sections titled "Appellate Attorneys' Fees" and "Unreimbursed Expenses."

4

v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997). Courts in the Ninth Circuit generally start with the 25 percent benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash . . . fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting Vizcaino, 290 F.3d at 1047-50).

Courts often also cross-check the amount of fees against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." Vizcaino, 290 F.3d at 1050; see also Laffitte, 1 Cal. 5th at 506 (holding "that trial courts have discretion to conduct a lodestar cross-check on a percentage fee").

### 1. Benchmark Analysis

The Court agrees with class counsel that several factors weigh in favor of an upward adjustment from the 25 percent benchmark. Class counsel has not, however, demonstrated that their requested award is entirely appropriate.

#### a. Results Achieved, Risk, and Burdens on Class Counsel

The Court first considers the results achieved; the level of risk; and the burdens on class counsel. The first and "most critical factor [in determining an attorneys' fee] is the degree of success obtained."[3] Hensley v. Eckerhart, 461 U.S. 424, 436 (1983). Here, by any measure, class counsel obtained an exceptional result for the class: a judgment representing 100 percent of damages plus interest. ECF No. 478 at 8. Second, class counsel faced significant risks by engaging in substantial motion practice, extensive discovery, and hard-fought litigation

---

[3] Of course, to some extent, counsel's success provides its own reward: the larger the total recovery, the larger counsel's fee award will be, all else being equal. For example, even if the Court were to award the benchmark of 25 percent in every case, counsel who achieved twice as large a recovery for the class would receive twice as large a fee. For the same reasons, lack of success provides its own penalty. Nonetheless, the law appropriately provides for some upward adjustment where the results achieved are significantly better than the norm.

5

1    surrounding essentially every conceivable issue. Id. at 11-14. Both sides agreed, for example, that
2    the interpretation of the Safeway contract was a matter of law – but Safeway's interpretation
3    would have resulted in no recovery for the class. Third, class counsel carried a heavy financial
4    burden in representing the class on a contingency basis for more than six years. Id. at 20; see
5    Willner, 2015 WL 3863625, at *6 (finding factors weighed in plaintiffs' favor when case was
6    "fiercely litigated" and class counsel represented class for more than four years on contingency fee
7    basis). Each of these factors weighs in favor of an upward adjustment.

### b. Comparison to Similar Cases

District courts are instructed to "examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." Vizcaino, 290 F.3d at 1050; see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig., No. 4:14-MD-2541-CW, 2017 WL 6040065, at *5 (N.D. Cal. Dec. 6, 2017) (awarding a fee percentage in part because it was "consistent with, and within the range of, fee awards out of common funds of comparable size"), appeal filed, No. 18-15054 (9th Cir. Jan. 11, 2018); Craft v. Cty. of San Bernardino, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("In awarding percentages of the class fund, courts frequently take into account the size of the fund."). Thus, it makes sense to examine historical data regarding the size of fee awards in comparable litigation.

Courts in other districts have looked to empirical studies in order to do so because the "[h]istorical data of fees awarded in common fund cases provides an unbiased and useful reference for comparing fees . . . ." In re Colgate-Palmolive Co. ERISA Litig., 36 F. Supp. 3d 344, 349 (S.D.N.Y. 2014); see In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig., 851 F. Supp. 2d 1040, 1081 (S.D. Tex. 2012) ("Using these studies alleviates the concern that the number selected is arbitrary."); see also id. at 1080-81 ("District courts increasingly consider empirical studies analyzing class-action-settlement fee awards to set the appropriate percentage benchmark . . . ." (footnotes omitted)).

Also, while 25 percent is a reasonable starting point, "[t]o avoid routine windfalls where the recovered fund runs into the multi-millions, courts typically decrease the percentage of the fee

6

as the size of the fund increases." In re Currency Conversion Fee Antitrust Litig., 263 F.R.D. 110, 129 (S.D.N.Y. 2009) (quoting In re Interpublic Sec. Litig., No. 02 Civ.6527(DLC), 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004)), aff'd sub nom. Priceline.com, Inc. v. Silberman, 405 F. App'x 532 (2d Cir. 2010). "Empirical evidence supports this observation and shows the 'overwhelming determinant of fee is the amount of the recovery for the class.'" In re Colgate-Palmolive Co. ERISA Litig., 36 F. Supp. 3d at 349 (quoting Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees and Expenses in Class Action Settlements: An Empirical Study, 1 J. Empirical Legal Stud. 27, 58 (2004)); see also Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical Legal Stud. 811, 837-39 (2010) (observing that "fee percentage is strongly and inversely associated with settlement size among all cases").

A recent empirical study by Professors Eisenberg, Miller, and Germano reviewed data from 458 reported class action settlement cases from both federal and state courts between 2009 and 2013. See Theodore Eisenberg, Geoffrey Miller, & Roy Germano, Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. Rev. 937, 940-41 (2017). The authors divided the cases into deciles (ten ranges of recovery) and calculated the mean fee percent for each. Id. at 948 fig.5. The data demonstrates that a "pronounced scaling effect exists: Higher recoveries are associated with lower percentage fees . . . ." Id. at 969. The authors depict the data graphically as follows:

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

7

Figure 5. Fee Percentage, by Class Recovery Amount (Decile Ranges), 2009-2013



*Class recovery ranges are as follows. First decile: less than $400,000; second decile: $400,000-$750,000; third decile: $750,000-$1.4 million; fourth decile: $1.4-$2.65 million; fifth decile: $2.65-$3.9 million; sixth decile: $3.9-$6.5 million; seventh decile: $6.5-$12 million; eighth decile: $12-$23.4 million; ninth decile: $23.5-$67.5 million; tenth decile: greater than $67.5 million.*

Id. at 948 fig.5.

In an earlier empirical study, Professor Brian Fitzpatrick reviewed 688 reported and unreported federal class action settlements between 2006 and 2007. Fitzpatrick, supra, at 817. Fitzpatrick also divides his data into deciles and calculates each decile's mean, median, and standard deviation. Id. at 839 tbl.10. Although this study is older and accounts for fewer years, it examines many more cases. Fitzpatrick finds a similar scaling effect as did Eisenberg, Miller, and Germano. Compare id. at 837 ("[A]fter controlling for other variables, fee percentage is strongly and inversely associated with settlement size among all cases, among securities cases, and among all nonsecurities cases."), with Eisenberg, supra, at 969. His reported data was as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

Table 10: Mean, Median, and Standard Deviation of Fee Awards by Settlement Size in 2006-2007 Federal Class Action Settlements Using the Percentage-of-the-Settlement Method With or Without Lodestar Cross-Check

| Settlement Size (in Millions) | Mean | Median | SD | N |
|---|---|---|---|---|
| $0 to $0.75 | 28.8% | 29.6% | 6.1 | 45 |
| $0.75 to $1.75 | 28.7% | 30.0% | 6.2 | 44 |
| $1.75 to $2.85 | 26.5% | 29.3% | 7.9 | 45 |
| $2.85 to $4.45 | 26.0% | 27.5% | 6.3 | 45 |
| $4.45 to $7.0 | 27.4% | 29.7% | 5.1 | 44 |
| $7.0 to $10.0 | 26.4% | 28.0% | 6.6 | 43 |
| $10.0 to $15.2 | 24.8% | 25.0% | 6.4 | 45 |
| $15.2 to $30.0 | 24.4% | 25.0% | 7.5 | 46 |
| $30.0 to $72.5 | 22.3% | 24.9% | 8.4 | 42 |
| $72.5 to $6,600 | 18.4% | 19.0% | 7.9 | 45 |

Id.[4]

This data supports the principle that larger common funds weigh against an upward adjustment of 25 percent. With a total judgment of $42,321,355.45, this case falls into the ninth decile in both the Eisenberg chart and the Fitzpatrick table. Eisenberg, supra, at 948 fig.5; Fitzpatrick, supra, at 839 tbl.10. In Eisenberg's ninth decile (with a range of recovery between $23.5 and $67.5 million), the mean fee percentage is 24 percent. Eisenberg, supra, at 948 fig.5. In Fitzpatrick's ninth decile (with a range of recovery between $30.0 and $72.5 million), the mean fee percent is 22.3 percent, the median fee percent is 24.9 percent, and the standard deviation is 8.4 percent. Fitzpatrick, supra, at 839 tbl.10.

This data does not replace the 25 percent benchmark, nor does it negate the positive factors

---

[4] Because the last decile covers an especially wide range of settlements, Fitzpatrick created Table 11 to show the last decile broken into additional cut points. Consider Table 11 where the settlement size is between $72.5 and $6,600 million:

| Settlement Size (Millions) | Mean | Median | SD | N |
|---|---|---|---|---|
| $72.5 to $100 | 23.7 | 24.3 | 5.3 | 12 |
| $100 to $250 | 17.9 | 16.9 | 5.2 | 14 |
| $250 to $500 | 17.8 | 19.5 | 7.9 | 8 |
| $500 to $1,000 | 12.9 | 12.9 | 7.2 | 2 |
| $1,000 to $6,600 | 13.7 | 9.5 | 11 | 9 |

Id. at 839 tbl.11.

9

1    assessed above. It is simply an important additional data point in the determination of an

2    appropriate award. And it weighs in favor of a slight downward adjustment from the Ninth

3    Circuit's 25 percent benchmark.

### c.     Weighing the Factors

On the one hand, the exceptionally strong result obtained, the risk undertaken by counsel litigating on contingency, the complexity of the legal issues, and the duration of the litigation all weigh in favor of an upward adjustment. On the other hand, the size of the common fund weighs in favor of a downward adjustment. Weighing these factors, the Court concludes that an award of 28 percent of the common fund, or $11,849,979.53, is warranted in this case.

### 2.     Lodestar Cross-Check

To confirm an award's reasonableness through a lodestar cross-check, a court takes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. "[T]he determination of fees 'should not result in a second major litigation'" and "trial courts need not, and indeed should not, become green-eyeshade accountants." Fox v. Vice, 563 U.S. 826, 838 (2011) (quoting Hensley, 461 U.S. at 437). Rather, the Court seeks to "do rough justice, not to achieve auditing perfection." Fox, 563 U.S. at 838.

A district court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" Hensley, 461 U.S. at 434 (citation omitted). Additionally, the reasonable hourly rate must be based on the "experience, skill, and reputation of the attorney requesting fees" as well as "the rate prevailing in the community for similar work performed by [comparable] attorneys . . . ." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986), amended by 808 F.2d 1373 (9th Cir. 1987). The relevant community is typically the forum – here, San Francisco. See Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 906-07 (9th Cir. 1995) (citations omitted). To inform and assist the Court in making this assessment, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community . . . ." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

Class counsel provides a specific number of hours spent on different tasks per month, and the number of hours appears reasonable. See, e.g., ECF No. 490-3 at 2 (providing that a partner

10

performed 22.9 hours on moving for summary judgment in September 2014, 23.5 hours on written discovery in October 2015, and 27.7 hours on judgment administration in December 2017). Additionally, class counsel claim hourly rates which are commensurate with their experience and with the legal market in San Francisco. See, e.g., ECF No. 488-1 at 2; ECF No. 488-2 at 2 (claiming $650 for a partner who has worked for the firm since August 2003, and $750 for a partner who has worked for the firm since January 1994). Based on the reasonable number of hours and reasonable hourly rates, the trial attorneys' lodestar is estimated to be $6,782,263.75. See ECF No. 488-1 at 2; ECF No. 490-1 at 2. The Court concludes that this lodestar estimate is reasonable.

Percentage awards in the range of one to four times the lodestar are common. See Vizcaino, 290 F.3d at 1051 n.6 (citations omitted) (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83 percent in the 1.0 to 4.0 range and 54 percent in the 1.5 to 3.0 range); see also Eisenberg, supra, at 967 tbl.13 (finding that from 2009 to 2013 within the ninth decile – a range of recovery between $23.4 and $67.5 million – the mean multiplier was 1.65 and the median was 1.5). A 28 percent fee award of $11,849,979.53 results in a multiplier of about 1.7472, from the $6,782,263.75 lodestar. This is well within the range of reasonableness.

### 3. Class Member Reactions

Class member Owen O'Neal questions the reasonableness of the common fund method.[5] The entire objection states:

> My objection is to the method used to reimburse the Class Counsel in this matter. Rather than a blanket percentage, I believe it would be fairer to the Class Members to reimburse the Class Counsel at their regular rates, plus documented expenses – or at least to reimburse the Class Counsel using the lesser of the two methods.

ECF No. 479 at 1. As an initial matter, the Court has discretion to award attorneys a percentage of

---

[5] Mark Gullickson also objects to the proposed method. ECF No. 480 at 1. However, Gullickson only asserts "I got delivery from Vons," to establish his membership in the class. Id. Moreover, neither Gullickson, nor his wife, nor his previous addresses appear on "materials provided by Safeway or Class Counsel or any of the class member correspondence . . . ." ECF No. 486-2 at 4. This is not enough to prove membership in the class and therefore, the Court need not address his objection. See Custom LED, LLC v. Ebay, Inc., No. 12-cv-00350-JST, 2014 WL 2916871, at *6 (N.D. Cal. June 24, 2014) (citation omitted) ("One must be an aggrieved class member to object . . . .").

11

the common fund. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 942. In addition, although O'Neal believes that a lodestar method would be fairer to the class, the Court concludes that this method would inadequately compensate class counsel for the exceptional result achieved and the risk they undertook to get it. See Willner, 2015 WL 3863625, at *6; see also Long v. U.S. I.R.S., 932 F.2d 1309, 1317 (9th Cir. 1991) (directing trial court to "consider the propriety of enhancing the fee award to compensate for the risk of nonpayment that necessarily attends contingency financed litigation").

Class member Steven Helfand[6] objects to several aspects of the proposed attorneys' fee. First, Helfand claims that the attorneys' "hourly rates are problematic," ECF No. 485 at 2, the time records are "sparse," id., "class counsel should be required to produce their contemporaneous time records," id. at 5, and "the Court should appoint a special master . . . to bring the lodestar within the ambit of overall reasonableness," id. The Court ordered supplemental briefing on this issue and concludes that the supplemental information provided by class counsel adequately supports the proposed lodestar. See ECF Nos. 487-490. Accordingly, the Court will not request actual billing records or appoint a special master. See Covillo v. Specialtys Café, No. C-11-00594 DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (finding that for the lodestar cross-check, courts "may rely on summaries submitted by the attorneys and need not review actual billing records" (citation omitted)).

Helfand also argues that the percentage of recovery should not include "the interest on judgment" because it "plainly seems wrong," ECF No. 485 at 1, and that the fee should not amount to a lodestar multiplier "in excess of 1.25," id. at 5. However, the Court has already found

---

[6] Helfand frequently files objections in class action cases. See In re Optical Disk Drive Prod. Antitrust Litig., No. 3:10-MD-2143 RS, 2016 WL 7364803, at *11 (N.D. Cal. Dec. 19, 2016); see also Brown v. Hain Celestial Grp., Inc., No. 3:11-CV-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016) (describing Helfand as a "professional objector"); Chambers v. Whirlpool Corp., 214 F. Supp. 3d 877, 890 (C.D. Cal. 2016) (describing Helfand as a "serial objector"), judgment entered, No. SACV111733FMOMLGX, 2016 WL 5921765 (C.D. Cal. Oct. 11, 2016); Spann v. J.C. Penney Corp., 211 F. Supp. 3d 1244, 1260 n.11 (C.D. Cal. 2016) (describing Helfand as a "serial objector"), appeal dismissed sub nom. Spann v. J.C. Penney Corp., Inc., No. 16-56474, 2016 WL 9778633 (9th Cir. Nov. 7, 2016).

that 28 percent of the total recovery (about a 1.75 lodestar multiplier) is reasonable.[7] And just as interest compensates class members for their delay in receiving compensation, it also compensates counsel for the same delay. There is no windfall.

In conclusion, the Court overrules the various objections and grants the motion in part as it applies to trial attorneys' fees. The Court will award class counsel 28 percent of the common fund for trial attorneys' fees.

### B. Appellate Attorneys' Fees

Class counsel request less than 1 percent of the common fund, or $204,895.60, in appellate attorneys' fees. ECF No. 489 at 6. "A party seeking fees incurred on appeal must apply for those fees with the court of appeals." CSL, L.L.C. v. Imperial Bldg. Prod., Inc., No. C 03-05566 JCS, 2006 WL 3526924, at *12 (N.D. Cal. Nov. 21, 2006) (citing 9th Cir. R. 39-1.6). "Although the court of appeals may delegate the fee request to the district court, the district court may not award fees for an appeal where the court of appeals has not delegated to it that authority." Id. (citing Cummings v. Connell, 402 F.3d 936, 947-48 (9th Cir. 2005)). Appellate attorney Matthew Wessler of Gupta Wessler PLLC did not apply for fees with the Ninth Circuit. See Rodman v. Safeway, Inc., 694 F. App'x 612, 612 (9th Cir. 2017). Therefore, the Court denies the motion as it applies to appellate attorneys' fees.

### C. Unreimbursed Expenses

Class counsel seeks less than 1 percent of the common fund, $296,441.53, in unreimbursed expenses. See ECF No. 488-7 at 21; ECF No. 490-6 at 1-7; ECF No. 478 at 23 (Chimicles & Tikellis LLP expended $330,749.00, Shepherd Finkelman Miller & Shah LLP expended $84,303.33, and Safeway reimbursed class counsel for $118,610.80.). An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted); see also Fed. R. Civ. P. 23(h) (permitting the court to award

---

[7] Indeed, the use of Helfand's proposed multiplier would result in a fee that is substantially below the Ninth Circuit benchmark and below the fee typically awarded in comparable cases. Helfand provides no authority for such a reduction.

13

nontaxable expenses that are authorized by law or by the parties' agreement).

The records support the conclusion that counsel incurred unreimbursed expenses of $296,441.53. These expenses were incurred in connection with filing fees, researching, obtaining transcripts, consulting with experts, copying, mailing, traveling, and technology. ECF No. 478-14 at 2; ECF No. 478-18 at 2. These expenses were reasonable considering the complexity and duration of the case. See, e.g., ECF No. 488-9 at 28 (spending $5,275.00 for mediation with JAMS); ECF No. 490-8 at 4 (spending $1,217.70 for court reporting). Because these expenses are of the type normally charged to a paying client, the Court grants the motion as it applies to unreimbursed expenses.

## IV. INCENTIVE AWARD

Plaintiffs request a $10,000 incentive award for Plaintiff Michael Rodman. ECF No. 478 at 25. "[Incentive] awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." Rodriguez v. W. Pub'g Corp., 563 F.3d 948, 958 (9th Cir. 2009) (internal citation omitted). The Court should consider:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in pursing it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

Wren v. RGIS Inventory Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011) (citations omitted), supplemented, 2011 WL 1838562 (N.D. Cal. May 13, 2011). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013). "Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (citations omitted).

Class counsel describes Rodman's actions as lead plaintiff as follows:

> As class representative, Rodman's efforts included producing hundreds of pages of his personal records (such as bank and credit

14

> card statements), responding to several sets of written questions by Safeway, traveling from Philadelphia to San Francisco to appear for a court-ordered Early Neutral Evaluation and then again for a full-day deposition, preparing to appear at trial and working with Class Counsel over the course of more than six years to obtain the Judgment and defend it against Safeway's appeal.

ECF No. 478 at 25. These efforts are typical of those expected of a class representative and do not include the unusual risk or extraordinary effort that would warrant an upward adjustment from $5,000. See, e.g., Willner, 2015 WL 3863625, at *9 (awarding an upward adjustment of the presumptively reasonable award in part because plaintiff risked "her reputation and work opportunities" by suing her previous employer).

Class member Steven Helfand objects to the proposed incentive award on the basis that there was not a "cognizable showing as to what the lay class members shall receive" in comparison to Rodman's award. ECF No. 485 at 8. However, this objection is moot because Helfand "agree[s] that a $5,000 award, without an additional showing, [is] appropriate." Id. at 9.

In conclusion, the Court denies the motion as it applies to the incentive award and overrules Helfand's objection requesting more detailed information. Instead, the Court will award Rodman a $5,000 incentive award.

## CONCLUSION

The court GRANTS approval of the distribution plan and GRANTS IN PART and DENIES IN PART Plaintiffs' motion for attorneys' fees, expenses, and an incentive award. Plaintiffs' counsel will receive 28 percent of the common fund for trial attorneys' fees and an additional $296,441.53 from the common fund for unreimbursed expenses. Additionally, Plaintiff Michael Rodman will receive an incentive award of $5,000.

**IT IS SO ORDERED.**

Dated: August 22, 2018

_____
JON S. TIGAR
United States District Judge